## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MONUMENT REALTY LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01821 (EGS) |
| | ) | Judge Emmet G. Sullivan |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PARTIAL OPPOSITION OF MONUMENT REALTY, LLC AND MR BALLPARK 7 LLC TO THE DISTRICT OF COLUMBIA'S MOTION TO ENLARGE

The District of Columbia acknowledges that, after having been served with a subpoena requiring an expedited response more than a month ago, only now has it completed its first search for responsive electronic documents. This initial search, conducted with 50 agreed-upon search terms, netted an original 33,000 e-mails, which have now been reduced to 21,555 non-duplicative e-mails and attachments that could "easily exceed" 45,000 documents. Motion to Enlarge at p. 2. The District now claims that it may require an astounding 75 additional days to print, review and produce all documents. While plaintiffs acknowledge that additional time will be needed to complete discovery in this matter in light of the District's position, and other discovery matters discussed below, the District's request to enlarge time for a period of 75 days is excessive and should be denied. The plaintiffs propose a compromise (described below) that would require only a brief enlargement of time and would alleviate significant concerns of the District. Although this compromise has been discussed with the District, the District steadfastly declines.

10819516.1

I.    **THE OPTIONS OFFERED BY THE DISTRICT'S ARE NOT ACCEPTABLE**

While plaintiffs are sympathetic with the District's situation, and its lack of staffing, the District has declined the reasonable compromise offered by plaintiffs. The compromise would require that the District make available the entire set of 21,555 e-mails and attachments that the District currently has in its possession prior to the District's privilege review, subject to (1) broad protections designed specifically to benefit and protect the District and cover all concerns raised by the District, including a clawback provision that would allow the District to retrieve documents marked "deliberative process privilege" or "attorney client" privilege, for which plaintiffs would claim no waiver, and (2) other reasonable terms of a protective order preventing the use of such documents for purposes other than this litigation.

This option would satisfy the District's concerns and effectively shift the costs of reviewing the production to the plaintiffs, who have software capabilities and staff available in order to receive, narrow and process such an electronic production, although not by the preliminary injunction motion date now set for December 3. Plaintiffs believe this option presents the best solution to the present problem and alleviates substantial burden and cost on the District. The District's intransigence on this solution is unacceptable; they cannot claim they do not have the staff or resources to make the production, and on the other hand deny plaintiffs the opportunity to conduct the review in an manner most cost effective for them, all under the concern for intra-mural governance and deliberative process privilege.

The District's compromise offer is to reduce the search terms to 3 terms. That search, however, is so hopelessly narrow as to be virtually useless in that it excludes any reference to communications or agreements between and among the Anacostia Waterfront Corporation ("AWC"), the District of Columbia, and/or WMATA. It is important to keep in mind that the

2

development of the Baseball District is an ongoing process commenced years ago that involves hundreds of people within the District of Columbia government, AWC and WMATA, as well as others. Assuming that all of these players used the terms "Monument", "Akridge" or "bus garage" when discussing the disposition of the Southeast bus maintenance facility and Monument's or MR Ballpark's rights therein is not serious or realistic. In fact, the e-mails Monument seeks are communications to which Monument was not a party, but which are central to the case insofar as Monument has alleged in its complaint, that AWC and the District were central players in this entire process. Indeed, it was the District and AWC who started the process in the first place, by issuing a highly competitive Request for Expression of Interest process which Monument won, and which conferred certain rights on Monument. First Am. Compl. (hereinafter "Compl.") at ¶¶ 20-24. Therefore, Plaintiffs submit that this is an unworkable and unfair option, and the District does not truly contend otherwise.

The District and plaintiffs have discussed and agreed upon a narrower set of search terms of approximately 22, but the District cannot advise whether such a limited list will actually narrow the amount of potentially responsive documents. While plaintiffs continue to be willing to work with the District in this regard, it is likely that the scope of responsive documents will be narrower, but not so limited that the District will be able to produce them within any reasonable time, absent the clawback and other protections described above being implemented. Even if such protections are implemented, the District has advised that it would not be in a position to produce documents until all details of such agreements were worked out, and reduced to a written agreement, which could take at least a few days. Therefore, plaintiffs respectfully suggest that the option presented above is the most workable solution given the circumstances.

The District next suggests that its burden with respect to undertaking this production far outweighs Monument's substantive need for these e-mails. The District pins its argument on the creative, though false, pretext that the subpoena seeks "contextual" information about the activities of AWC, a non-existent non-party. Motion at 3. This is false. Far from seeking contextual information from AWC, Monument has asserted that AWC is at the core of the transactions at issue, having (a) started the RFEI process to which Monument responded and won and which conferred certain benefits and rights on Monument (Compl. at ¶¶ 20-24); and (b) negotiated on Monument's behalf for acquisition of the WMATA parcels in the Ballpark District (*see e.g.* Compl. at ¶ 30). Former Mayor Anthony Williams specifically requested that WMATA terminate or suspend a joint development solicitation for its properties in the Ballpark District so that they could be included within, and in deference to, the AWC process (Compl. at ¶ 17). The District subsequently requested that WMATA suspend an initial invitation for bids in deference to AWC's (and Monument's) rights (*see id.*). And, there may, indeed, have been an agreement between AWC and WMATA to acquire the property for Monument's benefit, which one of the parties ultimately reneged on (*see id.*). Far from being at the periphery of the action, AWC and the District were central players in it.

Likewise, the District's contention that plaintiffs could lessen the burden on the District by taking a deposition as WMATA has requested, is curious. This is a topic discussed on several occasions with counsel for the District, at plaintiffs' suggestion. The District's response has consistently been that there are no current employees who have substantive knowledge of the topics and conduct of AWC, the District, and WMATA at issue in the case. Plaintiffs continue to be willing to explore this option with the District; however, the taking of deposition on a

record devoid of any meaningful electronic or other production is substantively unfair and unworkable.

## II.  THE COST SHIFTING TEST DOES NOT FAVOR SHIFTING COSTS TO PLAINTIFFS

Nowhere does the District even attempt to explain how shifting the costs to plaintiffs would expedite the required discovery. In fact, only the plaintiffs have proposed a reasonable solution which essentially shifts costs to them and which would meet a slightly enlarged timetable, as discussed below. Plaintiffs would undertake this burden in exchange for having immediate access to the documents. However, the District is unwilling to make any compromise with Plaintiffs in order to make that happen. Such an intransigent position should not be rewarded by simply shifting the costs to plaintiffs wholesale.

The District bears the burden of proving that cost shifting is appropriate, *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) (case cited with approval by the District). The principal basis for the District's argument that costs should be shifted is that the documents sought are "tangentially relevant" to plaintiffs' claims. This argument has been addressed above and is simply not correct. Likewise, the District fails to meet the substantial showing that must be made in order to shift costs. In conducting this analysis, it is important to keep in mind that the instrumentality that was at the core of the negotiations and proceedings in this matter was the AWC. There is no doubt that the AWC, unlike other District agencies and offices, intended to generate significant revenues and fees from its property placement operations. The Court should consider this fact in determining whether to shift costs to the plaintiffs. AWC was not a typical government agency; it held itself out as having significant economic clout in the District of Columbia as a result of its position of authority. It and its successor, the Deputy Mayor's Office for Economic Planning and Development, cannot simply ignore this fact.

The District fails to meet the standards set forth in the cases cited by the District, which are not even adopted in this Circuit. Those factors include the following:

(a)   *Likelihood of discovering critical information*:   Only AWC and the District have information discussing and describing why the District was unable (if it was) to reach an agreement with WMATA on the purchase of the bus maintenance facility and with respect to its negotiations with WMATA and other D.C. government agencies. This information is critical to plaintiffs in proving their claims regarding the obligation of WMATA to offer the District the property at issue and why such a transaction was never completed. Being a non-party does not automatically mean the District's documents are less important. Motion at p. 6.

(b)   *Availability of information from other sources*:   AWC and the District's internal information as to the circumstances surrounding why the transaction was not consummated with WMATA (*i.e.*, whether AWC believed a deal had been reached, what AWC believed prevented a deal, and what AWC believed its obligations (and WMATA's obligations) to plaintiffs were) cannot be gleaned from a source other than the Distric's internal documentation.

(c)   *The Amount in Controversy:*   While the amount in controversy is substantial, so is the District's interest in defending its position, reputation, and conduct throughout this important process, as evidenced through its own internal documentation.

(d)   *Parties' Resources compared to the total cost of production:*   The parties resources are relative. While plaintiffs have borne substantial costs and expenses in prosecuting this litigation and in discovery efforts, they are not required to

shoulder the entire burden, particularly where the District is now acting on behalf of the AWC and must devote resources to defending the economic activities undertaken by it or its agencies or instrumentalities.

(d)  *Ability of Parties to Control Costs:* Both parties are equally able to control costs.

(e)  *Importance of Issues at Stake:* The importance of issues at stake to Monument is apparent.  The District obviously believes that there are important issues at stake, otherwise it would permit the production of all 21,555 e-mails under the circumstances described above.  The District is plainly concerned about its conduct in this regard and its reputational interests with respect to that conduct, perhaps with good reason.  The District suggests the need for intra-mural candor in governance means it should not have to produce (Motion at 6); however, this need pales significantly when the documents sought pertain to the rights of a non-governmental party such as plaintiffs that are directly impacted by the governmental conduct.

(f)  *Importance of Discovery:*  The discovery is critical to several components of plaintiffs' case, and plaintiffs do not otherwise have access to it, as described above.  The discovery is also, however, important to the District's interests in the development of a critical new section of the City.

(g)  *Relative Benefits:* While there are substantial benefits to the plaintiffs in obtaining this discovery, the District also benefits insofar as it is interested in determining and knowing the conduct of its former instrumentality, AWC, and in being prepared, if necessary, to defend itself from actual claims in connection with the now apparently defunct AWC process for the Ballpark District.

### III.     ENLARGEMENT OF DISCOVERY PERIOD

Plaintiffs acknowledge and agree that an enlargement of time for completion of discovery in this matter has become necessary and expedient. This is the result of several factors, none of them having to do with plaintiffs' lack of diligence.

(a)     First, WMATA itself acknowledges that any closing on the bus maintenance facility will not take place until probably late January, 2008 at the earliest since WMATA's Board of Directors meets on the fourth Thursday of each month and the facility is not even on the Board of Director's agenda for December.

(b)     Second, WMATA produced yesterday (November 28) an additional 12,000 documents to plaintiffs which plaintiffs are just now beginning to review, amounting to an additional 70,665 pages. This information is from the database of key WMATA personnel and has already been reviewed by WMATA for responsiveness prior to production;

(c)     Third, WMATA has today (November 29) produced two additional DVD's containing substantial additional information.

(d)     There are outstanding, albeit minor, discovery issues with The John Akridge Company not yet resolved;

(e)     The District's position, even if the court orders the complete production of 21,555 e-mails under a clawback provision and protective order as discussed above, will certainly mean that discovery cannot be complete by the current discovery cutoff date of November 30 and even if it were, there would be no meaningful time at this point for plaintiffs to review and digest the volume of information that will be produced prior to its current briefing deadline of December 3.

Plaintiffs respectfully request that Court take into consideration that plaintiffs will file on Thursday, November 29 a motion to extend the discovery period through mid-December and a modified briefing schedule based on that requested date, for the Court's approval.

## IV.    CONCLUSION

Plaintiffs believe that the compromise position outlined above is the best solution for resolving the discovery difficulties faced by the District within the tight timeframes of this case. In light of its difficult position, the District cannot simply remain intractable with respect to reaching a compromise that would relieve it of substantial burden and cost, its primary goals, while allowing plaintiffs the opportunity they require to keep the discovery process moving and to complete it expeditiously.

Date:  November 29, 2007

Respectfully submitted,

NIXON PEABODY LLP

/s/ *Louis E. Dolan, Jr.*

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 Ninth Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2007, a true and correct copy of the

foregoing Partial Opposition to Motion to Enlarge was served by ECF upon:

        Harvey A. Levin, Esquire
        Thompson Coburn LLP
        1909 K Street, Suite 600
        Washington, D.C. 20006-1167

        Counsel for Defendant

                */s/ Vernon W. Johnson, III*
                _____
                Vernon W. Johnson, II