IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONUMENT REALTY LLC, *et al.*, )<br>)<br>*Plaintiffs* )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN AREA )<br>TRANSIT AUTHORITY, )<br>)<br>*Defendant* )<br>) | Civil Action No. 1:07-CV-01821 (EGS) |

**OPPOSITION OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
TO PLAINTIFFS' MOTION TO FURTHER MODIFY SCHEDULE**

Washington Metropolitan Area Transit Authority ("WMATA"), by undersigned counsel, respectfully opposes Plaintiffs' motion to modify the scheduling order. The grounds on which Plaintiffs rely are entirely of their own making, result from an abuse of Plaintiffs' representation to this Court that Plaintiffs sought only "some limited directed discovery,"[1] will severely harm WMATA and the public interest and mask the fact that Plaintiffs filed their Complaint without the requisite "evidentiary support" or specific identification of allegations that "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," and without being "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."[2]

---

[1] Statement of Plaintiffs' counsel Vernon W. Johnson, III to the Court, Transcript of October 17, 2007 Status Hearing ("Oct. 17 Transcript") at page 13, lines 2-3. *See id.* at page 16, lines 7-8, where the Court acknowledged and relied on Mr. Johnson's representation: "[S]ounds like you folks have already agreed on at least the basis for some limited discovery." Plaintiffs supplied a copy of the Oct. 17 Transcript as Exhibit C to Plaintiffs' Reply to The John Akridge Company's Opposition to Motion to Compel Compliance With Subpoena Duces Tecum (Nov. 29, 2007; Dkt. No. 35).

[2] Fed. R. Civ. P. 11(b)(3) & 11(b)(2).

BACKGROUND

The Complaint essentially has three claims: (i) Plaintiffs' claim that they had a preexisting agreement with WMATA committing WMATA to negotiate exclusively with Plaintiffs for the sale of WMATA's Bus Garage Property; (ii) Plaintiffs' claim that WMATA should have awarded the right to purchase the Bus Garage Property to MR Ballpark 7 LLC ("MRB 7") based on MRB 7's alternate, "escalator" bid that purported to top an unidentified bid of an unnamed other bidder by $250,000; and (iii) Plaintiffs' claim that WMATA's award of the right to purchase the Bus Garage Property to the John Akridge Company was improper because the Akridge bid was conditional and was not the highest.

ARGUMENT

**1. Plaintiffs Are Abusing The Right To "Directed Limited Discovery" That They Sought And That The Court Granted**

In this motion and in Plaintiffs' two ancillary proceedings against the District of Columbia and the John Akridge Company, Plaintiffs are abusing -- if not outright defying -- their representation to the Court and to WMATA, and the premise on which WMATA and apparently the Court proceeded, that Plaintiffs sought only "some limited directed discovery," in order to prepare a fast-track motion for preliminary injunction. In all likelihood because Plaintiffs themselves have nothing in the way of documentation to support any of their claims, *see* Point 2 below, Plaintiffs launched and are pursing a massive discovery quest, resulting in three litigated proceedings because of the extensive scope, volume and expense of Plaintiffs' requests and follow-up demands.[3]

---

[3] Because WMATA viewed the discovery disputes on Plaintiffs' subpoenas as being between Plaintiffs and the respective subpoenaed third parties, WMATA did not become involved in these proceedings. WMATA now has read the papers in the two subpoena proceedings, and from these papers the following are clear to WMATA:

First, it is clear that Plaintiffs really do not have any documents to support their claims and are desperately pressing the District in the hope – which WMATA believes will remain

Plaintiffs' discovery quests are reminiscent of the remark of Edward Bennett Williams, then the owner of the Washington Redskins, about George Allen. Paraphrased, Mr. Williams said of Mr. Allen, "I gave him an unlimited budget, and he exceeded it." So too here are Plaintiffs exceeding the intended scope of discovery and the context of the case. This case is in the preliminary injunction phase. The federal rules do not intend, WMATA did not intend,

---

unrequited – that the District has something, somewhere, to evidence an agreement *to which the District was not even a party*, *i.e.*, the alleged elusive agreement in which WMATA granted Plaintiffs the exclusive right to negotiate to acquire the Bus Garage Property. The notion that the District will have documentation of an alleged agreement between WMATA and Monument that neither WMATA nor Monument has is unrealistic, if not absurd.

Second, there is no reason to believe that anything more that Monument might receive in discovery will be pertinent, or even helpful. Certainly Plaintiffs' papers in the two subpoena proceedings advance no plausible expectation that anything left to be produced will supply Plaintiffs with the evidence that they do not have now, and the papers of the two subpoenaed parties support that lack of any plausible expectation. Nor is WMATA aware of anything buried in other documents that might supply Plaintiffs with the evidentiary basis that Rule 11 required them to have before filing. *See In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990) ("The need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis."); *Coates v. United Parcel Services, Inc.*, 933 F. Supp. 497, 499 (D. Md. 1996) (same); *Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 641 (D. Kan. 1999) ("That litigants may engage in successive forms of discovery is not a license to engage in repetitious, redundant and tautological inquiries." (internal quotation marks and citations omitted)).

Third, nothing in the District's files, electronic or otherwise, could supply the critical "missing link," *i.e.*, evidence that the WMATA Board acting in public session approved an agreement committing WMATA to negotiate exclusively with Monument. It is unsurprising that the voluminous discovery supplied by WMATA has not allowed Monument to overcome this Sisyphean burden because there simply is nothing to be discovered. *See Elcon Enters., Inc. v. WMATA*, 977 F.2d 1472, 1480 (D.C. Cir. 1992) ("[Monument] cannot escape the fact that the final decisionmaker in this procurement was the Board.").

Fourth, it is clear that Plaintiffs have an ax to grind against Akridge that goes beyond Akridge's submitting the high bid or have some other ulterior motive with respect to Akridge. Plaintiffs' justification for the deep probing of Akridge's financial wherewithal -- especially at the preliminary injunction stage -- is shameful. Plaintiffs know -- one or both of Monument's two principals, and on information and belief one or more of Monument's senior officers, came from Akridge -- that Akridge is a major real estate owner and developer of long standing in the District and has untold millions of dollars of real estate transactions to its name. Akridge's standing as a real estate owner and developer is such common knowledge, and so readily verifiable, that the Court may take judicial notice of that standing. *See* Fed. R. Evid. 201.

and from the statements on the record on October 17, WMATA respectfully submits, it does not appear that the Court intended, that the preliminary injunction phase should take on the trappings of full merits litigation.

Plaintiffs evidently need to be reminded further that had they gotten the temporary restraining order that they sought, they would have had *only 10 days*, possibly extended to no more that 20 days, within which to initiate and complete discovery for a preliminary injunction hearing. It turns Rule 65 on its head for Plaintiffs to use their *not* getting a temporary restraining order as license to go far beyond what they could have gotten had they been successful. *See San Francisco-Oakland Newspaper Guild v. Kennedy*, 412 F.2d 541, 546 (9th Cir. 1969) (in context of preliminary injunction hearing, "the court did not abuse its discretion by refusing to permit extensive discovery which would have led to a full inquiry on the merits of the controversy.").

**2. Plaintiffs' Claims In Large Part Do Not Have An Evidentiary Basis Or A Legal Basis And Therefore Do Not Warrant The Extended Discovery Or Extended Time For Their Preliminary Injunction Motion**

With respect to the first claim, as WMATA showed in its papers in support of its pending Motion to Dismiss First Amended Complaint, Plaintiffs fail to state a claim on which relief can be granted. Plaintiffs make no allegation that any person at WMATA, at any time, at any place or through any medium, promised, committed or agreed that Monument would have the exclusive right -- or any right -- to negotiate for the Bus Garage Property; Plaintiffs do not allege that there was any writing constituting or evidencing the alleged agreement; and the writings that do exist and on which Plaintiffs premise key parts of the Complaint all fatally undermine the existence of an agreement. Furthermore, it appears to WMATA based on WMATA's initial, albeit cursory and limited, review of the almost 30,000 pages that Plaintiffs have produced to date, that Plaintiffs have no document evidencing or supporting the allegation that WMATA promised, committed or agreed that Plaintiffs would have the exclusive right to

negotiate for the Bus Garage Property. *In short, as best as WMATA can discern and as WMATA believes to be fact, Plaintiffs had and have nothing to evidence their allegations of an agreement.*[4]

With respect to the second claim, as shown in the papers on WMATA's Motion to Dismiss First Amended Complaint, Plaintiffs do not and cannot dispute that the clear, categorical law of this District, and generally, holds that MRB 7's alternate, escalator bid was nonresponsive as a matter of law and that WMATA was correct in declining to consider it. *See Trump v. Mason*, 190 F. Supp. 887 (D.D.C. 1961), *Holliday v. Higbee*, 172 F.2d 316 (10th Cir. 1949), and *Comptroller General to Sec'y of Agriculture*, 44 Comp. Gen. 292 (Nov. 19, 1964); Reply of Washington Metropolitan Area Transit Authority in Support of Motion to Dismiss First Amended Complaint (Nov. 29, 2007; Dkt. No. 34), at 10-11. *In short, Plaintiffs' claim that WMATA's declining to consider MRB 7's escalator bid was improper and unlawful was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."*

With respect to the third claim, the Akridge bid was unambiguous, responsive and the highest. It proposed a fixed price not subject to alteration and not requiring the integration of the bid of another or of other materials outside the bid itself, and it did not contain any conditions or qualifications that affected the fixed bid price or any other material term of the Invitation for Bids, Akridge's obligation to perform or WMATA's ability to enforce. Under, again, clear law, Akridge's bid was proper and WMATA's acceptance of the bid was proper and correct. *See Tutor-Saliba Corp. v. U.S. Army Corps of Engineers*, No. 94-0908, 1995 WL 520765, at *6 & *8 (D.D.C. Aug. 23, 1995).

---

[4] Nor do Plaintiffs have any prospect of obtaining evidence of such agreement by WMATA through discovery with the District.

Because Plaintiffs' claims fail as a matter of fact and a matter of law on even the *prima facie* level, Plaintiffs ought not be granted further leave for a wide-spread, unreasonable, costly and unduly burdensome search to find something – anything – to support their baseless claims. *See In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990) ("The need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis."); *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003) (upholding district court's decision that plaintiff "was not entitled to conduct discovery in order to cure the…pleading defect."); *Coates v. United Parcel Services, Inc.*, 933 F. Supp. 497, 499 (D. Md. 1996) (same as *In re Kunstler*); *Matos v. Hove*, 940 F.Supp. 67, 72 (S.D.N.Y. 1996) (discovery rules not hunting license to conjure up claim that does not exist); *Avnet, Inc. v. Am. Motorists Ins. Co.*, 115 F.R.D. 588, 592 (S.D.N.Y. 1987) (same).

**3. Delay Will Seriously Prejudice WMATA And The Public Interest**

As WMATA previously informed the Court orally, *see* Oct. 17 Transcript at page 4, line 9 through page 5, line 1, and at page 14, lines 1 though 19, the injury that Plaintiffs are inflicting on WMATA and the public in this proceeding is immense. Extending this proceeding to a hearing in late January exacerbates this harm.

Plaintiffs' speculation about WMATA's timetable is incorrect. The key condition for closing the Bus Garage Property sale is WMATA's securing a replacement site for the garage. The intended replacement site is D.C. Village, a property that the District owns. Thus, securing that replacement site requires D.C. Council approval. WMATA is cautiously optimistic that it will have that approval in time for WMATA Board approval at a Board meeting scheduled for December 13, 2007. Thus, WMATA has a reasonable expectation of being in position to close after December 13, though WMATA has committed not to close until after December 31 to allow for this proceeding. If the Court delays the preliminary

injunction proceeding as Plaintiffs request, that will set back the prospective closing by at least a month and likely more, allowing time for the Court to decide the motion.

Therefore, granting Plaintiffs' request virtually assures that the bus garage will be where it is on Opening Day for the Nationals in April 2008, meaning that WMATA will have to shut down the garage for extended periods for the 81 home games (for three hours before, during and for three hours after each game), at great cost and inconvenience to WMATA and threatening great disruption to the public transportation system. Plaintiffs' request is an act of extreme selfishness. In effect, Plaintiffs are saying, "The public be damned."

Additionally, the longer this case goes on, the more it is costing WMATA. WMATA is well into six-figures in expenditures, much of the costs for the outside vendor to work 24/7 to compress tapes and do electronic searches for documents that may satisfy Plaintiffs' literal search requests but do no more than that. WMATA's having to spend this much money searching for something that does not exist, and that Plaintiffs know does not exist, is wrong.

**4. Plaintiffs Have No One But Themselves To Blame For Their Dilemma**

Plaintiffs bear full blame for whatever predicament they find themselves in. Plaintiffs claim that they had an agreement with WMATA, but Plaintiffs have no documentation evidencing the alleged agreement. Plaintiffs are sophisticated owners and developers of real estate both within and outside the DC metropolitan area. Plaintiffs have teams of lawyers, including two of the City's larger firms working for them on this matter. If Plaintiffs do not have a piece of paper showing WMATA's agreement as alleged, Plaintiffs have only themselves and/or their lawyers to blame.[5] Similarly, the case law uniformly rejecting bids like MRB 7's

---

[5] But for Plaintiffs' wholesale designation of all their documents as "Confidential" and the short response time to Plaintiffs' motion, *see* Point 5 below, WMATA would attach an email that Plaintiffs produced showing that Plaintiffs discussed an "Exclusivity Agreement" that a potential contractor or venturer supplied Plaintiffs. It is not as if the notion of putting the right to exclusivity in writing were unknown to Plaintiffs, a premise that is not credible in any event.

alternate escalator bid is clear.  If Plaintiffs ignored or overlooked this law, again they have only themselves and/or their lawyers to blame.  *WMATA, Akridge and The District are not to blame for Plaintiffs' errors.*  WMATA, Akridge and The District -- and the travelling public and the Nationals' fans -- should not be made to pay for Plaintiffs' errors.  *See Atlanta Shipping Corp. v. Int'l Modular Housing, Inc.*, 547 F. Supp. 1356, 1361 (S.D.N.Y. 1982) ("IMH has itself to blame because its ignorance of the law caused it to take the steps that made removal possible."); *Velez v. Mohiuddin*, 1999 WL 810418, at *4 (C.D. Cal. 1999) (granting motion to dismiss and observing, "Mr. Boyle repeatedly ignored applicable case law or misstated the law in the hopes of creating a basis for opposition to Defendants' motion.  For example … Mr. Boyle claimed that the Court should not dismiss his "cause of action" under the Civil Rights Act because discovery could demonstrate an improper motive behind the government's actions ….").

**5. Plaintiffs' Discovery Abuses Extend To Their Own Production, Which Violates This Court's Protective Order In Letter And In Spirit And Causes WMATA Serious Harm**

Paragraph 1(a) of the Agreed Protective Order (Dkt. No. 12 and Minute Order dated Oct. 22, 2007; the "Protective Order") allows the parties to designate certain production as Confidential "only when such person in good faith believes it contains sensitive personal information, trade secrets, or other confidential research, development, or commercial information."

Plaintiffs produced almost 30,000 pages of documents to WMATA.  Plaintiffs stamped "Confidential" on *every one* of the almost 30,000 pages.  Plaintiffs applied the "Confidential" designation to thousands upon thousands, if not tens of thousands (WMATA cannot estimate with any precision, but the number is large), of pages of documents that do not contain "sensitive personal information, trade secrets, or other confidential research, development, or commercial information," including public documents, WMATA, Anacostia Waterfront

Corporation and District of Columbia documents, run-of-the-mill emails, Plaintiffs' pleadings and the exhibits to Plaintiffs' two complaints and to Plaintiffs' motion for a temporary restraining order and preliminary injunction, documents that Plaintiffs made public with its filings.

To put the matter kindly, Plaintiffs' wholesale designation of every single page of their production as "Confidential" does not meet the letter or the spirit of the Protective Order.

Furthermore, because the Protective Order places strictures on the use of documents designated Confidential and imposes additional requirements for use of the documents and information contained in the documents in this proceeding, Plaintiffs' wholesale designation of all their documents as "Confidential" makes WMATA's use of the documents unfairly cumbersome and unnecessarily expensive. Needless to say, WMATA would not have agreed to the entry of this Protective Order had WMATA known how Plaintiffs would employ it.[6]

Because Plaintiffs themselves are engaging in a patent abuse of discovery and in doing so are unduly burdening WMATA, Plaintiffs should not be rewarded and WMATA further prejudiced with the relief Plaintiffs seek. *See Austin v. United Parcel Service, Inc.*, 2002 WL 31050867, at *4 (S.D. Iowa Sept. 13, 2002) (finding no reason to reward plaintiff by granting its motion to compel when considering "the delay of Plaintiff in addressing discovery deficiencies, the substantial burden to Defendant of compelling further disclosure and the impact of additional discovery on the timely resolution of this matter."); *In re Betacom of*

---

[6] Shortly, WMATA will be filing a motion for an order removing the "Confidential" designation of all Plaintiffs' documents. As will be explained further in WMATA's forthcoming motion, WMATA asked Plaintiffs voluntary to comply with the letter and spirit of the Protective Order regarding designation of documents as Confidential. While Plaintiffs' counsel indicated a willingness to review the mass designation and offered hypothetical possibilities that might partially ease WMATA's burden, Plaintiffs have not made a firm proposal and have not taken any action. Plaintiffs' entire 30,000-page production remains "Confidential" in name, but decidedly *not* "Confidential" in fact. WMATA will request relief from the mass designation without further delay in order possibly to respond further to the instant motion but certainly to respond in very limited time to the motion for preliminary injunction itself.

*Phoenix, Inc.*, 225 B.R. 703, 707 (D. Ariz. 1998) ("As indicated by this Court's orders of sanctions upon the Debtors, it is the Debtors who have attempted to cloak the evidence before this Court.  This Court refuses to reward the Debtors' abuse of the discovery process by characterizing the evolution of the Nugents' claims as anything other than an attempt to discover how and why they did not receive compensation for their interests in BCI."); *International Paper Co. v. James,* No. 81 Civ. 4780 (LBS), 1989 WL 240079, at *3 (S.D.N.Y. Oct. 12, 1989) ("The record shows, however, that James misrepresented his involvement with Mentco when he denied he had any relationship with Mentco other than as a consultant.  Thus, any delay resulting from the amendment is caused by James.  To deny the motion would reward James for his abuse of the discovery process.").  *Cf. Manning v. Pfizer, Inc.*, No. Civ.A. 5:02CV71, 2005 WL 2076611, at *9 (N.D. W. Va. Aug. 24, 2005) ("To determine otherwise may result in a party abusing the discovery process in violation of the rules being unintentionally rewarded for such abuse ….").

**6. Plaintiffs' Proposed Schedule Unreasonably Burdens WMATA With Having To Work Over The Christmas And New Year's Eve Holidays**

Plaintiffs selfishly propose that they file their preliminary injunction motion on December 21 and that WMATA file its opposition on December 31, leaving WMATA, its lawyers and any third parties with whom WMATA might engage (assuming their willingness) to labor over the Christmas and New Year's Eve holidays in order to get an Opposition timely filed.  Plaintiffs' request is unreasonable, to say the least, and the Court should not grant it.[7]

---

[7] Plaintiffs note that they requested an extension from WMATA but WMATA declined.  But Plaintiffs omit that undersigned counsel expressly told Plaintiffs' counsel that undersigned counsel had family coming into town on December 26 and had plans with his family, including possible travel plans, for December 26 through December 31.  Knowing this, Plaintiffs nevertheless ask the Court to have undersigned counsel working on these three days.  The holiday spirit is just one more of Plaintiffs' victims in this case.

## CONCLUSION

If Plaintiffs have anything to support their claims, let them show it, rather than wasting everyone's time and money in endless discovery games. It is time for Plaintiffs to stop trifling with the system and with the public interest in finalizing the Bus Garage Property sale and relocating the bus garage away from the new stadium.

For the foregoing reasons, WMATA respectfully requests that the Court deny Plaintiffs' motion, expeditiously consider WMATA's pending motion to dismiss and grant WMATA such other and further relief as may be appropriate, including but not limited to relief to protect the public and other private interests from the continuing harm that Plaintiffs have inflicted and continue to inflict in this groundless proceeding.

Dated this 30th day of November 2007.

        Respectfully submitted,

           /s/ Harvey A. Levin
        Harvey A. Levin (D.C. Bar No. 203869)
        THOMPSON COBURN LLP
        1909 K Street, N.W. Ste. 600
        Washington, D.C. 20006-1167
        T: (202) 585-6942 (direct)
        F: (202) 508-6969 (direct)
        email: hlevin@thompsoncoburn.com

           /s/ Donald A. Laffert
        Carol B. O'Keeffe
        General Counsel
        Donald A. Laffert
        Bruce P. Heppen
        Associate General Counsel
        Washington Metropolitan Area Transit Authority
        600 Fifth Street, N.W.
        Washington, DC 20001
        T: (202) 962-1499
        F: (202) 962-2550
        email: dlaffert@wmata.com
        email: bheppen@wmata.com

Counsel for Defendant Washington Metropolitan Area Transit Authority

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2007, a true and correct copy of the foregoing Opposition was served by ECF and by electronic mail on:

> Louis E. Dolan, Jr., Esquire
> Vernon W. Johnson, III, Esquire
> NIXON PEABODY, LLP
> 401 Ninth Street, N.W.
> Washington, D.C. 20001

    /s/ Harvey A. Levin