## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MONUMENT REALTY LLC, et al.,       )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )        Civil Action No. 1:07-cv-01821 (EGS)
                                   )        Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN            )
AREA TRANSIT AUTHORITY,            )
                                   )
        Defendant.                 )
                                   )

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION
### OF CERTAIN ELECTRONIC DOCUMENTS FROM WMATA

Plaintiffs Monument Realty LLC and MR Ballpark 7 LLC (collectively, "Monument")

respectfully move this Court to compel Defendant Washington Metropolitan Area Transit

Authority ("WMATA") to produce a narrow set of documents that are key to the claims asserted

in this matter.  Specifically, Monument seeks electronically-stored documents created on or after

January 1, 2007 from two WMATA employees -- Nat Bottigheimer and Bob Burns -- that relate

to the bidding process, award, and sale of the Southeast Bus Garage Property (the "bus garage").

Mr. Bottigheimer is WMATA's contracting officer responsible for handling WMATA's two

invitations for bids, and Mr. Burns apparently has lead responsibility for issues surrounding the

closing of the bus garage with The John Akridge Company ("Akridge").  For the reasons

discussed in the Memorandum of Points and Authorities filed in support of this Motion to

Compel, these documents are central to Monument's case and necessary for a complete picture

of the dealings between WMATA and Akridge regarding the bidding process, the award to

Akridge, and the sale of the bus garage.

WMATA's counsel informed Monument's counsel on November 29 that it would not voluntarily produce these critical documents. As a result, Monument was forced to file this limited Motion to Compel.

WHEREFORE, Monument respectfully requests that this Court grant this Motion to Compel, ordering WMATA to produce at or before 5:00 p.m. on Wednesday, December 5, 2007 (1) all electronically-stored documents dated January 1, 2007 to the present that are to or from Nat Bottigheimer and that relate in any way to the sale of the bus garage, the two invitations for bids for the sale of the bus garage, and the award to Akridge and (2) all electronically-stored documents dated January 1, 2007 to the present to or from Bob Burns that relate in any way to the sale of the bus garage; and that this Court order such other and further relief as justice may provide.

Dated:  November 30, 2007

Respectfully submitted,

NIXON PEABODY, LLP


/s/ *Louis E. Dolan, Jr.*
_____
Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

2

## CERTIFICATION PURSUANT TO LCvR 7(m)

Undersigned counsel for Plaintiffs hereby certifies, pursuant to LCvR 7(m), that a good faith effort was made to discuss the subject of this Motion to Compel, and the relief requested herein, with counsel for Defendant Washington Metropolitan Area Transit Authority.  Plaintiffs were unable to resolve these issues despite such effort.  Counsel for WMATA was informed that this motion is being filed.

Dated:  November 30, 2007

Respectfully submitted,

NIXON PEABODY, LLP

/s/ *Louis E. Dolan, Jr.*

_____

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)

ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2007, a true and correct copy of the foregoing Plaintiffs' Motion to Compel Production of Certain Electronic Documents from WMATA, Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Production of Certain Electronic Documents from WMATA with appended Exhibits, and Proposed Form of Order was served by ECF upon:

Harvey A. Levin, Esquire
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167

Counsel for Defendant

/s/ *Louis E. Dolan, Jr.*

Louis E. Dolan, Jr.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONUMENT REALTY LLC, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY, )<br><br>Defendant. )<br> ) | Civil Action No. 1:07-cv-01821 (EGS)<br>Judge Emmet G. Sullivan |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF CERTAIN ELECTRONIC DOCUMENTS FROM WMATA**

**I.    Introduction**

Two of the key personnel involved in this case on behalf of Defendant Washington

Metropolitan Area Transit Authority ("WMATA") are Nat Bottigheimer, WMATA's

Contracting Officer and Assistant General Manager of its Department of Planning and Joint

Development, and Bob Burns, a WMATA employee with its Office of Property Development

and Management.  Mr. Bottigheimer was intimately involved in the underlying events, serving as

WMATA's Contracting Officer on its contemplated disposition of the contested Southeastern

Bus Garage. *See, e.g.,* Letter dated September 20, 2007 from Thomas W. Wilbur, Senior Vice

President The John Akridge Company, to Nat Bottigheimer, a copy of which is attached

hereto and made a part hereof as Exhibit "A"; Letter dated October 1, 2007 from Nat

Bottigheimer to Matthew J. Klein, President of The John Akridge Company, a copy of which is

attached hereto and made a part hereof as Exhibit "B."  Mr. Burns was also involved in the

underlying events as WMATA's employee to whom interested parties were instructed to submit

questions about the Invitations for Bid for the Property. *See* Exhibit "B" hereto; Invitation for

Bid No. 08-1, a copy of which is attached hereto and made a part hereof as Exhibit "C" at 7.

WMATA has produced many paper documents which refer or relate to the involvement

of Mr. Bottigheimer and/or Mr. Burns in the underlying events. The parties have reached an

impasse, however, with respect to electronic records of Mr. Bottigheimer and Mr. Burns.

Although the parties have had numerous discussions in an effort to resolve their differences, they

have been unable to do so. WMATA will not agree to produce this information, and Plaintiffs

plainly need and are entitled to this information. Plaintiffs have therefore filed this motion to

compel, asking the Court to direct WMATA to produce this information.

## II.    The Subject of This Motion

This motion seeks to compel production of a limited set of electronic documents and e-

mails from these two key employees of WMATA, Mr. Bottigheimer and Mr. Burns. Plaintiffs

are asking the Court to direct WMATA to produce electronically-stored documents from Mr.

Bottigheimer and Mr. Burns that were created since January 1, 2007.

Plaintiffs Monument Realty LLC and MR Ballpark 7 LLC (collectively, "Monument")

originally requested all documents to or from Mr. Bottigheimer that relate in any way to the

contemplated disposition of the Property and the bid process conducted as part of that planned

disposition. In discussions with WMATA's counsel specifically regarding Mr. Bottigheimer's

database, and in an effort to narrow discovery in this case, Monument initially agreed that it

might not be necessary for WMATA to produce Mr. Bottigheimer's electronically-stored

documents. Monument made this initial agreement because WMATA stated that Mr.

Bottigheimer was only involved in the invitation for bid process and could not, therefore, have

had any involvement with the facts underlying Monument's claims that it had exclusive interests

in the Property.  Monument agreed to this position as an initial matter in order to expedite a first

cut by WMATA at locating responsive documents.

Since those initial discussions, however, Monument has learned certain key facts

regarding Mr. Bottigheimer's deep involvement in this entire process.  First, WMATA

designated Mr. Bottigheimer as early as January 2007 as the lead person for the relocation of the

Southeastern Bus Garage, which was necessarily linked with the sale of the Property on which

the Bus Garage is operated.  Later, as Contracting Officer responsible for the invitations for bid

with respect to the Property, he was personally cajoled and lobbied by the yet-to-be-announced

winning bidder, The John Akridge Company ("Akridge"), and one of Akridge's counsel, the law

firm of Williams & Connolly, to have WMATA accept Akridge's bid and to accept

consideration from Akridge outside the four corners of the invitation for bids.

That additional consideration included the offer of the use of nearby real estate owned by

Akridge, and is part of the basis for some of Monument's challenges to WMATA's actions in

this case.  (Amd. Cmp. ¶¶ 76, 217-223.)  Of course, there was no way for any other bidder to

know that this additional consideration was being offered or was expected as part of the

solicitation.  (*See id.*)  These communications, some of which were by e-mail, took place

throughout the bid solicitation process and, specifically, after the bids were submitted and

opened, but prior to the announcement of the award.

These e-mail communications, some of which have not yet been produced by WMATA,

are central to Monument's case for a variety of reasons.  First, this was supposed to be, according

to WMATA, a sealed bid process – not, as WMATA repeatedly asserts when explaining why it

rejected Monument's Alternate Bid, an "auction."  *See, e.g.*, WMATA's Motion to Dismiss First

Amended Complaint at 21.  Yet, WMATA was routinely and repeatedly receiving e-mail and

other correspondence from the ultimately successful bidder and its agents that encouraged WMATA to consider its bid in a light more favorable than the other submitted bids and that encouraged WMATA to negotiate with Akridge for "material savings" that only Akridge could provide. *See* Exhibit "A" hereto.

This "material savings" involved offers and efforts beyond the four corners of the invitation for bids issued by WMATA. Although WMATA has criticized Monument in this case for allegedly not being able to follow the directions set forth in the bid solicitation, and WMATA has stated the importance of conducting a process fair to all bidders, WMATA's own conduct – at the very least – implicates the same concerns. *See* WMATA's Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint at 22-25. Clearly, Monument is entitled to the full scope of information that the WMATA decisionmakers had in pursuing the disposition that they chose to affect for the Property.

The facts revealed thus far, which Monument needs the information sought on this motion to further substantiate, demonstrate serious and unlawful flaws in the disposition process pursued by WMATA. Notably, Mr. Bottigheimer's initial reaction to the bids of Monument and Akridge was that they were a toss-up. *See* Letter dated August 29, 2007 from Nat Bottigheimer to John Catoe, WMATA's General Manager, a copy of which is attached hereto and made a part hereof as Exhibit "D." At some point in the process, Mr. Bottigheimer's mind was apparently changed, and Monument is entitled to full discovery of the relevant information. *See also* Letter dated July 25, 2007 from Akridge counsel at Williams & Connolly to Nat Bottigheimer, a copy of which is attached hereto and made a part hereof as Exhibit "E";[1] Letter dated July 30, 2007

---

[1]    Other documents produced in discovery indicate that it was precisely at this time that WMATA elected not to go forward with a deal to sell the property to the Anacostia Waterfront Corporation for Monument's benefit
*(Footnote continued on next page)*

from Akridge to Nat Bottigheimer, a copy of which is attached hereto and made a part hereof as Exhibit "F"; Letter dated August 3, 2007 from Akridge to Nat Bottigheimer, a copy of which is attached hereto and made a part hereof as Exhibit "G."

Mr. Burns, according to the documents that Akridge (not WMATA) has produced in this case, apparently has lead responsibility for issues surrounding the closing of the bus garage and there also appears to be ongoing discussion between Akridge and Mr. Burns regarding the Property and its disposition, which directly addresses whether Akridge is being offered the same contract as other bidders would have been.

## ARGUMENT

### III.    The Electronic Records of Mr. Bottigheimer and Mr. Burns Are Relevant and Discoverable

The provisions of Fed. R. Civ. P. 26(b)(1) broadly permit discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." It is well-settled that "[r]elevance for discovery purposes is broadly construed." *See Doe v. District of Columbia,* 231 F.R.D. 27, 30 (D.D.C. 2005). In this case, given the involvement of Mr. Bottigheimer and Mr. Burns in the underlying events, it is obvious beyond peradventure that their electronic records in WMATA's possession, custody, or control are relevant and discoverable.

Indeed, WMATA has produced Mr. Bottigheimer's hard copy files. There is no basis for WMATA's refusal to produce his electronically-stored information. In an effort to compromise, Monument specifically limited the relevant time period to electronic documents created this year. These documents are critical to Monument's claims in this matter, as Mr. Bottigheimer was

---

(Footnote continued from previous page)

and that WMATA's General Counsel Carol B. O'Keeffe, who was present at bid opening, also had direct communications with Akridge's lawyers at exactly this time.

WMATA's Contracting Officer in the process it decided to pursue and was involved directly involved in the bid process.

The myriad communications in which Mr. Bottigheimer was engaged implicate directly the integrity, and legality, of the bid process WMATA determined to pursue. Fundamental principles of sealed bidding require that WMATA evaluate bids without "discussion." *See* FAR 14.101(d) ("Bids shall be evaluated without discussions."). WMATA's Compact implicitly recognizes this requirement in section 73(a)(2)(A)(iii): "In determining the competitive procedure appropriate under the circumstances, the Authority shall solicit sealed bids if . . . it is not necessary to conduct discussions with the responding sources about their bids." This is one of the major characteristics that distinguishes sealed bidding from negotiation. *See* American Bar Association Model Procurement Code (2000), sec. 3-202 ("Competitive sealed bidding does not include negotiations with bidders after the receipt and opening of bids. Award is to be made based strictly on the criteria set forth in the Invitation for Bids.").

The communications between Akridge and WMATA tainted the sealed bidding process and transformed the sealed bid process into a negotiation. *See e.g.*, *In re I.T.S. Corp.*, B-243223, 1991 U.S. Comp. Gen. LEXIS 824 (July 15, 1991) (denying protest and holding that agency properly converted procurement from a sealed bid to a negotiation where it concluded, *inter alia*, that discussions with the bidders may be necessary). The correspondence that has been produced thus far is certainly consistent with such a transformation. Akridge's July 25, 2007 letter protested the entire initial Bid Request but also requested a "conversation with [a] representative of WMATA so that it can better understand what transpired with regard to the Bid Request." *See* Exhibit "E" hereto. That request was granted by WMATA on the morning of July 26th when

Ms. O'Keeffe called Williams & Connolly and this conduct raises the possibility that Akridge and WMATA may have had discussions that violated the rights of other bidders.

Akridge later protested the re-opening of bids on the grounds that it might permit parties that had not previously submitted bids to reconsider their position and to do so on the second opportunity. *See* Exhibit "F" hereto. The correspondence continued with Akridge's August 3, 2007 letter in which Akridge petitioned WMATA to "respond to this letter so that [Akridge] can understand exactly how WMATA intends to proceed with the disposition of the Property." *See* Exhibit G hereto. Akridge's letters indicate an intense effort at lobbying WMATA to engage in unlawful conversations and negotiations regarding the disposition of the Property.

Perhaps most telling, however, is Akridge's pre-award letter dated September 20, 2007, Exhibit "A" hereto, in which it becomes clear that Akridge was actively pursuing an effort to provide WMATA with benefits going beyond what the invitation for bids asked for (and thereby demonstrating that Akridge's bid submissions were not responsive, as a matter of law). In that letter, Akridge informed Mr. Bottigheimer that WMATA would receive "material savings" should Akridge's bid be accepted. Akridge's intentions are unmistakable: "Assuming Akridge is the selected bidder for the Southeast Bus Garage site and we are able to reach agreement regarding the terms for WMATA to lease the SW Site, there is the potential of material savings to WMATA. These savings could increase the net benefit to WMATA of Akridge's proposal for the Southeast Bus Garage site." *See id.* Collectively, these communications between WMATA and Akridge raise serious questions as to the integrity of the sealed bid process – a fact critical to Monument's case – and underscore the relevance of Monument's request.

These communications further indicate that the other bidders were prejudiced because they did not enjoy similar treatment by WMATA during the conduct of the sealed bid process.

*See, e.g., E. F. Matelich Constr. Co.*, Comp Gen. Dec. B-207600 (Sept. 28, 1982), 82-2 CPD para. 291 at 3 ("The test of prejudice . . . is whether it is reasonably clear that another bidder, given the benefit of the similarly relaxed requirement . . . would have bid in such a manner that it would have been in line for the award."); *see also* FAR 14.211(b) ("[The Contracting Officer] shall not furnish any information to a prospective bidder that alone or together with other information may afford an advantage over others.") Monument certainly would have offered concessions in response to WMATA's Invitation for Bids if Monument was given the benefit of treatment extended to Akridge.

Furthermore, as discussed above, WMATA agreed to produce documents pertaining to the disposition of the Property, which is directly at issue in this matter. (Joint Report Pursuant to Minute Order Dated October 11, 2007, Section (D)(1)(a).) Despite this agreement, WMATA has failed to produce documents to or from Bob Burns of the Office of Property Development and Management. Documents that Akridge produced indicate that Mr. Burns is the chief point of contact for the due diligence and closing of the bus garage. *See* Email dated September 28, 2007 from Akridge to Bob Burns, a copy of which is attached hereto and made a part hereof as Exhibit "H." Thus, Mr. Burns was directly involved in the bid process, and WMATA must produce his documents. Mr. Burns is uniquely positioned to require compliance with – or allow non-compliance with – the bid solicitation and the requirements therein. Absent this information and the communications between Mr. Burns and Akridge, Monument will be unable to ensure that WMATA is offering the same contract to Akridge that it would have been required to offer to others.

IV.     **CONCLUSION**

For the reasons set forth herein, Monument respectfully request that this Court grant

Monument's Motion to Compel.

Dated:  November 30, 2007                    Respectfully submitted,

                                             NIXON PEABODY, LLP


                                             /s/ *Louis E. Dolan, Jr.*
                                             _____
                                             Louis E. Dolan, Jr. (#442881)
                                             Vernon W. Johnson, III (#423756)
                                             401 9th Street, N.W.
                                             Washington, D.C. 20001
                                             202.585.8000
                                             202.585.8080 (fax)
                                             ldolan@nixonpeabody.com
                                             vjohnson@nixonpeabody.com

                                             Counsel for Plaintiffs

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MONUMENT REALTY LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01821 (EGS) |
| | ) | Judge Emmet G. Sullivan |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO COMPEL
## PRODUCTION OF CERTAIN ELECTRONIC DOCUMENTS FROM WMATA

Upon consideration of the Motion to Compel Production of Certain Electronic

Documents from WMATA, the memorandum of points and authorities in support of the motion,

any opposition to the motion, and the entire record herein, and this Court having considered the

argument of counsel thereon, it is, this ___ day of _____, 2007, hereby

ORDERED, that the motion be, and it hereby is, granted; and it is further

ORDERED, that Defendant Washington Metropolitan Area Transit Authority shall

produce at or before 5:00 p.m. on Wednesday, December 5, 2007 the following: (1) all

electronically-stored documents dated January 1, 2007 to the present that are to or from Nat

Bottigheimer and that relate in any way to the sale of the bus garage, the two invitations for bids

for the sale of the bus garage, and the award to Akridge; and (2) all electronically-stored

documents dated January 1, 2007 to the present to or from Bob Burns that relate in any way to

the sale of the bus garage; and it is further

ORDERED, that the relief provided in this Order is without prejudice to the Plaintiffs'

right to seek further relief in the event that the production of documents and information ordered

herein is not completed as required by this Order.


_____
Emmet G. Sullivan
United States District Judge

COPIES TO:

Louis E. Dolan, Jr.
Vernon W. Johnson, III
Nixon Peabody LLP
401 9th Street, N.W.
Washington, D.C. 20001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167

**EXHIBIT A**



**Akridge**

REAL ESTATE SERVICES

September 20, 2007

Mr. Nat Bottigheimer
Assistant General Manager
Planning & Joint Development
WMATA – Room 5A-16
600 Fifth Street, NW
Washington, DC 20001

Dear Nat:

As mentioned in our bid and recent correspondence, we want to provide further clarification of the potential benefit to WMATA for pursuing the Akridge affiliated site in SW (SW Site) as a possible interim relocation site for the Southeast Bus Garage. We have made some cost and revenue assumptions for purposes of demonstrating the potential savings, however, the actual savings would obviously vary based on the actual amounts involved.

We have done preliminary studies which show that 80 to 100 buses can be located on the SW Site, including a temporary maintenance facility, for approximately $5M in capital cost. Expected annual rent for this space would be approximately $1M per year. We would need to discuss specific terms for this lease including term and termination rights.

We understand from WMATA documents that the dispersal plan (relocating the buses affected by the sale of the Southeast Bus Garage to six different garages) is currently the most viable option for WMATA. While we do not know the full cost to WMATA of pursuing the dispersal plan, we understand from WMATA documents that the minimum annual impact associated with the dead-heading cost for the dispersal plan is $4.2M or $12.6M over the expected three year relocation period.

Assuming Akridge is the selected bidder for the Southeast Bus Garage site and we are able to reach agreement regarding the terms for WMATA to lease the SW Site, there is the potential of material savings to WMATA. These savings could increase the net benefit to WMATA of Akridge's proposal for the Southeast Bus Garage site. Below is a representative example of the potential savings to WMATA (assuming only the $4.2M annual deadheading cost to WMATA):

| | |
|---|---|
| Cost for dispersal plan over three years: | $12.6M |
| Cost for creation of interim Maintenance facility (est): | ($ 5.0M) |
|    Add back residual value of Maintenance Facility (est): | $ 1.0M |
| SW Site- on site improvements | ($ .8M) |
| Annual rent for SW Site – assumes 3 years | $ (2.5M) |
| Potential Net Savings to WMATA: | $ 5.3M |

JAC 000369



In addition to the potential cost savings referenced above, utilization of the SW Site would also mitigate air quality, congestion, road and safety impacts of having buses travel significant distances to be fueled and serviced.

We hope this adds further clarity regarding the potential benefit to WMATA for pursuing the SW Site.  Please feel free to contact me if you have any questions.

Sincerely

Thomas W. Wilbur
Senior Vice President


cc:    Matt Klein
       Brian Connolly
       Adam Gooch

JAC  000370

**EXHIBIT B**

FILE COPY

**BY COURIER**

October 1, 2007

Mr. Matthew J. Klein
President
The John Akridge Development Company
601 13th Street, NW, Suite 300 North
Washington, DC 20005

Re:    Bid No. 08-1, Invitation For Bids For Sale With Leaseback of
        WMATA Property Lots 857 and 866, Square 700, District of
        Columbia - Southeastern Bus Garage Property

Dear Mr. Klein:

The Washington Metropolitan Area Transit Authority (WMATA) hereby
accepts the John Akridge Development Company's bid in the amount of
$69,250,000 for purchase of the above referenced property. Enclosed
is your Bid Form which has been signed on behalf of WMATA.

Acceptance of your bid was contingent upon approval of the WMATA
Board of Directors and, on September 27, 2007, the Board voted to
accept your bid. WMATA has deposited your bid deposit of Three
Hundred Thousand Dollars ($300,000). Payment by wire transfer of
the security deposit of Three Million Dollars ($3,000,000), as described in
Section C.3 of the Invitation for Bid form, is due within five (5) business
days from the date of this letter and should be sent to:

|  |  |
|---|---|
| Bank: | Wachovia, McLean, VA |
| ABA: | 054001220 |
| Account: | #2000035167097 |
| Beneficiary: | WMATA Revenue Fund, Washington Metropolitan Area Transit Authority |
| Reference: | Sale of WMATA Property at 17 M Street, SE, Washington, DC (Southeastern Bus Garage) |
| Attention: | Henry L. Jones, (202) 962-1019 |

Mr. Matthew J. Klein
Page 2

As you are aware, the WMATA Board of Directors has made settlement on the sale of this property contingent upon several items. First, WMATA must complete the acquisition of the replacement Southeastern Bus Garage property at D.C. Village from the District of Columbia. Second, the Board must approve the Southeastern Bus Garage replacement project and amendment of the Mass Transit Plan in accordance with the WMATA Compact.

WMATA expects to soon finalize an exchange agreement with the District necessary to satisfy the first condition. Board action to approve the exchange agreement with the District, the Southeastern Bus Garage relocation to D.C. Village and the amendment to the Mass Transit Plan is expected to occur in November. We anticipate completing the acquisition of the D.C. Village property in December after which settlement on the bus garage can occur.

Regarding the possible leaseback of the garage, at this time WMATA is reviewing the project schedule to determine if, and how long, buses will remain at the garage after settlement. We will be in further contact with you when we have refined the schedule.

In the meantime, please review the General Terms of Sale and Leaseback sections of the Invitation to Bid No. 08-1 package and complete all items required for settlement. The balance of the purchase price in the amount of Sixty-Five Million Nine Hundred Fifty Thousand Dollars ($65,950,000) will be payable by wire transfer at settlement.

We look forward to working with the John Akridge Development Company on this important project. If you have any questions, please contact Mr. Bob Burns of this office at 202-962-2392.

Sincerely,

Nat Bottigheimer
Assistant General Manager
Department of Planning
    and Joint Development

Enclosure

W002033

LAND:Meister:10/1/07 C:\Meister\Akridge Letter.wpd  Recommend Sig. A/O *M. Meltz* 10/1/07
cc: File/Chron

CONCUR: COUN *Attached*

W002034

**EXHIBIT C**



# FOR SALE
# (WITH LEASEBACK)

### PROPERTY OF
### THE WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
### (WMATA)

**Office of Property Development and Management**
**600 Fifth Street, NW**
**Washington, DC 20001**

Bid No. 08-1
Invitation For Bids For Sale,
With Leaseback,
of
WMATA Property
Lots 857 and 866, Square 700
District of Columbia

Bid No. 08-1
**INVITATION FOR BIDS FOR SALE,
WITH LEASEBACK,
OF
WMATA PROPERTY**
Lots 857 and 866, Square 700
District of Columbia

A.   **INVITATION FOR BIDS**

1.   **Invitation for Bids**.   The Washington Metropolitan Area Transit Authority ("WMATA") invites interested parties to submit sealed bids in accordance with the terms of this Invitation For Bids For Sale, With Leaseback, of WMATA Property ("Invitation for Bids"). Sealed bids will be received at the Office of Property Development and Management, Washington Metropolitan Area Transit Authority, 600 Fifth Street, NW, Washington, DC 20001 starting **July 30, 2007**, and closing on **August 28, 2007 at 2:00 P.M.** ("Bid Deadline") at which time bids will be opened. The bid opening will not be open to the public. Bids may be mailed or hand-carried, but must be **received** by WMATA prior to the Bid Deadline.

All bids submitted must comply with this Invitation for Bids, including its General Terms of Sale and Leaseback, Special Terms of Sale, Instructions to Bidders and Bid for Purchase of WMATA Property (the "Bid Form"), all of which are attached. WMATA may reject any noncomplying bid.  WMATA will not be responsible for any expenses incurred by bidders.

2.   **Property Description**.    The property comprises two separate parcels consisting of approximately 69,607 square feet (Square 700, Lot 857) and approximately 27,558 square feet (Square 700, Lot 866) (hereinafter "the Property").   Improvements include asphalt paving and a 60,200-square-foot industrial building used as a bus maintenance facility. The bus facility is a one-story brick building constructed in 1936 and renovated in 2002.

3.   **Zoning**. The Property is believed to be zoned CG-CR. The bidder, at its own risk, is required to verify zoning and to make all determinations as to whether the Property can be used for whatever purpose bidder wishes. WMATA makes no warranties or representations regarding zoning or the Property's suitability for any use or purpose.

4.   **Utilities**.   WMATA believes all usual services and utilities are available to the Property. The bidder, at its own risk, is required to verify services and utilities and to make all determinations as to whether such services and utilities can be used by the bidder.

1

5.  **Title Documentation and Closing**.  WMATA acquired the property from the DC Transit System by Declaration of Taking No. CA-79-73 dated January 12, 1973, recorded in the Land Records of the District of Columbia in Book 4178, Page 920. WMATA will not obtain or provide a title report or title insurance. The bidder is exclusively responsible for investigating title and determining whether the state of title suits bidder's purposes. WMATA will convey the Property by special warranty deed subject to all encumbrances of record.

6.  **Inspection**.  Bidders are invited and encouraged to inspect the Property prior to submitting a bid. Inspections will be scheduled through WMATA. Walk-through inspections will be permitted without a permit or other formal documentation. Inspection of the Property must be coordinated through the WMATA contact person indicated in Section C, Paragraph 5. Due diligence is the bidder's responsibility, to be done at bidder's sole expense. WMATA will provide bidders the opportunity to review environmental documents and reports in WMATA's possession by appointment, but makes no warranty or representation as to the accuracy or completeness of such documentation.

7.  **Effect of Submitting Bid**.  By submitting a bid, the bidder is deemed to have agreed to, and accepted, all terms in this Invitation for Bids. Notwithstanding the foregoing, WMATA reserves the right to amend or modify any of the terms and conditions set forth herein. After the bid opening, WMATA will select the Successful Bidder and may also select one or more Alternate Bidders based upon the terms offered. WMATA's obligations hereunder are expressly contingent upon WMATA obtaining the approvals described in Section B, Paragraph 13. You will become the Successful Bidder (with the corresponding obligation and risk of performance hereunder) as soon as WMATA notifies you of your selection.

B.  **GENERAL TERMS OF SALE AND LEASEBACK**

1.  **Invitation for Bids**.  "Invitation for Bids" refers collectively to this Invitation for Bids (including its general and special terms of sale and leaseback and instructions) as well as the accompanying Bid Form, form of Real Estate Permit, form of Lease, and Underground Storage Tank Real Estate Disclosure Form, all as may be modified and supplemented by any addenda thereto.

2.  **Descriptions in Invitation for Bids**. Information provided in the Invitation for Bids is based on information available to WMATA and is believed to be correct, but any error or omission, including but not limited to the omission of any information available to WMATA, will not constitute grounds or reason for nonperformance under this Invitation for Bids, or claim by bidder for allowance, refund or deduction from the purchase price. The foregoing disclaimer does not apply to the legal description of the Property as Square 700, Lot 857 and Lot 866 in the District of Columbia.

3.    **Condition of Property**.   The Property is being sold **"AS IS, WHERE IS."**   Except for statutory disclosures expressly provided in this Paragraph, WMATA disclaims any warranty or representation, express or implied, as to, or concerning, the following: (a) the condition or state of repair of the Property, including the possible presence of hazardous substances on, under, or in the vicinity of the Property; (b) suitability of the Property for any use; or (c) compliance with any applicable laws, including without limitation, land use, wetland, zoning, or environmental laws.   No claim for any allowance or deduction upon such grounds will be considered after the bid opening.   Notwithstanding the foregoing, pursuant to the Underground Storage Tank Management Act of 1990, WMATA makes the disclosures set forth in the Underground Storage Tank Real Estate Transfer Disclosure Form.  The Successful Bidder agrees to execute and deliver the Underground Storage Tank Real Estate Transfer Disclosure Form (Attachment 3) at settlement. In addition, the characteristics of soil on the Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia and as shown on the Soil Maps of the District of Columbia is Urban (Ub).  For further information, any bidder may contact a soil-testing laboratory, the District of Columbia Department of Environmental Services or the Soil Conservation Service of the Department of Agriculture.

4.    **Continuing Offers**.   Each bid received will be a continuing irrevocable offer for one hundred twenty (120) calendar days after the date of the bid. WMATA reserves the right to consider, and accept, late modification of the successful bid that makes its terms more favorable to WMATA.

5.    **Possession**.   Title to the Property will pass to the Successful Bidder at settlement upon payment of the purchase price; possession of the Property, after settlement, will be governed by the terms of the Lease.

6.    **Leaseback Provision**.   At settlement, the Successful Bidder shall lease the Property back to WMATA for a period of thirty-six (36) months at the rental rate specified in the Bid Form.  The lease of the Property from the Successful Bidder to WMATA shall be pursuant to the form Lease (Attachment 1), attached hereto and made a part hereof.    The Bid Form shall set forth a monthly rent.  You may set a single monthly rent to be paid for each month of the 36 month term.  You may also set forth a different fixed monthly rent for a different portion of the lease term; that is, by way of illustration, the fixed monthly rent for months 25 through 36 may be higher (or lower) than that for months 13 through 24, which, in turn, may be higher (or lower) than that for months 1 through 12.  You must, however, identify a certain fixed rent amount for each month of the lease term; that is, rent cannot be calculated by reference to any index, including a CPI index.  You may propose modification to the form Lease, but you are discouraged from doing so, and bids submitted proposing a landlord-tenant relationship other than that described in the form Lease will be disfavored and may be rejected solely on that ground.

3

7.  **Taxes**. As of the date of settlement, the Successful Bidder will assume responsibility for all general and special, real and personal property taxes and any other impositions on the Property. The lease must remain a gross lease, with WMATA to pay only the fixed monthly rent amount(s) identified in your Bid Form and no portion of real estate taxes.

8.  **Insurance**. WMATA is not imposing any insurance requirements on the Successful Bidder for the time period between bid acceptance and settlement except as required in WMATA's Real Estate Permit, attached hereto as Exhibit B, for due diligence entry upon the Property (either before bidding or by the Successful Bidder pursuant to Paragraph B.11, below).

9.  **Default**. If the Successful Bidder defaults on any of the terms of this Invitation for Bids, including failing to timely proceed to settlement, the Bid Deposit, together with the Security Deposit and any payments subsequently made on account, will be forfeited, as liquidated damages, in which event the Successful Bidder will be relieved from further liability, except for its indemnification obligations under the Real Estate Permit.

10. **WMATA Liability**. If a bid is accepted by WMATA and: (1) WMATA fails for any reason to perform its obligation as set forth herein; or (2) title does not transfer or vest in the Successful Bidder for any reason although the Successful Bidder is ready, willing, and able to settle, then the Successful Bidder's sole remedy shall be for specific performance and the Successful Bidder shall have no right to monetary damages. Neither party shall be entitled to recover attorneys' fees.

11. **Due Diligence Period**. The Successful Bidder shall have forty-five (45) days from the date it receives WMATA's notification of designation as Successful Bidder to perform any necessary environmental and title due diligence. Upon expiration of this forty-five (45) day period (the "Due Diligence Period"), the Successful Bidder, by written notice to WMATA, shall either a) withdraw its bid and this Invitation for Bids shall be of no further force and effect and the Security Deposit (but *not* the Bid Deposit, which becomes non-refundable upon designation as Successful Bidder, unless WMATA fails to obtain the Approvals required under Paragraph B.13, below) shall be returned; or b) proceed to settlement in accordance with the terms of this Invitation for Bids. Prior to Successful Bidder's entry on the Property for any testing or work more intrusive or prolonged than a walk-through inspection, the Successful Bidder will execute and deliver to WMATA a Real Estate Permit in the form shown in Attachment 2. The Successful Bidder may elect, in its Bid Form, to waive the Due Diligence Period. WMATA reserves the right to select a bid where the Due Diligence Period is waived over another bid, even where the other bid is otherwise more economically favorable to WMATA. In the event the Successful Bidder waives the Due Diligence Period, then settlement will occur not later than five (5) business days after WMATA satisfies the conditions precedent identified in Paragraph B.13, below.

12. **Alternate Bidders**. WMATA, in its sole discretion, may select Alternate Bidder(s) in response to this Invitation for Bids. If the initial Successful Bidder defaults or terminates

pursuant to Paragraph B.11, above, WMATA may select an Alternate Bidder as the Subsequent Successful Bidder which shall be treated in all respects as a Successful Bidder, except that the Subsequent Successful Bidder shall be afforded the full 45-day Due Diligence Period set forth in Paragraph B.11, above, commencing on the date the Alternate Bidder receives written notice from WMATA that it has been designated as a Subsequent Successful Bidder.

13. **Approvals**. WMATA's offer of the Property for sale, and its authority to sell the Property, is contingent upon approval by the WMATA Board of Directors and any required approval by the Federal Transit Administration (FTA). During the Due Diligence Period (which will run to the benefit of WMATA under this Paragraph even if waived by the Successful Bidder under Paragraph B.11, above), WMATA will make best efforts to obtain the required approvals. If WMATA fails to timely obtain the required approvals, WMATA, by written notice delivered to the Successful Bidder (and any Alternate Bidder(s)), shall withdraw this bid and the offer of the Property, and return the Security Deposit and the Bid Deposit. WMATA and the Successful Bidder may agree to extend the 45-day Due Diligence Period and/or the approval period described in this Paragraph as well as the settlement date.

14. **Settlement**. The balance of the purchase price (by certified or cashier's check) is due at settlement. Settlement is to be held on November 30, 2007, at a location within ten (10) miles of WMATA's headquarters building. The Successful Bidder shall select the title company. The Successful Bidder will notify WMATA by written notice of the time and place of settlement not less than two (2) weeks in advance. WMATA may extend the settlement date for a reasonable amount of time to obtain approvals or prepare conveyance documents. Title examination, conveyancing, notary and other fees, state and local revenue stamps, transfer and recording taxes and all recording charges, and fees necessary to secure the loan, if any, are to be paid by the Successful Bidder.

15. **Contract of Sale**. This Invitation for Bids, and the bid when accepted, will constitute an enforceable contract between the Successful Bidder and WMATA. No oral statements or representations made by, or on behalf of either party will be a part of such contract; nor will the contract, or any interest therein, be transferred or assigned by the Successful Bidder without the consent of WMATA, and any assignment transaction without such consent will be void, except that the Successful Bidder may assign the contract to a special purpose entity controlled by the Successful Bidder. WMATA will not pay brokerage commissions.

16. **Officials Not to Benefit**. No member of or delegate to Congress, or resident commissioner, will be admitted to any share or part of the sale transaction or to any benefit that may arise therefrom. This provision will not be construed, however, to extend to a corporation if it is entering into this transaction for its general benefit.

5

17. **FTA Compliance**. WMATA is required to provide the Federal Transit Administration (FTA) with notice of the sale and conveyance of the Property. By submitting a Bid Form, the bidder is certifying to WMATA that it is not debarred under any federal procurement regulation. The special warranty deed will require the Successful Bidder to covenant that it will not exclude any person, or otherwise discriminate against any person, on the grounds of race, color, national origin, sex, or disability in connection with construction upon, or operations on the Property and that any construction upon the Property will comply with the "Americans with Disabilities Act" (ADA), 42 U.S.C. §12101, et seq., as amended, and any regulations promulgated thereunder.

C. **SPECIAL TERMS OF SALE**

1. **Bid Deposits**. A Bid Deposit is required. **Bid Forms not accompanied by a Bid Deposit will be disqualified.** The Bid Deposit must be tendered by a cashier's check or certified check only. No interest will accrue on the Bid Deposit. All checks are to be made payable to "WMATA". The full balance of the purchase price is due and payable at settlement.

**Bid Deposit**

**THREE HUNDRED THOUSAND DOLLARS ($300,000)**

2. **Return of Bid Deposits**. The Bid Deposit of the Successful Bidder and any Alternate Bidders will be held until the Property is sold and the Successful Bidder's deposits are applied to the purchase price. The bid deposits of the Successful Bidder is non-refundable unless WMATA fails to obtain any approval required as a condition of sale in Section B, Paragraph 13, above. The Bid Deposit for all other bidders will be returned, via express carrier, within five (5) business days after the date of settlement.

3. **Security Deposit**. In addition to the Bid Deposit, which is a prerequisite of bidding, the Successful Bidder will also have to post a Security Deposit, which along with the Bid Deposit, will be applied toward the purchase price at settlement. Within five (5) business days after a bidder's designation as the Successful Bidder, the Successful Bidder must deliver the Security Deposit to WMATA in the form of a cashier's check or certified check. No interest will accrue on the Security Deposit.

**Security Deposit**

**THREE MILLION DOLLARS ($3,000,000)**

The Successful Bidder's failure to timely transmit the Security Deposit to WMATA will

result in a default and, in addition to its rights under Section B, Paragraph 9, WMATA may immediately thereupon designate a Subsequent Successful Bidder.

4.   **Minimum Bid Price**. The minimum bid amount for this Property is:

**SIXTY MILLION DOLLARS ($60,000,000).**

5.   **Bidding in General**. Bids extending the settlement date will not be accepted. Bid Forms must be delivered to the WMATA Office of Property Development and Management either in person, by mail, or express delivery and received by WMATA by the Bid Deadline, **August 28, 2007 at 2:00 p.m.** Immediately after the Bid Deadline, WMATA will open bids and select the Successful Bidder and any Alternate Bidders. The bid opening will not be open to the public. All bids are irrevocable for one hundred twenty (120) calendar days from the date of the bid. The bid which represents the best net return to WMATA after leaseback monthly rent for WMATA's anticipated lease term (which may, in WMATA's sole discretion be less than 36 months) is deducted from the Bid Amount. The Successful Bidder and any Alternate Bidders will be notified in writing at the address they provide on the Bid Form. WMATA reserves the right to reject any and all bids at any time for any reason. Additional Bid Forms are available from WMATA's Office of Property Development and Management. Bid Forms may be photocopied and used.

If you wish to hand deliver a bid, enter the Jackson Graham Building at 600 Fifth Street, NW, Washington, DC 20001 and request that the receptionist call extension 2392 or 1588 to be directed to the appropriate location to deliver the bid.

Questions about this Invitation for Bids should be submitted to Mr. Bob Burns at rlburns@wmata.com. Questions will be answered publicly; that is, WMATA will post all questions and answers on its website: www.wmata.com (About Metro/Business Opportunities, Metro Real Estate, Southeastern Bus Garage Sale). Mr. Burns may be also reached for general comments at 202-962-2393.

**D.   INSTRUCTIONS TO BIDDERS**

1.   **Bid Form**.

a. Bids must be submitted only on a fully-completed Bid Form.

b. Bids must be legible with corrections initialed and the bid manually signed.

7

c. In submitting a bid, only return the Bid Form. Retain all other documents, including one copy of the Bid Form, for your records.

2. **Bid Envelopes**. Envelopes containing bids must be sealed and addressed to the bid receiving office stated in this Invitation for Bids. The name and address of the bidder must be shown in the upper left corner of the bid envelope, and the invitation number, the date and the phrase **"Bid for Real Property"** must be shown in the lower left corner of the envelope. No responsibility will attach to any officer of WMATA for the premature opening of or failure to open a bid not properly addressed and identified.

3. **Bid Executed on Behalf of Bidder**.

   a. Attorney or Agent:  A bid may be executed by an attorney or agent on behalf of the bidder if the Bid Form is accompanied by an original, notarized Power of Attorney.

   b. Corporation:  If the bidder is a corporation, the Bid Form must be signed under the corporate seal by a duly authorized officer of the corporation. The bidder must submit evidence of corporate authorization to bid on behalf of the corporation.

   c. Partnership: If the bidder is a partnership, the Bid Form must be signed by an authorized general partner or some other authorized agent.  The bidder must submit evidence of the signatory's authorization.

   d. Limited Liability Company: If the bidder is a limited liability company, the Bid Form must be signed by all Members or the bidder must provide evidence that all Members consented to the execution and delivery of the Bid Form, including but not limited to satisfactory evidence of the authority of a "Manager" or limited number of Members to execute and deliver the Bid Form.

4. **Bid Deposit**.  Each bid must be accompanied by a Bid Deposit in the form of a certified check or cashier's check only, payable to the order of WMATA. See "Special Terms of Sale, Bid Deposits" (Section C, Paragraph 1) for further clarification.

   Failure to provide the Bid Deposit will result in rejection of the bid. Upon acceptance of a bid, the Bid Deposit of the Successful Bidder will be applied toward payment of the Successful Bidder's obligation.

5. **Additional Information**.  WMATA will, upon request, provide additional copies of this Invitation for Bids and Bid Form. Requests for additional available information and all questions regarding this Invitation for Bids must be submitted via e-mail to Mr. Burns in accordance with Section C, Paragraph 6, above. WMATA will post all questions and answers on its website: www.wmata.com (About Metro/Business Opportunities, Metro Real Estate, Southeastern Bus Garage Sale. Each bid submitted will be deemed to have

8

been made **with full knowledge of all terms**, conditions and requirements contained in this Invitation for Bids.

6.     <u>Waiver of Informalities or Irregularities</u>.  WMATA may, at its election, waive any minor informality or irregularity in bids received.

7.     <u>Acceptable Bid</u>.  A bid received from a responsible bidder whose bid, conforming to this Invitation for Bids, will be most advantageous to WMATA, in terms of purchase price and leaseback rental.  If two or more acceptable bids are received that are equal in all respects, the selection will be made by a drawing by lot limited to such equal bids.

8.     <u>Notice of Acceptance or Rejection</u>.  Notice by WMATA of acceptance or rejection of a bid will be deemed to have been sufficiently given when hand delivered, sent by overnight courier or mailed, via certified mail, return receipt requested, or mailed, via first-class mail, with a copy sent by facsimile, to the bidder, or his/her duly authorized representative, at the address (and facsimile number) indicated in the bid. WMATA's processing of a bid deposit will not, in itself, constitute acceptance of such bid.  WMATA reserves the right to reject any or all bids or portions thereof.

9

**BID NO. 08-1**

**WMATA Property**

**Lots 857 and 866, Square 700**

**District of Columbia**

<u>**BID FOR PURCHASE OF WMATA PROPERTY**</u> (Bid Form)

TO:    Office of Property Development and Management

Washington Metropolitan Area Transit Authority

600 Fifth Street, NW

Washington, DC  20001

**SUBJECT TO:**  The terms and conditions of the Invitation for Bids; the General Terms of Sale; the Special Terms of Sale and Leaseback; and the Instructions to Bidders, the Right of Entry Permit, Lease Form, and Underground Storage Tank Real Estate Transfer Disclosure Form, all of which are incorporated as part of this bid. The undersigned bidder hereby offers and agrees, if this bid is accepted, to purchase the identified Property at the bid price entered below by November 30, 2007 and to lease the Property back to WMATA at the Leaseback Rental entered below pursuant to the Lease form (or an alternate form submitted with this Bid Form (disfavored)).

The bid must be accompanied by a Bid Deposit in the amount of Three Hundred Thousand Dollars ($300,000).  The Bid Deposit must be in the form of a certified or cashier's check, payable to "WMATA".

Bid Amount: $_____

Bid Spelled-out: _____

Leaseback Rental (Per Month): $ _____

Leaseback Rental (Per Month) Spelled-out: $ _____

10

If I am selected as the Successful Bidder (or an Alternate Bidder), WMATA may notify me by courier, overnight delivery or certified mail, return receipt requested, at the address listed below.

If this bid is accepted, the deed should name the following as grantee(s) and the lease should identify the following as landlord:

You may designate an alternate grantee/landlord at settlement, provided it is controlled by the person or entity identified above.

Bidder represents that bidder operates as an individual / partnership / corporation / limited liability company / other: _____.    Evidence of authority to sign and submit this Bid Form (for any entity other than an individual) is attached. If signed by a trustee or agent, a copy of the power of attorney or other authorizing document is attached.

If selected, I waive / do not waive the Due Diligence Period set forth in Section B, Paragraph 11 [circle the appropriate choice].

Initial: _____

Signature of bidder: _____     Date_____

Name (Print)_____

Title_____

Address_____City/State/Zip_____

Telephone_____

Facsimile Number _____

Signature of WMATA indicating acceptance of bid:



_____     Date_____

Nat Bottigheimer
Contracting Officer

12

**EXHIBIT D**

# M E M O R A N D U M



**SUBJECT:** Southeastern Garage Bids

**FROM:** Nat Bottigheimer

**TO:** John Catoe

**DATE:** August 29th, 2007

**IN REPLY**

**REFER TO:**

Southeastern Garage bids were due yesterday at 2 pm. The three bids submitted were opened immediately after the deadline had passed. Present at the opening of bids were Carol O'Keeffe and Ed Maginnis, COUN, Art Lawson, GOVR, and Mark Meister and Rollins Burns, LAND.

The criterion for selecting the winning bidder is "the bid which represents the best net return to WMATA after leaseback monthly rent for WMATA's anticipated lease term (which may, in WMATA's sole discretion be less than 36 months) is deducted from the Bid Amount.

The nature of the bids submitted makes it difficult at first blush to pick a winner. The reason for this is that after three years of rent, the high bidder's bid becomes the low bid, and the low bidder's bid becomes the high bid. This is because the high bidder included rent that, over the three year period, reduces its net value below the low bidder's offer. The low bidder proposed no rent whatsoever.

As a result, the "best net return" to WMATA depends on how long we anticipate remaining in the Southeastern Garage. At this point, staff are reviewing the relocation options available and the timeframes it may take to establish certainty about what relocation option will be supported by the Board.

Timeframe for Decision-making

A very real possibility is that it will not be possible to establish certainty about relocation options within the 120 days allowed to WMATA under the solicitation to review the proposals received. In that event, WMATA staff may need to make an educated guess about the amount of time the current Southeastern Garage will be operational.

The key variables in estimating the amount of time we will remain at Southeastern include the availability of alternatives; the cost of the alternatives compared to staying at the current Southeastern Garage; the operational issues that may arise during next year's baseball season if WMATA remains at Southeastern; and the Board's decision on how to allocate operating cost increases associated with the selected alternative.

WMATA staff could take more or less time to estimate how long—for the purposes of bid evaluation—WMATA will remain at the current Southeastern Garage. The chief advantage of a longer estimation period is having more information about

**Washington
Metropolitan Area
Transit Authority**

W002077

Board intentions regarding relocation. The chief downside is that the longer a bid selection decision is drawn out, the more time will be needed to answer inquiries and respond to advocacy from interested parties.

The chief advantage of a shorter estimation period is that less effort will be required to address outside advocacy; the chief disadvantage is the possibility that staff's estimate could be proved to be incorrect by subsequent events.

The relevant solicitation language is "...after leaseback monthly rent for WMATA's *anticipated* lease term...[italics added]." The most that WMATA staff can do is, as objectively as possible, estimate an "anticipated lease term." We can't guarantee we'll be correct. We would need to establish, however, that the estimation process we use is objective, disinterested, and reasonable.

**Recommendation:** I would recommend finalizing an agreed-upon staff estimate of the time it will take to relocate from the current Southeastern by no later than Wednesday, September 5th, and to use this staff estimate as the basis for estimating the best net return to WMATA.

Talking Points at This Time

For the time being, COUN, GOVR, and LAND have agreed on the following talking points related to the bids received.

- We received multiple bids
- We're in the process of assessing the "best net return" to WMATA
- The "best net return" assessment depends on how long we anticipate remaining in the Southeastern Garage.
- We're not sharing with the Board particulars of the proposals received beyond those included in these talking points. This is for their own protection in the event of legal action by an aggrieved bidder.

**cc:**

Carol O'Keeffe, COUN
Ed Maginnis, COUN
Art Lawson, GOVR
Anabela Talaia, LAND
Mark Meister, LAND
Joel Washington, LAND

C:\Documents and Settings\clamkm1\Local Settings\Temp\Southeastern Bids Memo to GM.wpd

W002078

**EXHIBIT E**

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

PAUL MARTIN WOLFF
(202) 434-5079
FAX (202) 434-5580
pwolff@wc.com

July 25, 2007

**BY COURIER**

Elizabeth M. Hewlett
Principal Director
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001

Re:  Bid No. 07-3; Lots 857 and 866 in Square 700 (the "Bid Request")

Dear Ms. Hewlett:

I am writing on behalf of my client, the John Akridge Development Company ("Akridge"), to express deep concern about the news reports of the Washington Metropolitan Area Transit Authority ("WMATA") of the Bid Request that sought bids for the purchase and lease back to WMATA of the Southeastern Bus Garage Facility.

As you know, the Bid Request required bids to be filed along with a bid deposit in the amount of $300,000 no later than 2:00 PM Washington, DC time on July 23, 2007 (the "Bid Deadline"). Akridge clearly met the Bid Deadline and thereby submitted a timely bid as required in the Bid Request. Akridge was surprised and quite dismayed, therefore, to read the article by Nikita Stewart in the District Briefing portion of yesterday's *Washington Post* (page B4) indicating with respect to the Bid Request that "as of [Monday]'s 2 p.m. deadline for bids, the transit authority had not received any offers," citing Joanne Ferreira of WMATA (copy attached). While it is certainly possible that Ms. Ferreira was misquoted or was unaware of Akridge's bid at the time of the interview, and that notice of Akridge's award of the contract is forthcoming, the notion that public disclosure of incorrect facts surrounding the bidding process would be allowed to take place is quite disturbing to my client. This is especially true in light of the recent disclosure that the District of Columbia has become interested in acquiring the site for which the Bid Request was promulgated (also referenced in the article by Ms. Stewart).

Furthermore, in WMATA's own description of the rules surrounding the Bid Request, WMATA stated (Section A.1 of the Bid Request), with respect to the bids received and the Bid Deadline, that bids would be opened "[i]mmediately after" the Bid Deadline. My client was informed that its bid would not be opened at that time but would be held sealed until after the Board meeting this Thursday and, in light of the article in the *Post*, is

W001796

WILLIAMS & CONNOLLY LLP

Elizabeth M. Hewlett
July 25, 2007
Page 2

skeptical as to whether the entire bid process was undertaken in a fair and equitable manner as would be required by regulation.

Given what appear to be some serious questions regarding the entire Bid Request, Akridge is considering, among other options, the filing of a protest with respect to the manner in which the Bid Request was conducted. In the hope of obviating the need for a protest and all that might entail, Akridge would be happy to have a conversation with representative of WMATA so that it can better understand what transpired with regard to the Bid Request.

If you would like to discuss this matter further, please contact the undersigned, or if you cannot reach me immediately, my colleague Philip Ward (202-434-5250). Akridge will assume that a failure to respond by 10 a.m. tomorrow, July 26th, is an indication that WMATA does not wish to engage in discussions on this matter.

I look forward to your response.

Sincerely,

*Paul Martin Wolff*

Paul Martin Wolff

cc:    Christopher Zimmerman
       Jim Graham
       Peter Benjamin
       Dana Kauffman
       Emeka C. Moneme
       Marcell Solomon
       William D. Euille
       Marion Barry
       Gordon Linton
       Catherine Hudgins
       Anthony R. Giancola, P.E.
       John B. Catoe
       Helen Law
       Carol B. O'Keefe

       John E. Akridge, I II
       Matthew J. Klein
       P. Brian Connolly

W001797

**EXHIBIT F**

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

PAUL MARTIN WOLFF
(202) 434-5079
FAX (202) 434-5580
pwolff@wc.com

July 30, 2007

**BY COURIER**

Mr. Nat Bottigheimer
Assistant General Manager
Department of Planning, Land and Joint Development
Washington Metropolitan Area Transit Authority
600 Fifth Street, N.W.
Washington, D.C. 20001

Re:    Bid No. 07-3; Lots 857 and 866 in Square 700 (the "Bid Request")

Dear Mr. Bottigheimer:

My client, the John Akridge Development Company ("Akridge"), is in receipt of your letter dated July 27, 2007 (the "WMATA Response") returning to Akridge the bid that it timely submitted on July 23, 2007 to Washington Metropolitan Area Transit Authority ("WMATA") in response to the Bid Request. In the WMATA Response, you indicate that it is WMATA's position that the District of Columbia's request to purchase the property, followed by its withdrawal of that request, might have affected "marketability of the property" and might not be "fair to all bidders." My client respectfully disagrees with this position and strongly believes that reopening the bidding process will be unfair to those bidders who timely followed WMATA's bidding procedures and will give an unmerited and inappropriate second chance to those who failed to bid the first time.

During the term that the Bid Request was out for response, the issue of the impact of the District's interest in the property was specifically addressed on the WMATA website, as the following comes directly from the website on July 23, 2007:

> *The Washington Metropolitan Area Transit Authority*
> *has received a request from the District of Columbia to*
> *purchase the Southeastern Bus Garage property. No*
> *action will be taken on the District's request until the*
> *Authority's Board of Directors meets on July 26, 2007.*
> *Until then, the Invitation For Bids process will proceed*
> *as scheduled with the deadline for receipt of Bids on*
> *July 23, 2007 at 2:00 p.m.*

Now, having done exactly as WMATA indicated, those parties who submitted timely bids, including my client, are being punished and forced to rebid in a process that will allow other parties who did not file timely bids to participate. A reopening of the bidding

JAC 000367

WILLIAMS & CONNOLLY LLP

Mr. Nat Bottigheimer
July 30, 2007
Page 2 of 2

process, far from making the process "fair to all bidders," is unfair to those who ran the risk that the District would moot the issue and spent the time and money to submit a bid. The proposed reopening unfairly advantages only those who stood on the sidelines and now after the fact and after the change in the District's position want to reap a windfall opportunity.

In light of the foregoing, my client requests that the bidding process not be reopened. Given that my client believes that is the proper result, enclosed please find the original bid and bid deposit submitted to WMATA by Akridge on July 23, 2007 for consideration in accordance with the Bid Request. Should WMATA refuse to consider the bids as originally submitted, my client would request, as an alternative, that the rebidding process be limited to those parties who followed WMATA's instructions and submitted timely bids in accordance with the Bid Request.

We look forward to WMATA's prompt reply with respect to how it intends to handle the process of disposing of the property. Please feel free to contact the undersigned if I can be of any further assistance or provide any further clarification.

Sincerely,

Paul Martin Wolff

cc:     Elizabeth M. Hewlett
        Christopher Zimmerman
        Jim Graham
        Peter Benjamin
        Dana Kauffman
        Emeka C. Moneme
        Marcell Solomon
        William D. Euille
        Marion Barry
        Gordon Linton
        Catherine Hudgins
        Anthony R. Giancola, P.E.
        John B. Catoe
        Helen Law
        Carol B. O'Keefe

        John E. Akridge, III
        Matthew J. Klein

JAC 000368

**EXHIBIT G**

LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

PAUL MARTIN WOLFF
(202) 434-5079
FAX (202) 434-5580
pwolff@wc.com

August 3, 2007

**VIA HAND DELIVERY**
Mr. Nat Bottigheimer
Assistant General Manager
Department of Planning, Land and Joint Development
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001

Re: **Bid No. 07-3; Lots 857 and 866 in Square 700 (the "Bid Request")**

Dear Mr. Bottigheimer:

On July 30, I wrote to you on behalf of my client, the John Akridge Development Company ("Akridge"), to advise you that my client strongly believed that the decision of the Washington Metropolitan Area Transit Authority ("WMATA") to reopen the Bid Request for the Southeast Bus Garage (the "Property") was unfair to those bidders who timely followed WMATA's bidding procedures.

As was stated in the July 30 letter, while the original Bid Request was out for response, WMATA, with full understanding that the District had publicized intentions regarding the purchase of the Property, placed the following on its website (specifically on July 23, 2007 – the date bids were due):

> *The Washington Metropolitan Area Transit Authority has received a request from the District of Columbia to purchase the Southeastern Bus Garage property. No action will be taken on the District's request until the Authority's Board of Directors meets on July 26, 2007. Until then, the Invitation For Bids process will proceed as scheduled with the deadline for receipt of Bids on July 23, 2007 at 2:00 p.m.*

JAC 000149

WILLIAMS & CONNOLLY LLP

Mr. Bottigheimer
August 3, 2007
Page 2 of 2

In my earlier letter I further indicated that, in light of the foregoing, Akridge requested that the bidding process not be reopened. I also outlined a fallback position, i.e., that the rebidding process be limited to those parties who followed WMATA's instructions and submitted timely bids in accordance with the original Bid Request. Since we have not heard from WMATA in response to that letter, my client and I must assume that WMATA has acceded to our requests and either will not go forward with re-bidding or will limit the rebidding to those who originally bid.

I would request WMATA to respond to this letter so that my client and I can understand exactly how WMATA intends to proceed with the disposition of the Property. I would further request that WMATA respond in writing so that there will be no misunderstanding between WMATA and my client.

Sincerely,

Paul Martin Wolff / DSD

Paul Martin Wolff

cc:    Elizabeth M. Hewlett
       Christopher Zimmerman
       Jim Graham
       Peter Benjamin
       Dana Kauffman
       Emeka C. Moneme
       Marcell Solomon
       William D. Euille
       Marion Barry
       Gordon Linton
       Catherine Hudgins
       Anthony R. Giancola, P.E.
       John B. Catoe
       Helen Law
       Carol B. O'Keefe
       John E. Akridge, III
       Matthew J. Klein

JAC 000150

**<u>EXHIBIT H</u>**

**From:**    Adam Gooch
**Sent:**    Friday, September 28, 2007 9:11 AM
**To:**    rlburns@wmata.com
**Subject:** SE Bus Garage Due Diligence

Bob,

As you can imagine, Akridge is thrilled that the board voted to approve the sale of the Southeastern Bus Garage during their meeting yesterday, and we're very much looking forward to a smooth and expeditious closing. To that end, I was hoping I could enlist your guidance on a number of questions that have been raised. I thank you in advance for your assistance, and am looking forward to working with you as we move towards closing.

Questions:

1.  Will you remain as the chief point of contact for due diligence and closing?

2.  As I understand it, as soon as we receive written notice that we are the approved purchaser, our 45-day due diligence period begins. Can you confirm whether that's 45 calendar days or 45 business days?

3.  Notification will also require us to pay a $3,000,000 Security Deposit within 5 business days. Can you confirm that the Security Deposit shall be delivered to your attention at:

    Bob Burns
    Office of Property Development and Management
    Washington Metropolitan Area Transit Authority
    600 Fifth Street, NW
    Washington, DC 20001

4.  The September 27th WMATA Resolution stipulated at settlement on the sale of the Garage shall not occur until such time as the below three issues are approved by the Board. Can you please give me an update as to where WMATA stands with these approvals?
    a.  The Board of Directors has approved the contractual arrangements for the purchase of the replacement bus garage property at D.C. Village from the District of Columbia;
    b.  The Board of Directors has approved the Garage replacement project; and
    c.  The Board of Directors has approved the amendment of the Mass Transit Plan in accordance with the WMATA Compact.

5.  During the bid process we communicated to WMATA that we have an alternate facility on Buzzard Point that, with some improvements, could be a good solution for the Garage Replacement Project. Do you know if WMATA is interested in pursing this option or learning more about it?

6.  Settlement will require authorization from the Federal Transit Administration – can you update me as to the status and/or expected schedule of this approval?

7.  Will all consultants that I have come out to the site to perform studies be required to complete the WMATA Real Estate Permit, or does Akridge fill it out and have our consultants covered under that agreement? What is a typical turn-around time for getting that approval?

Again, thank you very much for your help with this Bob – it is greatly appreciated. Feel free to call or email me if you would like to discuss any of these issues further.

Sincerely,

JAC 000310

**Adam M. Gooch**
Akridge | Development
601 13th Street NW, Suite 300 North
Washington, DC  20005
202.624.8602 Direct
202.347.8043 Fax
*Real Estate at the Highest Grade. A+.*

JAC  000311