**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MONUMENT REALTY LLC, et al.,    )
                                )
            Plaintiffs,         )
                                )
    v.                          )
                                )        Civil Action No. 1:07-cv-01821 (EGS)
                                )        Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN         )
AREA TRANSIT AUTHORITY,         )
                                )
            Defendant.          )

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION**
**TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs Monument Realty LLC and MR Ballpark 7 LLC (collectively, "Monument") respectfully move this Court for leave to file a supplemental opposition to the motion of Defendant Washington Metropolitan Area Transit Authority ("WMATA") to dismiss the First Amended Complaint. The purpose of the supplemental opposition, a copy of which is attached hereto as Exhibit "A," would be to advise the Court of certain recent developments in similar litigation pending in the Superior Court of the District of Columbia. That other litigation involves another party, WDC Baseball Partners LLC, whose principals were also designated by the Anacostia Waterfront Corporation to spearhead the development of another area within the Ballpark District.

The lawsuit was filed on November 15, 2006 and is styled as *WDC Baseball Partners LLC v. District of Columbia, The Anacostia Waterfront Corporation, and The District of Columbia Sports and Entertainment Commission,* Civil Action No. 2006 CA 008250 B (RP) (Calendar 11; Judge Lynn Leibovitz). The Defendants in the case filed a motion to dismiss in

which they advanced various arguments, some of which involve similar grounds as those

advanced by WMATA in its motion to dismiss the First Amended Complaint in this case.  Judge

Leibovitz denied the motion to dismiss by written Order dated November 30, 2007.  Plaintiffs

wish to call the Order to this Court's attention, given that it is additional persuasive authority

concerning some of the District of Columbia substantive law issues already briefed on

WMATA's motion to dismiss.  This authority was not available to Plaintiffs at the time that they

filed their opposition on November 16, 2007.

WHEREFORE, Monument respectfully requests that this Court grant this Motion and

provide them leave to file the supplemental opposition attached as Exhibit "A" hereto.

Dated:  December 11, 2007                          Respectfully submitted,

NIXON PEABODY, LLP

*/s/ Vernon W. Johnson, III*

_____

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

## CERTIFICATION PURSUANT TO LCvR 7(m)

Undersigned counsel for Plaintiffs hereby certifies, pursuant to LCvR 7(m), that a good faith effort was made to discuss the subject of this Motion, and the relief requested herein, with counsel for Defendant Washington Metropolitan Area Transit Authority. Plaintiffs had several communications with WMATA's counsel about the subject of this motion and were unable to resolve these issues despite such effort.

Dated: December 11, 2007

Respectfully submitted,

NIXON PEABODY, LLP

*/s/ Vernon W. Johnson, III*

_____

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)

ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2007, a true and correct copy of the foregoing Plaintiffs' Motion For Leave to File Supplemental Opposition to Motion to Dismiss First Amended Complaint with appended Exhibit "A," Memorandum of Points and Authorities, and Proposed Form of Order was served by ECF upon:

> Harvey A. Levin, Esquire
> Thompson Coburn LLP
> 1909 K Street, Suite 600
> Washington, D.C. 20006-1167
>
> Counsel for Defendant

*/s/ **Vernon W. Johnson, III***

Vernon W. Johnson, III

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MONUMENT REALTY LLC, et al.,  )
                                     )
           Plaintiffs,               )
                                       )
      v.                             )          Civil Action No. 1:07-cv-01821 (EGS)
                                       )          Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN      )
AREA TRANSIT AUTHORITY,       )
                                       )
          Defendant.           )
                                       )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE
## TO FILE SUPPLEMENTAL OPPOSITION
## TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

In making this motion, Plaintiffs respectfully rely upon the provisions of LCvR 7, and cite the Court to the fact that the authorities which are the subject of the contemplated supplemental opposition were not available to Plaintiffs at the time that they filed their opposition on November 16, 2007. Moreover, these authorities involve similar litigation and similar claims, and provide additional persuasive authority on the District of Columbia substantive law issues involved on WMATA's motion to dismiss.

Dated:  December 11, 2007

Respectfully submitted,

NIXON PEABODY, LLP

*/s/ Vernon W. Johnson, III*
_____
Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONUMENT REALTY LLC, et al.,    )
    )
    Plaintiffs,    )
    )
    v.    )    Civil Action No. 1:07-cv-01821 (EGS)
    )    Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN    )
AREA TRANSIT AUTHORITY,    )
    )
    Defendant.    )
    )

## SUPPLEMENTAL OPPOSITION TO MOTION
## TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs Monument Realty LLC and MR Ballpark 7 LLC (collectively, "Monument") respectfully call the Court's attention to additional authorities reflecting the substantive law of the District of Columbia, as a supplement to Monument's November 16, 2007 opposition to the motion of Defendant Washington Metropolitan Area Transit Authority ("WMATA") to dismiss the First Amended Complaint.

Specifically, there is litigation pending in the Superior Court of the District of Columbia that involves other areas in the Ballpark District and another party whose principals were designated by the Anacostia Waterfront Corporation to spearhead the development of an area within the Ballpark District separate from, but near to, the Southeastern Bus Garage Property at issue in this case. The lawsuit was filed on November 15, 2006 and is styled as *WDC Baseball Partners LLC v. District of Columbia, The Anacostia Waterfront Corporation, and The District of Columbia Sports and Entertainment Commission,* Civil Action No. 2006 CA 008250 B (RP) (Calendar 11; Judge Lynn Leibovitz).

The Defendants in the case filed a motion to dismiss in which they advanced various arguments, some of which involve similar grounds as those advanced by WMATA in its motion to dismiss the First Amended Complaint in this case. Judge Leibovitz denied the motion to dismiss by written Order dated November 30, 2007. Plaintiffs wish to call the Order to this Court's attention, given that it is additional persuasive authority concerning some of the District of Columbia substantive law issues already briefed on WMATA's motion to dismiss. A copy of the Order is attached hereto and made a part hereof as Exhibit "1."

In the Complaint in *WDC Baseball Partners*, the Plaintiff claimed "an alleged contractual relationship between plaintiff and defendants whereby plaintiffs claim they were entitled to exclusive rights to develop property near the stadium." *Order* at 1. Defendants argued in their motion to dismiss that none of the underlying facts could establish a binding contract or even an obligation to negotiate under a duty of good faith and fair dealing. *See id.* at 8-10. The Superior Court reviewed applicable District of Columbia substantive law, and determined that "the facts pleaded . . . constitute sufficient preliminary manifestation of assent to establish, at the very least, a binding commitment to negotiate in good faith." *See id.* at 11-12. Thus, the motion to dismiss was denied. *Id.* (The defendants in *WDC Baseball Partners* advanced other arguments similar to those posed by WMATA in this case, including the assertion that the plaintiff was not the actual party to whom AWC awarded development rights, and those arguments were also rejected. *See id.* at 2, 12.)

The situation posed by the way in which development in the Ballpark District was pursued is obviously unique. Other courts applying the substantive law of the District of Columbia have found, however, that the facts do support contractual and other claims arising out of efforts to dispute the development framework arrived at through the AWC process.

Monument respectfully submits that the Order in *WDC Baseball Partners* further supports its opposition to WMATA's motion to dismiss.

In discussions with WMATA's counsel in an effort to comply with the requirements of LCvR 7(m), Monument perceived that WMATA may wish to file a response to this supplemental opposition. Monument has no objection in principle to WMATA's doing so, particularly since this is WMATA's motion and it is not unreasonable for WMATA to want the last word on it. At the same time, however, WMATA is still bound by the law that limits consideration on a Rule 12(b)(6) motion to the materials in the First Amended Complaint. To the extent that WMATA is permitted to file a response to this pleading, it should be limited to a discussion of the law and a direct response to Plaintiffs' supplemental opposition. WMATA should not be permitted to go beyond the supplemental opposition or engage in a further effort to inject materials into the analysis which are not part of the First Amended Complaint.

Dated:  December 11, 2007

Respectfully submitted,

NIXON PEABODY, LLP

*/s/ Vernon W. Johnson, III*

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

3

**Exhibit "1"**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **WDC BASEBALL PARTNERS LLC,** | : | |
| | : | |
| **Plaintiffs** | : | **Civil Action No. 2006 CA 008250 B** |
| | : | |
| v. | : | |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **Defendant** | : | **Judge Lynn Leibovitz** |
| | : | |

## ORDER

This matter is before the court on Defendants' Joint Motion to Dismiss the Complaint, Plaintiff's Opposition to the motion, Defendants' Reply, Plaintiff's Surreply, and Defendant's Response. After careful consideration of all of the pleadings and the entire record herein, and for the reasons stated below, the court will deny the Motion.

### Factual and Procedural History

This case arises from the planned construction and development associated with the new baseball stadium complex in the South Capitol Street, S.W. area of the District of Columbia. Plaintiff, WDC Baseball Partners LLC ("WDC") has filed a fourteen-count Complaint against Defendants District of Columbia ("the District" or "DC"), the Anacostia Waterfront Corporation ("AWC"), and the District of Columbia Sports and Entertainment Commission ("DCSEC"). The basis of the Complaint is an alleged contractual relationship between plaintiff and defendants whereby plaintiffs claim they were entitled to exclusive rights to develop property near the stadium (the "Separate Development"). Plaintiff alleges that defendants engaged in a series of actions that deprived it of these exclusive rights and the profits to be derived from the development.

Plaintiff alleges as to defendants DC and AWC, breach of contract, breach of partnership agreement, breach of fiduciary duty, and promissory estoppel.  Plaintiff alleges as to defendant DCSEC, tortious interference with contract or business expectancy, prima facie tort and ultra vires conduct.  Plaintiff alleges as to all defendants, unjust enrichment, breach of covenant of good faith and fair dealing, violation of the City Council's June 2006 Disposition Resolution, constructive trust and equitable lien.  Plaintiff seeks damages, declaratory judgment, specific performance and other injunctive relief.

In September of 2005, the District assigned to AWC the task of overseeing the selection of a private developer of property at the stadium site. On September 15, 2007, AWC issued a Request for Expressions of Interest to identify developers who had an interest in such development. AWC eventually selected Western Development Corporation, allegedly the predecessor entity to plaintiff WDC, to negotiate terms of a "mixed use development" ("Separate Development") within the stadium site. Following the selection, plaintiff (along with its partner Forest City Washington) and AWC negotiated a letter of intent ("LOI"), which was executed on December 12, 2005.

Among the provisions in the LOI were the following:

The purpose of this LOI is to memorialize agreements reached in discussions among the parties to this LOI. . . .

§ E.2 Good Faith and Fair Dealing

Each party assumes a duty of faith and fair dealing in the performance of its obligations and the future negotiations contemplated in this LOI.

§ E.3 No Joint Venture

Nothing contained in this LOI shall be deemed or construed by the Parties or any third party as creating the relationship of principal and agent or of partnership or of joint venture between or among parties.

§ E.7 Letter of Intent

Except for the preceding [confidentiality] paragraph, this letter is not intended to constitute an agreement which will be legally binding on [the parties] and is not intended to be relied on by the parties as constituting a final agreement. This letter is written with the understanding that no party will be bound by any of the terms herein until negotiations have been completed and the LDAs have been executed and delivered by both parties. The parties agree to commence such negotiations immediately with the objective of entering into a memorandum of understanding setting forth the matters to be included in an exclusive rights agreement or other LDA not later than April 15, 2006.

In June 2006, plaintiff and defendants the District and AWC proceeded to negotiate the terms of an Exclusive Rights Agreement ("ERA"). Plaintiff alleges that by June 19, 2006, the parties had agreed to the material terms of an ERA. Plaintiff signed and delivered an ERA, which was never executed by AWC or the District. The ERA stated that the parties were to enter "promptly" into a Lease Development Agreement ("LDA") that incorporated the terms of the ERA.

On June 11, 2006, the Mayor submitted, and the District of Columbia City Council adopted, the "South Capital Street Disposition Resolution Approval Resolution of 2006" ("the Disposition Resolution"), authorizing the Mayor to convey the Separate Development to WDC subject to a number of conditions, including the execution of an LDA and other conditions as follows:

§ 2(a)
…
The disposition of these development rights and property interests ("Property") shall be subject to the following terms and conditions, in addition to such other terms and conditions as the Mayor deems necessary and appropriate:

§ 2(a)(1)

The Purchaser shall pay full market consideration for the Property conveyed as determined by the Mayor, in consultation with the Anacostia Waterfront Corporation ("AWC") and the District of Columbia Sports and Entertainment

Commission ("SEC"), based on prevailing market conditions, subject to deduction for non-standard development costs that may be imposed upon the Purchaser by the District;

§ 2(a)(2)

The Purchaser shall cause the Property to be developed in accordance with design documents approved by Purchaser, the District, the AWC, the SEC, and the owners of the Baseball Expos, L.P. ("Team"), and subject to reasonable terms and conditions as determined by the Mayor, in consultation with the AWC...

In July 2006, AWC leased the stadium site to the District, which then executed a sublease of the stadium site to DCSEC. DCSEC was the entity principally responsible for negotiating with the new baseball team. Thereafter, the parties engaged in negotiating an LDA. WDC and DCSEC disagreed as to certain terms of the LDA, and the LDA negotiations broke down. Throughout, WDC expended funds developing design plans for the site, obtaining zoning approval and other preparation to construct the Separate Development. WDC ultimately did not proceed with the Separate Development.

Plaintiff claims, essentially, that, in executing the LOI, negotiating the ERA, obtaining approval of the Disposition resolution and permitting WDC to begin performance to its financial detriment, AWC and the District entered into a binding contractual relationship with WDC granting it "exclusive" rights to construct the "Separate Development." Plaintiff claims that, pursuant to and in reliance upon this contract, plaintiff spent millions of dollars on preparatory measures such as the development of architectural and design plans, seeking zoning approval, and other efforts to put itself in a position to perform timely. Plaintiff alleges further that DCSEC intentionally interfered with WDC's performance under the terms of the contract, improperly and unlawfully inserting itself into WDC's negotiations of the LDA with

AWC and engaging in other acts intended to prevent plaintiff from proceeding with construction of the Separate Development.

Plaintiff alleges that, in drafting the terms of the sublease of the stadium site to DCSEC, defendants AWC and the District failed to insure that DCSEC would cooperate with plaintiff in proceeding with the separate development, and subsequently permitted DCSEC to derail the negotiation of the LDA. Plaintiff claims that the defendants' conduct eventually resulted in the shutting down of the LDA processes altogether, ensuring that WDC could not perform according to the deadlines imposed by the contractual terms and ultimately preventing it from proceeding with the Separate Development altogether. Plaintiff alleges it has lost $140 million in profits from the development, and seeks declaratory judgment that it has the exclusive right to construct the Separate Development and an order enjoining the defendants from conveying the property to any other developer and directing the defendants to execute the necessary agreements to convey title to, and otherwise enable, plaintiff to construct the Separate Development.

Defendants, jointly, move to dismiss the Complaint pursuant to Superior Court Rule 12(b)(1) for lack of a justiciable controversy. One or more defendants also move to dismiss each of the counts of the Complaint pursuant to Superior Court Rule 12(b)(6), for failure to state claims for relief.

## Analysis

The filing of a motion to dismiss pursuant to Rule 12(b)(6) does not call upon Plaintiff to offer proof. Rather the Court accepts the claim as true, and construes all facts and inferences in favor of the claimant. Atkins v. Indus. Telecommunications Ass'n, 660

A.2d 885, 887 (D.C. 1995). All that is required of the complaint is "a short and plain

statement of the claim showing that the pleader is entitled to relief." Super. Ct. Civ. R.

8(a)(2). Such a statement must simply "give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41,

47 (1957). "Indeed it may appear on the face of the pleadings that a recovery is very

remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236

(1974); see also Sarete, Inc. v. 1344 U St. Ltd. P'ship, 871 A.2d 480, 497 (D.C. 2005)

("[A] complaint [should not] be dismissed under Rule 12(b)(6) on the ground that no

evidence has been offered by Plaintiffs since we take the facts alleged in the complaint as

true, and the presentation of evidence to counter a Rule 12(b)(6) motion is not required."

(internal quotations, citation, and editing omitted)); Vincent v. Anderson, 621 A.2d 367,

372 (D.C. 1993) ("The Rule is designed to test solely the legal sufficiency of the

complaint.").

**Justiciability**

Defendants move to dismiss Count I (and consequently the entire Complaint),

pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction on the grounds that it

raises a non-justiciable claim. Specifically, defendants claim that where "the use and

development of the baseball stadium site" are concerned, the Mayor and the D.C. Council

have exclusive authority and discretion. Motion to Dismiss at 8. In support, they cite

Siegel v. District of Columbia, 892 A.2d 387 (D.C. 2006). Defendants argue that the

District of Columbia Court of Appeals held in Siegel that, "'as a matter of law, the sole

judges' of the validity of the actions taken with respect to the baseball stadium site 'are

the D.C. Council and the Mayor." Motion to Dismiss at 9. Defendants mis-read <u>Siegel</u> here.

In <u>Siegel</u>, the Court of Appeals addressed the question "whether the Stadium Financing Act allows private land owners to challenge the good faith estimate of costs associated with the construction of the new baseball stadium as a defense to the eminent domain proceedings brought by the District." <u>Id.</u> at 392. The Stadium Financing Act, a statute in no way implicated in this case – provided that if certain cost estimates for acquisition of the land to be used in the stadium construction were above a certain level, then the District would have to seek a different site. The plaintiffs in <u>Siegel</u> sought to challenge eminent domain proceedings taken in furtherance of the stadium development on the basis that the cost estimates delivered by the District's Chief Financial Officer ("CFO") to the City Council pursuant to the statute were rendered in bad faith. The <u>Siegel</u> court concluded that, as a matter of law, "the sole judges of whether or not the CFO's estimate was made in bad faith are the D.C. Council and the Mayor." <u>Id.</u> The court decided that the decision by the City Council to rely upon the CFO's estimates in moving forward was a "legislative decision – akin to deciding whether or not to enact a law." <u>Id.</u> at 395. Concluding on this basis that the complaint in <u>Siegel</u> set forth a non-justiciable claim, the Court stated that, "[w]hen the Mayor and Council are engaged in essential budget functions, this court should accede to a request for judicial intrusion only if it is plain that the Council intended to restrict the Mayor's authority in this regard." <u>Id.</u> at 395-396 (internal quotations omitted). Nowhere does the court in <u>Siegel</u> say that all matters involving the construction and development of the property near the baseball stadium are non-justiciable.

The claim in the instant case is not brought under the Stadium Financing Act, does not challenge the Council or Mayor's choice to rely upon the cost estimates of a City official charged with the responsibility of furnishing such information in the course of their decision-making, and does not challenge the conduct of the defendants with respect to "essential budget functions." Instead, plaintiffs claim that the city and two corporate entities have breached a contract and covenants of fair dealing, and engaged in tortious conduct in connection with the negotiation and conferring of development rights adjacent to the stadium. While the complaint addresses generally the economic development plans of the City as centered on the baseball site and surrounding property, the similarities with Siegel end there. The court has considered the defendants' admonition that by permitting the plaintiff to proceed on its Complaint, the court might "resurrect[] the cloud over the . . . future of Major League Baseball in the District." That the subject is baseball, or – more accurately -- the economic development of the property near the stadium, however, does not render the instant controversy non-justiciable. The motion to dismiss on the basis of non-justiciability therefore will be denied.

## 12(b)(6) Arguments

Defendants challenge the sufficiency of the Complaint in its entirety upon the basis that neither the LOI, nor any subsequent act by any party, constituted a binding contract of any kind. Additionally, defendants claim that the Complaint fails sufficiently to plead that either the LOI or any subsequent act by any party created a partnership or joint venture, and that therefore defendants had no resulting fiduciary duty, and that plaintiffs also have failed sufficiently to plead a promise upon which they could reasonably rely, or upon which they did rely, to their detriment. To the extent that

plaintiffs have taken actions or incurred expenses associated with an effort to enter into a contract with the District, defendants argue that plaintiff knew it did so at its own risk, and that therefore plaintiff has failed to plead unjust enrichment. Defendants further claim that because the LOI did not constitute a binding agreement, despite the inclusion in the LOI of a provision for good faith and fair dealing, no obligation to engage in good faith and fair dealing was conferred on defendants as the result of the execution of the LOI. As a result of these deficiencies, defendants argue, the entire Complaint fails to state a claim and must be dismissed.

As to plaintiff's allegations against DCSEC, defendants argue that the Complaint should be dismissed because there was no contract or business expectation generated with which DCSEC could interfere, and because DCSEC was not, and was not intended to be, a party to the LOI or any other agreements upon which plaintiff bases its claim that a contract existed. Finally, defendants argue that plaintiff lacks standing to challenge any alleged violation of the July 11, 2006, Disposition Resolution authorizing the Mayor to convey development rights to plaintiff or to challenge any conduct of DCSEC as "ultra vires."

Plaintiffs oppose, arguing that they have sufficiently pleaded the existence of a binding contract conferring upon WDC the exclusive right to construct the Separate Development, and that DCSEC intentionally and wrongfully interfered with, and ultimately prevented, plaintiffs' ability to perform.

One overarching question before the court as to all of defendants' arguments for dismissal is whether plaintiff has pleaded, at the very least, the existence of a binding agreement to negotiate in good faith. Plaintiff asserts that it is well established that

agreements of this nature are enforceable—even when they appear in the context of underlying agreements that are not sufficiently definite to be enforced (as a whole). <u>See</u> <u>Stanford Hotel Corp., v. Potomac Creek Assoc., L.P.</u>, Civil Action No. 99CA1413 (D.C. Super Ct. April 3, 2003) and cases cited therein (noting that judicial policy should favor such preliminary agreements to negotiate in good faith).

However, "[i]t is fundamental to contract law that mere participation in negotiations and discussions does not create binding obligation, even if agreement is reached on all disputed terms." <u>Teachers Insurance and Annuity Assoc. of America v.</u> <u>Tribune Co.</u>, 670 F. Supp. 491, 497-498 (S.D.N.Y. 1988). "Nor is this principle altered by the fact that negotiating parties may have entered into letters of intent or preliminary agreements if those were made with the understanding that neither side would be bound until final agreement was reached." <u>Id.</u> The court recognized in <u>Teachers Insurance,</u> however, that "[i]t is equally important that courts enforce and preserve agreements that were intended as binding, despite a need for further documentation or further negotiation." <u>Id.</u> Thus, such an agreement can exist "in the sense that [parties] accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement." <u>Id.</u> Such an agreement "does not commit the parties to their ultimate contractual objective, but rather to the obligation to negotiate the open issues in good faith. . ." <u>Id.</u>

Here, defendants argue that, as a matter of law, the facts pleaded in the Complaint establish that the parties did not intend to be bound, and were not bound, by any agreement, even a preliminary agreement. Plaintiffs argue conversely that the facts pleaded establish not only a preliminary agreement, but also a binding and final

agreement to convey exclusive rights to construct the Separate Development.  Relying

upon the Complaint alone, or upon the Complaint and referenced documents as

defendants argue that the court can do without converting this to a motion for summary

judgment, the court concludes that the facts pleaded – the language and negotiation of the

LOI as well as the subsequent events, including the negotiation of the ERA, the proposal

by the Mayor and adoption by the Council of the Disposition Resolution, the efforts and

expenditures by WDC, the conduct of the DCSEC and other conduct of the parties --

constitute sufficient preliminary manifestation of assent to establish, at the very least, a

binding commitment to negotiate in good faith.

Flowing from this conclusion is the determination that the alleged breaches of,

and tortious interference with, that commitment set forth in each of the counts of the

Complaint must survive the instant motion to dismiss. The court is not prepared to

conclude to the contrary at this stage of this complex litigation, and awaits the

development of the record in discovery.  The defendants' Motion to Dismiss on Rule

12(b)(6) grounds therefore shall be denied.

## Sovereign Immunity

Defendants argue, finally, that the doctrine of Sovereign Immunity applies to the

District and both entities, precluding the instant action. Immunity protects an act of a

sovereign where the act complained of is "discretionary." Casco Marina Dev., L.L.C. v.

D.C. Redevelopment Land Agency, 834 A.2d 77, 81 (D.C. 2003).   Governmental actors

have no immunity from suit based upon their "ministerial" acts, however. Id.

"Generally, discretionary acts involve the formulation of policy, while ministerial acts

involve the execution of policy." Id., (quoting Nealon v. District of Columbia, 669 A.2d 685 (D.C. 1995)).

In Casco, the Court held that the DC Redevelopment Land Agency ("RLA") was not immune from Casco's claims that it had breached a lease agreement. Id. at 81-82. Applying the "ministerial-discretionary" test, the court stated that, while the RLA was "free to exercise discretion in initially entering a contract, or in deciding to seek to alter the terms of a contract, it is ministerially bound as a contracting party by the terms of a valid, existing contract. . . "Id.. Thus, the court held, because the RLA's obligation was simply to conform to the provisions of the lease, its acts were ministerial in nature. Id. Compare with Common Cause Georgia v. City of Atlanta, 614 S.E.2d 761 (Ga. Sup. Ct. 2005)(because mayor had a choice to sign or not sign a prepared contract, his failure to execute the contract was an act of discretion and he was immune from suit).

Here, for the reasons stated above, the court has concluded that plaintiff, at this stage, sufficiently has alleged breach of contract and of other specific duties by DC and two corporate entities. The court will not reach, because it need not, the question whether AWC and DCSEC would be protected by sovereign immunity in any event. Because the Complaint alleges breach of a binding agreement and related obligations, the court concludes that plaintiff has pleaded breach of defendants' ministerial duties, rather than discretionary acts. Thus defendants are not protected from suit by the doctrine of sovereign immunity.

For all of the foregoing reasons, it hereby is this 30th day of November, 2007,

**ORDERED** that Defendants' Joint Motion to Dismiss the Complaint is

**DENIED.**

Lynn Leibovitz
Associate Judge
(signed in chambers)

cc:

S. Scott Morrison
Nicole Lynn Kobrine
Michael J. Klyce, Jr.
Katten Muchin Rosenman LLP
1025 Thomas Jefferson Street N.W.
East Lobby, Suite 700
Washington, D.C. 20007

Edward P. Taptich Esq.
Daniel A. Rezneck Esq.
Thomas J. Foltz, Esq.
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W.
Washington, D.C. 20001

Ronald W. Kleinman Esq.
Kevin E. Stern, Esq.
Geoffrey J. Greeves, Esq.
Greenburg Traurig LLP
800 Connecticut Ave, N.W. Suite 500
Washington DC 20006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MONUMENT REALTY LLC, et al.,     ) | |
|           ) | |
| Plaintiffs,      ) | |
|           ) | |
| v.           ) | Civil Action No. 1:07-cv-01821 (EGS) |
|           ) | Judge Emmet G. Sullivan |
| WASHINGTON METROPOLITAN  ) | |
| AREA TRANSIT AUTHORITY,    ) | |
|           ) | |
| Defendant.     ) | |
|           ) | |

**ORDER GRANTING MOTION FOR LEAVE
TO FILE SUPPLEMENTAL OPPOSITION
TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Upon consideration of the Plaintiffs' Motion For Leave to File Supplemental Opposition to Motion to Dismiss First Amended Complaint, the memorandum of points and authorities in support of the motion, any opposition to the motion, and the entire record herein, and this Court having considered the argument of counsel thereon, it is, this ___ day of _____, 2007, hereby

ORDERED, that the motion be, and it hereby is, granted; and it is further

ORDERED, that Plaintiffs be, and they hereby are, granted leave to file their Supplemental Opposition to Motion to Dismiss First Amended Complaint forthwith; and it is further

ORDERED, that Plaintiffs shall file their Supplemental Opposition to Motion to Dismiss First Amended Complaint as a separate pleading in this case.

_____

Emmet G. Sullivan
United States District Judge

COPIES TO:

Louis E. Dolan, Jr.
Vernon W. Johnson, III
Nixon Peabody LLP
401 9th Street, N.W.
Washington, D.C. 20001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167