IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
MONUMENT REALTY LLC, *et al.*,      )
                                                    )
      *Plaintiffs*                          )
                                                    )
v.                                                 )   Civil Action No. 1:07-CV-01821 (EGS)
                                                    )
WASHINGTON METROPOLITAN AREA  )
TRANSIT AUTHORITY,                    )
                                                    )
      *Defendant*                          )
_____)

**MOTION OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
FOR RECONSIDERATION OF PRELIMINARY INJUNCTION DECISION**

Pursuant to Fed. R. Civ. P. 60, Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by undersigned counsel, respectfully moves for reconsideration of the Court's February 28, 2008 decision granting Defendants a preliminary injunction halting the disposition of the WMATA property identified as the Bus Garage Property. As more fully explained in the accompanying Memorandum of Points and Authorities, the Court erred in Point III. B. 2. of the Court's Memorandum Opinion where the Court found that Plaintiffs had established substantial prejudice because there was a substantial chance that they would have received the contract award but for WMATA's alleged violations of law during the bid process. To the contrary, not only was there no substantial chance, there was no chance at all that Plaintiffs would have been the successful bidder because JBG was the second highest bidder. Therefore, Plaintiffs did not show, and cannot show, the requisite prejudice. Accordingly, WMATA respectfully prays that the Court reconsider its decision to grant the preliminary injunction, vacate the injunction, deny Plaintiffs' motion for preliminary injunction and grant WMATA such other and further relief as may be appropriate.

- 3 -

Respectfully submitted,

/s/ Bruce J. Heppen
Carol B. O'Keeffe
General Counsel
Bruce P. Heppen
Donald A. Laffert
Associate General Counsel
Washington Metropolitan Area
Transit Authority
600 Fifth Street, N.W.
Washington, DC 20001
T: (202) 962-2569
F: (202) 962-2550
email: bheppen@wmata.com
email: dlaffert@wmata.com

/s/ Harvey A. Levin
Harvey A. Levin (D.C. Bar No. 203869)
THOMPSON COBURN LLP
1909 K Street, N.W. Ste. 600
Washington, D.C. 20006-1167
T: (202) 585-6942 (direct)
F: (202) 508-1013 (direct)
email: hlevin@thompsoncoburn.com

Counsel for Washington Metropolitan Area
Transit Authority

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February 2008, a true and correct copy of the foregoing was served by ECF on:

> Louis E. Dolan, Jr., Esquire
> Vernon W. Johnson, III, Esquire
> NIXON PEABODY, LLP
> 401 Ninth Street, N.W.
> Washington, D.C.  20001

        /s/ Harvey A. Levin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MONUMENT REALTY LLC, *et al.*,          )
                                        )
    *Plaintiffs*                          )
                                        )
v.                                      )   Civil Action No. 1:07-CV-01821 (EGS)
                                        )
WASHINGTON METROPOLITAN AREA            )
TRANSIT AUTHORITY,                      )
                                        )
    *Defendant*                           )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY IN SUPPORT OF MOTION FOR RECONSIDERATION OF PRELIMINARY INJUNCTION DECISION**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by undersigned counsel, respectfully submits this Memorandum of Points and Authorities in support of WMATA's Motion for Reconsideration of the Court's February 28, 2008 decision granting Plaintiffs a preliminary injunction. The Court erred in Point III. B. 2. of the Court's Memorandum Opinion ("Mem. Op."), where the Court found that Plaintiffs had established substantial prejudice because there was a substantial chance that they would have received the contract award but for WMATA's alleged violations of law during the bid process. To the contrary, not only was there no substantial chance, *there was no chance at all* that Plaintiffs would have been the successful bidder because JBG was the second highest bidder. Therefore, Plaintiffs did not show, and cannot show, the requisite prejudice.

**ARGUMENT**

    **The Court Erred In Finding That Plaintiffs Were Next In Line To Be Awarded The Contract If The Akridge Bid Were Rejected**

The Court began Point III. B. 2. correctly reciting the law, namely that in order for Plaintiffs to have standing to challenge the bid and award process, they "must show that they

4696896.3

were significantly prejudiced by the errors in the procurement process." Mem. Op. at 20. Specifically, Plaintiffs "must show that there was a 'substantial chance' that they would have received the contract award but for WMATA's violation of applicable law during the sealed bid process. … Plaintiffs satisfy their burden to demonstrate a substantial chance of receiving the award when they are next in line to be awarded the contract …." *Id*. at 21 (citations omitted).

The Court then found that Plaintiffs had met this requisite based on the Bottigheimer memorandum, WMATA Exhibit E-11. This finding, however, was plainly incorrect. JBG, not Plaintiffs, was next in line after Akridge to receive the award. The Bottigheimer memorandum shows there was no chance of Plaintiffs' being next in line, after Akridge, to receive the award. This determination is purely arithmetic and is readily reached on the face of the Bottigheimer memorandum. That memorandum set out the bids as follows:

The bids received are:

| Bidder | Bid Amount | Leaseback Rental (Monthly | |
| --- | --- | --- | --- |
|  |  | Months 1 to 12 | Months 13 to 36 |
| Akridge | $ 69,250,000 | $ 110,000 | $ 430,000 |
| JBG | $ 66,000,000 | $ 308,333 | $ 308,333 |
| Monument Realty | $ 60,000,000 | $   0 | $   0 |

The memorandum then set out the expected leaseback period of three months (emphasis added):

> After a thorough discussion with other members of the staff, which gave great weight to the planned opening of the Washington Nationals Baseball Stadium in April 2008, I recommend that the Authority proceed on the basis that BUS will soon begin distributing the Southeastern Bus Garage's operations elsewhere and then complete vacating the facility by March 31, 2008; i.e., the Authority will sell the Southeastern Bus Garage within 120 calendar days of August 28, 2007 and then plan to lease back the facility *for approximately three months until March 31, 2008*.[1]

---

[1] WMATA had made its intention to disperse buses, rather than continue to operate from the Bus Garage Property or seek a temporary replacement site, known publicly. *See* the Akridge letters of September 12 and September 20, 2007 (Plaintiffs' Exhibits 80 and 81).

The arithmetic proving that Plaintiffs were not next in line is really quite simple:

| Bidder | Bid Amount | Three Month Lease Back | Net Result |
| --- | --- | --- | --- |
| Akridge | $ 69,250,000 | $330,000 | $68,920,000 |
| JBG | $ 66,000,000 | $924,999 | $65,075,001 |
| Monument | $ 60,000,000 | $0 | $60,000,000 |

MRB 7's bid price was $60 million and the leaseback amount was zero. JBG's bid price was $66 million with a leaseback amount of $308,333 per month. The difference in the two bid prices was $6 million. That additional $6 million in JBG's bid equates to 19.5 months of rent at $308,333 per month. Thus, if Akridge were out of the picture, the MRB 7 bid does not exceed JBG's bid, and does not become "next in line," unless there were a leaseback period of *20 months or greater*.

But a leaseback period of that length, or anywhere near that length, was not WMATA's intention, was not the premise or expectation of the bid evaluation, *was not part of the evaluation calculus for the bids* and was not the actual fact. WMATA intended to be out of the Bus Garage Property, *as WMATA will be out of the Bus Garage Property*, *in three months*, in time for the beginning of the 2008 baseball season.[2] In three months, in fact in six-times-three

---

[2] The Court may have seen the published accounts in the Washington Post and in the DC Examiner that WMATA is in negotiations with the Lerner family, owners of the Nationals, to use the Bus Garage Property for stadium parking until WMATA is freed up from this litigation and can dispose of the Bus Garage Property.

A funding commitment from the District of Columbia to help pay for bus dispersal facilitated the process of WMATA's being out of the Bus Garage Property by Opening Day. *See* the WMATA Board's February 28, 2008 Resolution, a copy of which accompanies this Memorandum as Exhibit 1.

months -- *even if WMATA had not been out of the Bus Garage until the end of the 2009 season* -- JBG was "next in line."

The Memorandum Opinion's reliance on the following two sentences from the Bottigheimer memorandum to reach a contrary conclusion was simply error: "'[A]nalysis of the three bids reveals that acceptance of Akridge's bid would provide the best net return to the authority as long as the leaseback period is from zero months to thirty-months. If the leaseback period is thirty-one months to thirty-six months, Monument's bid would provide the best net return.'" Mem. Op. at 21. Based on this excerpt from the Bottigheimer memorandum, the Court concluded, "Bottigheimer's memorandum clearly suggests that if Akridge had not been awarded the bid, MRB 7 would have been next in line." *Id*. at 22.

But the Bottigheimer memorandum did not establish that MRB 7 had the second-highest bid. The memorandum addressed only which bid of the three was first, not which bid was second if the Akridge bid were eliminated. Consideration of which, as between the JBG and MRB 7 bids, would be the second-place bid without Akridge was both irrelevant and unnecessary. Had a determination of the second-place bid been a topic of the memorandum, the conclusion would have to have been, and only could have been, that the JBG bid was next in line.

The Court's contrary conclusion simply cannot be reached on the basis of the face of the three bids and WMATA's maximum leaseback of three months as explained in the Bottigheimer memorandum or on the basis of any other evidence in this case. The MRB 7 bid was *not* second best. In the absence of Akridge, JBG was the high bidder.

As MRB 7's bid was not "next in line," and as there was no prospect for MRB 7's bid to be "next in line" if Akridge's bid were disregarded, Plaintiffs did not (and cannot) "demonstrate a substantial chance of receiving the award," and Plaintiffs cannot show the requisite prejudice

to entitle them to any relief. *See Adrian Supply Co.*, B-243904, 91-2 CPD ¶ 140 (Aug. 7, 1991); *ACand S, Inc.*, B-241723, 91-1 CPD ¶ 203 (Feb. 22, 1991); *Applied Sys. Corp. – Recon.*, B-234159, 89-1 CPD ¶ 319 (Mar. 28, 1989) (third-low bidder lacked interested party status); *Motorola, Inc.*, B-232843, 88-2 CPD ¶ 484 (Nov. 16, 1988).

The conclusion that Plaintiffs' low bid denies them standing becomes even clearer in light of this indisputable fact: Akridge far and away submitted the highest bid price, $69.25 million. Plaintiffs submitted the lowest bid, falling almost $10 million short of Akridge's bid and more than $5 million short of JBG's bid for the intended leaseback period.[3]

Procurement law does not hold, like the law generally does not hold, that courts must override reality and put aside fact and substance in favor of form and formalisms. The hypothetical should not prevail over the contrary actual. This is especially true as a maxim of equity. A preliminary injunction is a drastic remedy. It requires, as equity jurisdiction requires, that the harm to which the court addresses the injunction be real and not just hypothetical. Due to Plaintiffs' stark underbidding, there is no real harm here.

## CONCLUSION

For the foregoing reasons, WMATA respectfully submits that the Court reached the plainly mistaken conclusion on the critical element of Plaintiffs' standing to challenge the bid process and award, and the Court improvidently granted the preliminary injunction. WMATA prays that the Court reconsider its decision to grant the preliminary injunction, vacate the injunction, deny Plaintiffs' motion for preliminary injunction and grant WMATA such other and further relief as may be appropriate.

---

[3] For this same reason, Plaintiffs could not be harmed, as they were not harmed, by anything that arguably might have expanded the already impassable differential between the Akridge bid and the MRB 7 bid.

Respectfully submitted,

/s/ Bruce J. Heppen
Carol B. O'Keeffe
General Counsel
Bruce P. Heppen
Donald A. Laffert
Associate General Counsel
Washington Metropolitan Area
Transit Authority
600 Fifth Street, N.W.
Washington, DC 20001
T: (202) 962-2569
F: (202) 962-2550
email: bheppen@wmata.com
email: dlaffert@wmata.com

/s/ Harvey A. Levin
Harvey A. Levin (D.C. Bar No. 203869)
THOMPSON COBURN LLP
1909 K Street, N.W. Ste. 600
Washington, D.C. 20006-1167
T: (202) 585-6942 (direct)
F: (202) 508-1013 (direct)
email: hlevin@thompsoncoburn.com

Counsel for Washington Metropolitan Area
Transit Authority

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February 2008, a true and correct copy of the foregoing was served by ECF on:

>Louis E. Dolan, Jr., Esquire
>Vernon W. Johnson, III, Esquire
>NIXON PEABODY, LLP
>401 Ninth Street, N.W.
>Washington, D.C. 20001

                                  /s/ Harvey A. Levin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONUMENT REALTY LLC, *et al.*,

    *Plaintiffs*

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    *Defendant*

Civil Action No. 1:07-CV-01821 (EGS)

# EXHIBIT 1

## TO

### MEMORANDUM OF POINTS AND AUTHORITIES OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY IN SUPPORT OF MOTION FOR RECONSIDERATION OF PRELIMINARY INJUNCTION DECISION

PRESENTED AND ADOPTED: February 28, 2008

SUBJECT:   APPROVAL OF REPROGRAMMING OF FUNDS FOR THE REALLOCATION OF SOUTHEASTERN BUSES

2008-15

RESOLUTION
OF THE
BOARD OF DIRECTORS
OF THE
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

WHEREAS, On October 19, 2006, the Board of Directors approved the sale of a Metrobus employee parking lot adjacent to the Navy Yard Metrorail Station and authorized the net proceeds of the sale of the lot to be applied to the cost of the replacement of the Southeastern Bus Garage; and

WHEREAS, On January 25, 2007, the Board of Directors amended the Capital Improvement Program by $500,000 to fund a feasibility study and early actions for a replacement facility for the Southeastern Bus Garage; and

WHEREAS, On April 26, 2007, the Board of Directors amended and increased the Capital Improvement Program by $6,359,764 from the sale of the Metrobus employee parking lot to fund studies, project development, real estate negotiations, design, advertisement and any early actions for the replacement facility; and

WHEREAS, On December 13, 2007, the Board of Directors approved the establishment of an operating reserve account for the operating costs of providing bus service following the reallocation of Southeastern buses to other facilities using funds from the pending sale of the Southeastern Bus Garage; and

WHEREAS, The sale of the Southeastern Bus Garage has not been completed and the District of Columbia desires that the buses be reallocated to other Metrobus garages prior to the start of the Washington Nationals Baseball season; and

WHEREAS, The District of Columbia is requesting that $1,390,000 in uncommitted funds from the Capital Improvement Program identified for the Southeastern replacement facility be used for initial reallocation operating costs; and

WHEREAS, The District of Columbia has committed (*see* attached letter) to fund the additional reallocation operating costs until the Southeastern Bus Garage is sold and a replacement garage site is acquired; now, therefore be it

Motioned by Mr. Graham, seconded by Mr. Moneme
Ayes: 6 - Mr. Zimmerman, Mr. Graham, Mr. Benjamin, Mrs. Hudgins, Mr. Moneme, Ms. Hewlett

*RESOLVED*, That the Board of Directors approves the transfer of $1,390,000 from the Capital Improvement Program to the operating reserve account for the specific purpose of funding increased operating costs generated by the reallocation of Southeastern buses to other Metrobus garages; and be it further

*RESOLVED*, That once these funds are expended, the District of Columbia will fund these additional operating expenses until the Southeastern Bus Garage is sold and a replacement Metrobus garage site is acquired; and be it finally

*RESOLVED*, That this Resolution shall be effective immediately.

Reviewed as to form and legal sufficiency,

Carol B. O'Keeffe
General Counsel

Attachment

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DEPARTMENT OF TRANSPORTATION



OFFICE OF THE DIRECTOR

January 25, 2008

Mr. John Catoe
General Manager
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001

Dear Mr. Catoe:

As the District moves forward with the plans to redevelop the new Ballpark District, I would like to reiterate our desire to continue to work with WMATA on the next steps of a dispersal strategy for the buses currently operating our of the Southeast Bus Garage. It has come to my attention from WMATA staff that $3.7 million dollars is available in the Southeast Bus Garage account that could be utilized to pay for the net increase due to the reallocation of the buses, recently estimated to cost $3.2 million dollars per fiscal year. The FY08 projected impact would be $800,000. On behalf of the District, I am requesting that WMATA moves forward in utilizing these funds to cover the additional operating costs of the dispersal strategy for the buses, in light of the safety concerns of the Authority will have once the new Nationals Baseball Park opens.

In addition, I am requesting that WMATA prepare a resolution for Board approval that authorizes this action, with the contingency that the District will cover theses costs until the sale of the Southeast Bus Garage is complete and funds are available from the sale. As we move forward my hope is that we will continue to work together to build a facility that is not only responsive to the current service needs of our riders, but one that will also accommodate the future needs of the District and the region. I appreciate your prompt attention to this matter.

Please don't hesitate to contact me or Freddie Fuller, Associate Director of Mass Transit, at 202-673-1735 in regards to anything related to this project.

Sincerely,

Emeka Moneme
Director

cc:    Jim Graham, Councilmember
       Freddie Fuller, Associate Director, MTA