**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
**MONUMENT REALTY LLC and**                    )
**MR BALLPARK 7 LLC,**                               )
                                                              )
                                  **Plaintiffs,**           )
                                                              )        **1:07-CV-01821**
                      **vs.**                                )        **Judge Emmet Sullivan**
                                                              )
**WASHINGTON METROPOLITAN AREA**    )
  **TRANSIT AUTHORITY,**                          )
                                                              )
                                  **Defendant.**          )
_____ )


### JOHN AKRIDGE DEVELOPMENT COMPANY'S MOTION TO INTERVENE

        Proposed Intervenor John Akridge Development Company ("Akridge") respectfully

moves for an Order permitting it to intervene in this case.   As demonstrated in its Memorandum

of Points and Authorities in Support of this Motion, Akridge is entitled to intervene as of right

under Rule 24(a)(2) of the Federal Rules of Civil Procedure because, as the entity responsible for

enforcing the contract it was awarded pursuant to the Washington Metropolitan Area Transit

Authority ("WMATA") procurement process, it has an interest relating to the property that is

subject to this lawsuit.  Plaintiffs have challenged WMATA's procurement process and assert

that they have rights to purchase the property that are superior to Akridge's contract rights,

entitling them to negotiate to purchase the property.  Plaintiffs' claims could impair, and have

already impaired, Akridge's rights under the contract.  Akridge's interests relating to the

property are not currently adequately represented by any existing party.

        In addition to its entitlement to intervene as of right, Akridge should be permitted to

intervene under Rule 24(b) of the Federal Rules of Civil Procedure because its defenses and the

claims and defenses in the main action have questions of law and fact in common.  Finally, Akridge's intervention will not unduly delay this case or prejudice the parties to this case.

WMATA has consented to Akridge's intervention.  Plaintiffs have declined to do so.

Akridge respectfully refers the Court to its Memorandum of Points and Authorities, which is attached to this Motion.  Akridge's proposed Answer is also attached hereto.

Dated: March 18, 2008

Respectfully submitted,


_____*/s/ Barbara S. Wahl*_____

Barbara S. Wahl (297978)
Joshua Fowkes (494700)
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
Telephone:  (202) 857-6000
Fax:  (202) 857-6395


*Attorneys for John Akridge Development Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2008, I caused a copy of the foregoing

JOHN AKRIDGE DEVELOPMENT COMPANY'S MOTION TO INTERVENE,

accompanying MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOHN

AKRIDGE DEVELOPMENT COMPANY'S MOTION TO INTERVENE, proposed ANSWER

and draft ORDER to be served on all parties registered with Electronic Case Filing, including the

following:

> Louis Dolan, Jr.
> Vernon Johnson, III
> Nixon Peabody LLP
> 401 9th Street, N.W.
> Suite 900
> Washington, D.C. 20004-2128
>
> Harvey Levin
> Thompson Coburn LLP
> 1909 K Street, NW
> Suite 600
> Washington, D.C. 20006-1167

>       /s/ *Joshua Fowkes*
> Joshua Fowkes

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

MONUMENT REALTY LLC and )
MR BALLPARK 7 LLC, )
)
     **Plaintiffs,** )
)  **1:07-CV-01821**
   **vs.** )  **Judge Emmet Sullivan**
)
WASHINGTON METROPOLITAN AREA )
 TRANSIT AUTHORITY, )
)
     **Defendant.** )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE BY JOHN AKRIDGE DEVELOPMENT COMPANY

  Proposed Intervenor John Akridge Development Company ("Akridge") submits this memorandum of law in support of its motion pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene in this action as a defendant. Akridge was awarded the contract to purchase the bus garage property offered for sale by WMATA, and as the entity responsible for enforcing the contract, Akridge clearly has an interest in the property. Its current inability to protect that interest without being a party to the lawsuit necessitates its intervention. Defendant Washington Metropolitan Area Transit Authority ("WMATA") has consented to Akridge's intervention. Plaintiffs have declined to do so.

  In the present lawsuit, plaintiffs Monument Realty LLC and MR Ballpark 7 LLC contend, among other things, that they had contractual rights that are superior to Akridge's contractual rights to purchase WMATA's bus garage property in southeast Washington, D.C.,

near the site of the new baseball stadium (the "Property"). Plaintiffs further contend that WMATA's procurement process was flawed, and therefore should preclude Akridge from purchasing the Property. On February 28, 2008, the Court issued a preliminary injunction enjoining WMATA from conveying the Property to Akridge. Following issuance of the preliminary injunction, on March 7, 2008, Plaintiffs and WMATA submitted the Parties' Joint Recommendations for Further Proceedings Pursuant to Minute Order Dated March 3, 2008 ("Joint Recommendation"). Pursuant to the Joint Recommendation, the parties have proposed a bifurcated approach to the remainder of the litigation, under which the validity of WMATA's procurement will be litigated first on an expedited schedule, culminating in the filing of cross motions for summary judgment. The Joint Recommendation does not suggest a trial schedule for the procurement portion of the case. The Joint Recommendation further proposes that the depositions of the contract portion of the case be delayed until after the procurement issues are briefed on summary judgment.

Akridge should be permitted to intervene in this action because its rights may be materially and adversely affected by the outcome. As the successful bidder for the Property, Akridge became the holder of a fully executed contract for the purchase of the Property and is entitled to seek its enforcement. Akridge obviously has a significant interest in the outcome of the case and an interest in protecting the contract. The issuance of the preliminary injunction and the proposed litigation of the case as set forth in the Joint Recommendation now present circumstances where there is no longer an identity of interest between Akridge and WMATA, thereby necessitating Akridge's joinder as a defendant.

## THE FACTS

On August 28, 2007, Akridge submitted a bid in response to WMATA's IFB No. 08-1. On September 24, 2007, WMATA posted on its website its staff recommendation to the

WMATA Board of Directors that Akridge be awarded the contract for the purchase of the
Property. At its Board meeting on September 27, 2007, the WMATA Board voted to award the
contract for the sale of the Property to Akridge. On October 1, 2007, WMATA formally notified
Akridge that it was the successful bidder for the purchase of the Property. Pursuant to the terms
of IFB No. 08-1, WMATA's notification of the acceptance of Akridge's bid created a binding
contract between WMATA and Akridge for the purchase of the Property.

On October 10, 2007, Monument commenced this action and shortly thereafter filed a *lis
pendens* in the land records of the District of Columbia. Monument did not name Akridge as a
defendant in either the original Complaint or in the First Amended Complaint, which was filed
on October 26, 2007.

On January 23, 2008, the Court heard extensive oral argument on WMATA's Motion to
Dismiss and on Plaintiffs' Motion for Preliminary Injunction. At the hearing, the Court asked
counsel for Plaintiffs whether their failure to join Akridge as a party to the litigation was fatal to
Plaintiffs' case, and whether Akridge's participation is not indispensable. Plaintiffs' counsel
responded:

> Mr. Dolan: ... [w]e subpoenaed [Akridge], they produced documents. They're
> well aware of this case. They're sitting in the courtroom today. We don't know
> why they haven't moved to intervene. They presumably feel that WMATA is
> doing an adequate job representing their interest, but they're certainly aware of
> this litigation and they're not here.

*See* excerpt of the hearing on January 23, 2008, annexed as Exhibit 1 hereto, at 5.

On February 28, 2008, this Court issued a preliminary injunction which precludes
WMATA from conveying the Property to Akridge. On March 7, 2008, Plaintiffs and WMATA
filed the Joint Recommendation, which provides their proposal for the management of the
litigation going forward. The Joint Recommendation proposes, among other things, that the

- 3 -

parties file cross motions for summary judgment by July 3, 2008, if not earlier, and that no additional discovery, or perhaps only limited additional discovery, will be needed for the Court to issue a final judgment on Plaintiffs' procurement claims.  No schedule envisioning a trial on Plaintiffs' procurement issues has been requested.

It is vital that Akridge be permitted to intervene in this action because its rights will be directly and substantially affected by the outcome.  Pursuant to the Joint Recommendation, the parties now appear to contemplate a course of litigation under which they will not undertake much, if any, additional discovery.  Akridge, on the other hand, believes that discovery of WMATA's decision makers' evaluation of IFB No. 08-1 leading to the award of the contract to Akridge is essential for the proper resolution of this matter.  Akridge believes that such discovery will establish that there are material facts in dispute, precluding adjudication of the case on summary judgment.  As a result, Akridge has now concluded that its interests and those of WMATA are no longer aligned so that Akridge must now participate as a party in the litigation.  Moreover, Akridge, having voluntarily agreed to participate in the upcoming mediation process, should accordingly be permitted to protect its interests in this forum as well in private settlement discussions.

## ARGUMENT

## I.    AKRIDGE IS ENTITLED TO INTERVENE AS OF RIGHT

### A.    Fed. R. Civ. P. 24(a) Permits Intervention as of Right in These Circumstances

In order to intervene as of right under Rule 24(a)(2), a movant must satisfy four requirements: "(1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties."  *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001); *Williams & Humbert Ltd. v. W.&H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 74 (D.C.

Cir. 1988).  After it has successfully intervened, an intervenor "participates on an equal footing

with the original parties to a suit."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C.

Cir. 2003); *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985)

(finding that intervenors "assume the status of full participants in a lawsuit and are normally

treated as if they were original parties once intervention is granted").  In the instant case, Akridge

satisfies each of the elements for intervention as a matter of right under Rule 24(a)**.**

### (1)    Akridge's Motion to Intervene Is Timely

A district court "has much latitude in assessing the timeliness of a motion [to intervene]."

*Smoke*, 252 F.3d at 471.  "A court should be more reluctant to deny an intervention motion on

grounds of timeliness if it is intervention as of right than if it is permissive intervention."  *United

States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (reversing denial of motion to intervene).

When evaluating timeliness, a court should consider "all the circumstances, especially weighing

the factors of time elapsed since the inception of the suit, the purpose for which intervention is

sought, the need for intervention as a means of preserving the applicant's rights, and the

probability of prejudice to those already parties in the case."  *Smoke*, 252 F.3d at 471.

Significantly, in determining whether a motion to intervene is timely, courts should place more

weight on the date when the intervenor's interests became inadequately represented and its

motion was filed, rather than on the date on which the lawsuit was first filed.  *Dimond v. District

of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); *Smoke*, 252 F.3d at 471(ruling that a motion to

intervene was timely because it was filed shortly after "potential inadequacy of representation

came into existence"); *AT&T*, 642 F.2d at 1295 (ruling that motion to intervene was timely

because it was filed "soon after it became reasonable to expect inadequate representation" of

movant's interests).

- 5 -

Here, Akridge's Motion to Intervene is timely.  Until the recent filing of the Joint Recommendation, there was an apparent identity of interests between Akridge and WMATA; that is no longer the case.  Allowing Akridge to intervene at this juncture, when the opportunity for additional discovery is contemplated, will not disrupt the case, or cause undue delay, hardship, or prejudice to the adjudication of the parties' claims.

**(2)       Akridge Has a Cognizable Interest in the Subject Matter
of This Action That May Be Impaired by This Action**

The second and third elements for intervention as of right - - a cognizable interest in the subject matter of the lawsuit and the potential impairment of that interest - - are unquestionably met here.  As the successful bidder under WMATA's IFB No. 08-1, Akridge was awarded a fully executed contract to purchase the Property, and it is responsible for the enforcement of the contract.  Plaintiffs have challenged the propriety of the procurement  process that led to WMATA's decision to award the contract to Akridge.  The relief requested by the Plaintiffs includes an injunction that would preclude Akridge and WMATA from closing on the sale of the Property under that contract.  Plainly, Akridge has a cognizable interest in the subject matter of the litigation that is jeopardized by this suit.  But if the contract is set aside, WMATA may not suffer any loss or damage since it will be able again to offer the Property for sale.  Akridge, however, will incur a material loss of a very valuable contract right.

Akridge's interest in the dispute, and its ability to be impacted by the Court's ruling, was noted by the Court on at least two separate occasions.  At the hearing in the case on October 17, 2007, the Court inquired of counsel for Plaintiffs about Akridge's interest in the Property and the necessity of joining Akridge in the litigation.  *See* Exhibit 2 hereto at 7-8.[1]  Similarly, at the

---

[1] Counsel for Plaintiffs erroneously informed the Court that there was no contract between WMATA and Akridge, which is not the case.

January 23, 2008 oral argument on the Motion for Preliminary Injunction, the Court questioned

Plaintiffs' counsel concerning whether full relief could be awarded in Akridge's absence.

Plaintiffs' counsel's response - - that Akridge was aware of the litigation and could intervene if it

felt that its interests were not adequately represented by WMATA - - was an apt response. *See*

Exhibit 1 at 5. Obviously both the Court and Plaintiffs' counsel have recognized the need to

have Akridge intervene in the case in order to protect the contract rights it acquired.

### (3)  Akridge's Interests Are No Longer Adequately Represented by WMATA

The final element for intervention as of right is that no other party may be adequately

representing Akridge's interests. *Smoke,* 252 F.3d at 470. When evaluating whether an

intervenor's interest is adequately represented by the existing parties, the Supreme Court of the

United States has ruled that a movant for intervention satisfies this requirement "if [it] shows that

representation of his interest 'may be' inadequate; and the burden of making that showing should

be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

(1972); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Thus, the burden

to demonstrate possible inadequate representation is "not onerous." *Dimond,* 792 F.2d at 192;

*Fund for Animals*, 322 F.3d at 735. In fact, a purported intervenor "ordinarily should be allowed

to intervene unless it is clear that the party will provide adequate representation for the

absentee." *AT&T*, 642 F.2d at1293. The United States Court of Appeals for the District of

Columbia Circuit has observed that often "governmental entities do not adequately represent the

interests of aspiring intervenors." *Fund for Animals*, 332 F.3d at 736.

As reflected in the suggestions for the litigation as set forth in the Joint Recommendation,

it appears that Akridge's interests will no longer be adequately represented here. One of the

basic questions for the Court to adjudicate is whether WMATA's procurement process by which

- 7 -

Akridge was awarded the contract to purchase the Property violated applicable procurement law. The resolution of this threshold issue will determine whether Akridge can purchase the Property for which it was undisputedly the high bidder. Akridge believes that additional discovery from a variety of individuals related to the procurement process will be necessary for the Court to be able fairly to adjudicate that issue on the merits; the current record, or a thinly supplemented record, will be insufficient. Akridge believes that further discovery will show that when evaluating the merits of the various bids, WMATA did not and could not have considered the two letters from Akridge dated September 12 and 20, 2007, which suggested that WMATA contemplate temporarily relocating the buses to nearby Akridge property (the "Akridge Letters"). Akridge further believes that additional discovery will demonstrate that WMATA's Planning, Development and Real Estate Committee reached its conclusion and issued its report and recommendation to the WMATA Board prior to receipt of the Akridge Letters and that the Akridge Letters were never actually considered by WMATA decision makers.

In its opinion on the motion for preliminary injunction, in addressing Plaintiffs' likelihood of success on the merits, the Court suggested that WMATA did in fact consider the Akridge Letters, and that they went to the heart of Akridge's bid. *Monument Realty LLC v. Washington Metropolitan Area Transit Authority*, No. 07-1821 (EGS), 2008 WL 555967, at *10-12 (Feb. 28, 2008). Akridge believes that before the Court can issue a final ruling on the merits of Plaintiffs' procurement claims, it must consider further evidence about whether any decision makers at WMATA actually evaluated the substance of the Akridge Letters when determining the merits of Akridge's bid, and whether any of the bidders actually had the opportunity to change their bids. *Id*. at *11. In addition, the extent of communications between WMATA and the other bidders to IFB No. 08-1 should also be the subject of discovery to determine whether,

- 8 -

as the Court suggested in its preliminary injunction opinion, the other bidders were not accorded the same opportunities as Akridge. *Id*. at *10-12.

Moreover, as set forth in the Joint Recommendation, the parties anticipate holding off on discovery of the contract claims until July and August 2008, and delaying summary judgment motions on those claims until October 10, 2008. With due respect to the parties, Akridge contends that delaying litigation of the contract claims simply prolongs a decision on the merits of the case. Plaintiffs contend that they have contract rights that pre-date the Akridge-WMATA contract, entitling Plaintiffs to purchase the Property. If Plaintiffs do indeed have a contract that renders their entitlement to the Property superior to that of the other bidders, including JBG, then their ability to demonstrate their right to the Property should not be delayed until the Fall of 2008. Structuring the case so that the contract claims cannot be the subject of discovery at the same time as the procurement claims is not only inefficient but also unduly delays the final resolution of the case.

As a non-party, Akridge has not had access to the interrogatories that have been propounded and answered, the documents that have been produced, nor the deposition testimony of the witnesses, except to the extent that such evidence or testimony was revealed in the parties' filings in connection with Plaintiffs' Motion for Preliminary Injunction. Although the conduct of WMATA decision makers, the District's role in the process of WMATA's offering the property for public sale and the communications by other bidders, including Plaintiffs, may have already been adequately explored in the parties' discovery, that discovery has not been revealed in the parties' public filings. Assuming that the parties' discovery to date has not covered the matters described above, it appears that they nonetheless intend not to conduct much, if any, further discovery, as indicated by the Joint Recommendation. In order for Akridge to have access to the

- 9 -

discovery taken to date and to determine whether the assumptions that the Court made in connection with its ruling on the likelihood of success on the merits are factually correct, Akridge must be a party to the lawsuit. Moreover, Akridge must be in a position to conduct such additional discovery as it deems appropriate to protect its interests and request a trial date, which it can only do as a party.

Accordingly, for the foregoing reasons, Akridge is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

## II.    AKRIDGE IS ENTITLED TO PERMISSIVE INTERVENTION

Alternatively, Akridge should be granted permission to intervene pursuant to Fed. R. Civ. P. 24(b), which provides for permissible intervention: "[o]n timely motion … [when an applicant] has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)  In order to intervene under Rule 24(b)(2), an intervenor must have "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 9-10 (D.D.C. 2007).  When evaluating a motion to intervene under Rule 24(b)(2), a court "shall consider whether the requested intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 68 (D.D.C. 2006).  Because permissive intervention under Rule 24(b)(2) is an "inherently discretionary enterprise," courts considering those motions have "wide latitude." *Nat'l Children's Ctr., Inc.*, 146 F.3d at 1046.

Here, the Court should exercise its discretion to permit intervention by Akridge under Fed. R. Civ. P. 24(b).  First, there is unquestionably an independent basis for an exercise of this Court's jurisdiction over Akridge's claims pursuant to D.C. Code § 9-1107.01, sec. 81 (2001),

which gives this Court original jurisdiction over claims brought by or against WMATA, including claims relating to WMATA's disposal of excess real property.  Second,  Akridge has timely applied to the Court to intervene, pressing its motion to do so once the alignment of Akridge's interests with those of WMATA came into question.  The intervention of Akridge at this point in the proceedings will not cause undue delay or prejudice to any party.  It is Akridge's intention to proceed expeditiously with the litigation of all claims so that entitlement to the Property can be adjudicated as quickly as possible.  Third, Akridge's claims and defenses are common to and intertwined with the claims brought by both parties.  The integral nature of Akridge's involvement with the case is even more apparent in light of the Court's focus on the Akridge Letters in its ruling on the Motion for Preliminary Injunction and the parties' proposed litigation of the procurement issues first in a bifurcated proceeding.  Akridge contends that it was awarded a valid, enforceable contract to purchase the Property and that neither alleged flaws in WMATA's procurement process nor a supposed pre-existing contract between Monument and WMATA should prevent the contract from closing.  Akridge's contentions are the mirror image of those asserted by Plaintiffs against WMATA and Akridge should be permitted to participate in this litigation where the Court will adjudicate entitlement to purchase the Property.

Accordingly, for the foregoing reasons, the Court should permit Akridge to intervene pursuant to Fed. R. Civ. P. 24(b).

## <u>CONCLUSION</u>

Akridge respectfully requests that the Court grant its motion to intervene as a defendant in this action, either as of right or permissively.  Akridge has timely brought this motion in light of the potential lack of alignment between itself and WMATA, and Akridge clearly has a

- 11 -

substantial stake in the outcome of the action.  For these reasons, Akridge should be permitted to intervene in the litigation.

Dated: March 18, 2008

Respectfully submitted,

_____/s/ Barbara S. Wahl_____

Barbara S. Wahl (297978)
Joshua Fowkes (494700)
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
Telephone:  (202) 857-6000
Fax:  (202) 857-6395

*Attorneys for John Akridge Development Company*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2008, I caused a copy of the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO

INTERVENE BY JOHN AKRIDGE DEVELOPMENT COMPANY to be served by electronic

mail and facsimile on the following:

Louis Dolan, Jr.
Vernon Johnson III
Nixon Peabody LLP
401 9th Street, N.W.
Suite 900
Washington, D.C. 20004-2128

Harvey Levin
Thompson Coburn LLP
1909 K Street, NW
Suite 600
Washington, D.C. 20006-1167

_____ /s/ *Joshua Fowkes*
Joshua Fowkes

- 13 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
                                          )
**MONUMENT REALTY LLC and** )
**MR BALLPARK 7 LLC,** )
            )
                  **Plaintiffs,** )
            )
          **vs.** )
            )
**WASHINGTON METROPOLITAN AREA** )
  **TRANSIT AUTHORITY** )      **1:07-CV-01821**
            )      **Judge Emmet Sullivan**
         **and** )
            )
**JOHN AKRIDGE DEVELOPMENT COMPANY** )
**601 Thirteenth Street, N.W.** )
**Suite 300 North** )
**Washington, D.C.  20005,** )
            )
                  **Defendants.** )
_____ )

## ANSWER OF JOHN AKRIDGE DEVELOPMENT COMPANY TO THE
## FIRST AMENDED COMPLAINT

      Defendant John Akridge Development Company ("Akridge") responds to the numbered

paragraphs of the First Amended Complaint filed by plaintiffs Monument Realty LLC and MR

Ballpark 7 LLC as follows:

      1.      Upon information and belief, Akridge admits the allegations of paragraph 1.

      2.      Akridge denies knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations of paragraph 2.

      3.      Akridge admits the allegations of paragraph 3.

      4.      Akridge admits the allegations of paragraph 4.

5.      To the extent that the allegations of paragraph 5 call for a legal conclusion, no response is needed; otherwise, Akridge admits the allegations of paragraph 5.

6.      Akridge denies the allegations of paragraph 6 except to admit that defendant Washington Metropolitan Area Transit Authority ("WMATA") has promulgated a Procurement Procedures Manual ("PPM") that is attached to the First Amended Complaint as Exhibit D.

7.      Akridge admits the allegations of paragraph 7.

8.      Akridge admits the allegations of paragraph 8.

9.      Upon information and belief, Akridge admits the allegations of paragraph 9.

10.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 10.

11.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 11.

12.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 12.

13.      Akridge denies the allegations of paragraph 13.

14.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 14.

15.      Akridge admits the allegations of paragraph 15.

16.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16.

17.      Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 17.

18.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18.

19.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19.

20.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20.

21.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21.

22.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22.

23.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 23 except admits that a press release issued by the Anacostia Waterfront Corporation is attached as Exhibit F to the First Amended Complaint.

24.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24.

25.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 25.

26.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 26.

27.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 27.

28.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 28.

29.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 29.

30.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 30.

31.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 31.

32.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 32.

33.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 33.

34.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 34.

35.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 35 except denies that WMATA had agreed to a Master Development Plan with Monument.

36.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 36.

37.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 37.

38.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 38.

39.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 39.

40.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 40.

41.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 41.

42.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 42.

43.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 43.

44.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 44.

45.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 45.

46.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 46.

47.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 47.

48.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 48.

49.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 49.

50.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 50.

51.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 51 except admits that an Easement Agreement is annexed as Exhibit G to the First Amended Complaint.

52.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 52.

53.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 53.

54.     Akridge denies the allegations of paragraph 54.

55.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 55 except denies that WMATA had agreed to a Master Development Plan with Monument.

56.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 56.

57.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 57 except admits that WMATA's Board of Directors determined to offer the Property for sale and denies that WMATA had a commitment to negotiate and deal exclusively with Monument or that it failed and refused to honor such a commitment.

58.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 58 except denies that WMATA's Office of Property Development and Management acted in complete disregard for WMATA's published procedures manual.

59.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 59.

60.     Akridge admits the allegations of paragraph 60.

61.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 61 and denies the last sentence of paragraph 61.

62.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 62 except denies that there was any agreement whereby the District would buy the Property, that Monument would have the right to enforce any such agreement or that Monument is a third party beneficiary to any agreement for sale of the Property.

63.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 63 except admits that WMATA did not sell the Property to the District and denies that Monument has been injured.

64.     Upon information and belief, Akridge denies the allegations of paragraph 64.

65.     Akridge admits that WMATA issued initiation invitation for bids No. 08-1 and that  a copy of it is attached to the First Amended Complaint as Exhibit H, and denies the remainder of the allegations of paragraph 65.

66.     Akridge refers to IFB No. 08-1 for its complete content and context, and therefore denies the allegations of paragraph 66.

67.     Akridge refers to IFB No. 08-1 for its complete content and context, and therefore denies the allegations of paragraph 67.

68.     Akridge admits that the deadline under IFB No. 08-1 was August 28, 2007 and denies knowledge sufficient to form a belief as to the truth or falsity of the remainder of the allegations of paragraph 68.

69.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 69 except denies that it was common knowledge within the District of Columbia developer and real estate community that Monument had the exclusive right to negotiate for and acquire the WMATA Property.

70.     Upon information and belief, Akridge admits that Monument submitted two bids in response to IFB No. 08-1 and denies the remainder of the allegations of paragraph 70.

71.     Upon information the belief, Akridge admits the allegations of paragraph 71.

72.     Akridge admits the allegations of paragraph 72.

73.     Akridge denies the allegations of the first sentence of paragraph 73 and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 73.

74.     Akridge denies the allegations of paragraph 74.

75.     Akridge admits the allegations of the first and second sentences of paragraph 75 and as to the third sentence, admits that it submitted a bid in connection with the process for selecting the Master Developer for the Ballpark District and was not selected as the Master Developer.  Akridge denies the remainder of the allegations of paragraph 75.

76.     Akridge admits the allegations of the first sentence of paragraph 76 and that a copy of a letter submitted by Akridge to WMATA is attached to the First Amended Complaint as Exhibit J.  Akridge refers to the content and context of the statements contained in its letter and accordingly denies the remainder of the allegations of paragraph 76.

77.    Akridge denies the allegations of paragraph 77.

78.    Akridge denies the allegations of paragraph 78.

79.    Akridge denies the allegations of paragraph 79.

80.    Akridge admits the allegations of paragraph 80.

81.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 81 except denies that the invitation for bids issued by WMATA was arbitrary.

82.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 82.

83.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 83 except denies that WMATA has no rules, regulations or policies governing the disposition of the Property or related bids.

84.    Akridge admits the allegations of the first sentence of paragraph 84 and, as to the remainder of the allegations of paragraph 84, refers to the content and context of the Exhibit E and accordingly denies the remainder of the allegations of paragraph 84.

85.    Akridge refers to the content and context of Exhibit E and accordingly denies the allegations of paragraph 85.

86.    Akridge refers to the content and context of Exhibit E and accordingly denies the allegations of paragraph 86.

87.    Akridge refers to the content and context of Exhibit E and accordingly denies the allegations of paragraph 87.

88.    Akridge denies the allegations of paragraph 88.

89.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 89.

90.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 90.

91.     Akridge denies the allegations of paragraph 91.

92.     Akridge denies the allegations of paragraph 92.

93.     Akridge refers to the content and context of  Exhibit E and accordingly denies the allegations of paragraph 93.

94.     Akridge refers to the content and context of  Exhibit E and accordingly denies the allegations of paragraph 94

95.     Akridge refers to the content and context of Exhibit E and accordingly denies the allegations of paragraph 95.

96.     Akridge denies the allegations of paragraph 96.

97.     Akridge denies the allegations of paragraph 97.

98.     Akridge denies the allegations of paragraph 98.

99.     Akridge admits the allegations of paragraph 99.

100.    Akridge denies the allegations of paragraph 100.

101.    Akridge denies the allegations of paragraph 101.

102.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 102 except to admit that a letter from Monument and response from WMATA's General Counsel are attached to the First Amended Complaint as Exhibits K and L, respectively.

103.     Akridge is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 103.

104.     Akridge is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 104.

105.     Akridge realleges and incorporates its responses to paragraphs 1-104 as if they were fully set forth herein.

106.     Akridge admits the allegations of paragraph 106.

107.     Akridge denies the allegations of paragraph 107.

108.     Akridge denies the allegations of paragraph 108.

109.     Akridge denies the allegations of paragraph 109.

110.     Akridge denies the allegations of paragraph 110.

111.     Akridge admits the allegations of paragraph 111.

112.     Akridge admits the allegations of paragraph 112.

113.     Akridge admits the allegations of paragraph 113.

WHEREFORE, Akridge respectfully requests that this Court enter judgment in its favor and against Plaintiffs and:

(a)     deny judgment as requested by Plaintiffs;

(b)     adjudicate and declare that WMATA is required to convey legal title to the Property to Akridge;

(c)     adjudicate and declare that the bid process pursued by WMATA with respect to the Property was properly conducted and awarded; and

(d)     award such other and further relief as justice may require.

114.    Akridge realleges and incorporates its responses to paragraphs 1-113 as if they were fully set forth herein.

115.    Akridge admits the allegations of paragraph 115.

116.    Akridge denies the allegations of paragraph 116.

117.    Akridge denies the allegations of paragraph 117.

118.    Akridge denies the allegations of paragraph 118.

119.    Akridge denies the allegations of paragraph 119.

120.    Akridge denies the allegations of paragraph 120.

121.    Akridge denies the allegations of paragraph 121.

122.    Akridge denies the allegations of paragraph 122.

WHEREFORE, Akridge respectfully requests that the Court enter judgment in its favor and against Plaintiffs and:

(a)    enter an Order directing WMATA to convey title to the Property in fee simple absolute to Akridge and for WMATA to take all necessary and proper actions to effectuate such conveyance, including, but not limited to, execution and delivery of a deed of conveyance in recordable form;

(b)    in the alternative, enter an Order directing specific performance by WMATA of its agreement with Akridge; and

(c)    award such other and further relief as justice may require.

123.    Akridge realleges and incorporates its responses to paragraphs 1-122 as if they were fully set forth herein.

124.    Akridge denies the allegations of paragraph 124.

125.    Akridge denies the allegations of paragraph 125.

126.     Akridge denies of paragraph 126.

.     127.     Akridge denies the allegations of paragraph 127.

WHEREFORE, Akridge respectfully asks that the Court enter judgment in its favor and against Plaintiffs and:

(a)     deny Plaintiffs' request for a temporary restraining order, preliminary injunction and permanent injunction;

(b)     dissolve the preliminary injunction that was granted on February 28, 2008;

(c)     award Akridge all damages, costs and fees incurred as a result of the delay occasioned by Plaintiffs' suit and the preliminary injunction; and

(d)     award Akridge such other and further relief as justice may require.

128.     Akridge realleges and incorporates its responses to paragraphs 1-127 as if they were fully set forth herein.

129.     Akridge denies the allegations of paragraph 129.

130.     Akridge denies the allegations of paragraph 130.

131.     Akridge denies the allegations of paragraph 131.

132.     Akridge denies the allegations of paragraph 132.

133.     Akridge denies the allegations of paragraph 133.

134.     Akridge admits that Plaintiffs have not obtained legal title to the Property and denies the remaining allegations of paragraph 134.

135.     Akridge denies the allegations of paragraph 135.

136.     Akridge denies the allegations of paragraph 136.

137.     Akridge denies the allegations of paragraph 137.

138.     Akridge denies the allegations of paragraph 138.

WHEREFORE, Akridge respectfully asks the Court to enter judgment in its favor and against Plaintiffs and to:

        (a)     deny an award of any compensatory damages to Plaintiffs;

        (b)     deny specific performance or any other remedy for Plaintiffs; and

        (c)     award such other and further relief as justice may require.

139.    Akridge realleges and incorporates its responses to paragraphs 1-138 as if they were fully set forth herein.

140.    Akridge denies the allegations of paragraph 140.

141.    Akridge denies the allegations of paragraph 141.

142.    Akridge denies the allegations of paragraph 142.

WHEREFORE, Akridge respectfully asks the Court to enter judgment in its favor and against Plaintiffs and to:

        (a)     enter an Order denying that WMATA holds legal title and/or any other interest in the Property in constructive trust for the benefit of Plaintiffs;

        (b)     enter an Order denying that Plaintiffs are entitled to an order directing WMATA to convey legal title to the Property to Plaintiffs, and/or to convey to Plaintiffs the alleged options and other rights as requested in the alternative by Plaintiffs; and

        (c)     award such other and further relief as justice requires.

143.    Akridge realleges and incorporates its responses to paragraphs 1-142 as if they were fully set forth herein.

144.    Akridge denies the allegations of paragraph 144.

145.    Akridge denies the allegations of paragraph 145.

146.    Akridge denies the allegations of paragraph 146.

147.    Akridge denies the allegations of paragraph 147.

148.    Akridge denies the allegations of paragraph 148.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs and to:

(a)    deny Plaintiffs an award of compensatory damages; and

(b)    award such other and further relief as justice requires.

149.    Akridge realleges and incorporates its responses to paragraphs 1-148 as if they were fully set forth herein.

150.    Akridge denies the allegations of paragraph 150.

151.    Akridge denies the allegations of paragraph 151.

152.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 152.

153.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 153.

154.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 154 except denies that WMATA had a duty to speak.

155.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 155.

156.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 156.

157.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 157 except denies that WMATA had a duty to speak.

158.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 158 except denies that WMATA had any obligations to Plaintiffs.

159.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 159.

160.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 160.

161.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 161 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

162.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 162 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

163.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 163 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

164.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 164 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

165.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 165 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

166.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 166 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

167.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 167 and denies that these assertions, if true, require conveyance of the Property to Plaintiffs.

168.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 168.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs and to:

(a)     deny compensatory damages to Plaintiffs; and

(b)     award such other and further relief as justice requires.

169.     Akridge realleges and incorporates its responses to paragraphs 1-168 as if they were fully set forth herein.

170.     Akridge refers to the content and context of D.C. Code Ann. § 9-1107.01 and the PPM with regard to the allegations of paragraph 170 and therefore denies them.

171.     Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of paragraph 171.  Akridge refers to the content and context of Exhibit E for the content and context of the allegations in the second sentence of paragraph 171 and therefore denies them.

172.     Akridge denies the allegations of paragraph 172.

173.     Akridge denies the allegations of paragraph 173.

174. The allegations of paragraph 174 call for a legal conclusion to which no response is required.

175. Akridge denies the allegations of paragraph 175.

176. Akridge denies the allegations of paragraph 176.

177. Akridge denies the allegations of paragraph 177.

178. Akridge denies the allegations of paragraph 178.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs and to:

(a) confirm the award with respect to IFB No. 08-1 made on September 27, 2007;

(b) order WMATA to proceed with the contract it entered into with Akridge for the sale of the Property;

(c) confirm that WMATA's procurement process was fair and valid and that its award to Akridge is enforceable; and

(d) award such other and further relief as justice may require.

179. Akridge realleges and incorporates its responses to paragraphs 1-178 as if they were fully set forth herein.

180. Akridge denies the allegations of paragraph 180.

181. Akridge refers to section 12(d) of the Compact for its content and context and therefore denies the allegations of paragraph 181.

182. Akridge refers to section 73(h) of the Compact for its content and context and therefore denies the allegations of paragraph 182.

183.    Akridge refers to Chapter 15 of the PPM for its content and context and therefore denies the allegations of paragraph 183.

184.    Akridge refers to section 1500.3 of the PPM for its content and context and therefore denies the allegations of paragraph 184.

185.    Akridge refers to section 1503 of the PPM for its content and context and therefore denies the allegations of paragraph 185.

186.    Akridge refers to section 1503 of the PPM for its content and context and therefore denies the allegations of paragraph 186.

187.    Akridge refers to section 1503.3 of the PPM for its content and context and therefore denies the allegations of paragraph 187.

188.    Akridge refers to section 1503.4 of the PPM for its content and context and therefore denies the allegations of paragraph 188.

189.    Akridge refers to section 1503. 5 of the PPM for its content and context and therefore denies the allegations of paragraph 189.

190.    Akridge refers to section 1503. 6 of the PPM for its content and context and therefore denies the allegations of paragraph 190.

191.    Akridge refers to Exhibit E for the content and context of Mr. Catoe's remarks and therefore denies the allegations of paragraph 191.

192.    Akridge denies the allegations of paragraph 192.

193.    Akridge refers to the PPM for its content and context and therefore denies the allegations of paragraph 193.

194.    Akridge denies the allegations of paragraph 194.

195.    Akridge refers to section 15 of the PPM for its content and context and therefore denies the allegations of paragraph 195.

196.    Akridge denies the allegations of paragraph 196.

197.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of paragraph 197.  Akridge denies the allegations of the second sentence of paragraph 197.

198.    Akridge denies the allegations of paragraph 198.

199.    Akridge denies the allegations of paragraph 199.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs and to:

(a)    confirm the award to Akridge with regard to IFB No. 08-1 made on September 27, 2007;

(b)    require WMATA to complete the sale of the Property to Akridge; and

(c)    award such other and further relief as justice may require.

200.    Akridge realleges and incorporates its responses to paragraphs 1-199 as if they were fully set forth herein.

201.    Akridge refers to section 1503.4 of the PPM and IFB No. 08-1 for their content and context and therefore denies the allegations of paragraph 201.

202.    Akridge refers to IFB No. 08-1 for its content and context and therefore denies the allegations of paragraph 202.

203.    Akridge refers to IFB No. 08-1 for its content and context and therefore denies the allegations of paragraph 203.

204.    Akridge denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 204.

205.    Akridge denies the allegations of paragraph 205.

206.    Akridge denies the allegations of paragraph 206.

207.    Akridge denies the allegations of paragraph 207.

WHEREFORE Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs by:

(a)    confirming WMATA's award to Akridge under IFB No. 08-1;

(b)    declaring that WMATA's procurement process was valid and fair;

(c)    declaring that WMATA's award of the contract to Akridge was fair and that the contract is enforceable; and

(d)    awarding such other and further relief as justice may require.

208.    Akridge realleges and incorporates its responses to paragraphs 1-207 as if they were fully set forth herein.

209.    Akridge refers to the referenced letter for its content and context and therefore denies the allegations of paragraph 209.

210.    The allegations of paragraph 210 call for a legal conclusion to which no response is required.

211.    The allegations of paragraph 211 call for a legal conclusion to which no response is required.

212.    Akridge denies the allegations of paragraph 212.

213.    Akridge denies the allegations of paragraph 213.

214.    Akridge denies the allegations of paragraph 214.

215.    Akridge denies the allegations of paragraph 215.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs by:

(a)    confirming the award to Akridge under IFB No. 08-1;

(b)    declaring Akridge's bid to be valid;

(c)    declaring that WMATA acted fairly and reasonably in awarding the contract to Akridge;

(d)    declaring that WMATA acted fairly and reasonably in concluding that Plaintiffs' bid was not as favorable to WMATA as that of Akridge; and

(e)    awarding such other and further relief as justice may require.

216.    Akridge realleges and incorporates its responses to paragraphs 1-215 as if they were fully set forth herein.

217.    Akridge refers to its bid for its content and context and therefore denies the allegations of paragraph 217.

218.    Akridge refers to IFB No. 0-8-1 for its complete content and context and therefore denies the allegations of paragraph 218.

219.    Akridge denies the allegations of paragraph 219.

220.    Akridge denies the allegations of paragraph 220.

221.    Akridge denies the allegations of paragraph 221.

222.    Akridge denies the allegations of paragraph 222.

223.    Akridge denies the allegations of paragraph 223.

WHEREFORE, Akridge respectfully asks this Court to enter judgment in its favor and against Plaintiffs by:

(a)    confirming the award to Akridge under IFB No. 08-1;

(b)    declaring that Akridge's bid was proper and valid;

(c)    declaring that WMATA acted fairly and reasonably in awarding the contract to Akridge;

(d)    declaring that WMATA acted fairly and reasonably in concluding that Plaintiffs' bid was not as favorable to WMATA as that of Akridge; and

(e)    awarding such other and further relief as justice may require.

### First Affirmative Defense

The First Amended Complaint fails to state a claim on which relief can be granted.

### Second Affirmative Defense

The First Amended Complaint must be dismissed for failure to join Akridge, which is an indispensable party.

### Third Affirmative Defense

The First Amended Complaint must be dismissed, in whole or in part, because of Plaintiffs' lack of standing.

### Fourth Affirmative Defense

The First Amended Complaint is barred, in whole or in part, by WMATA's sovereign immunity.

### Fifth Affirmative Defense

The First Amended Complaint is barred, in whole or in part, by the Statute of Frauds.

### Sixth Affirmative Defense

The First Amended Complaint must be dismissed, in whole or in part, because of Plaintiffs' unclean hands.

**<u>Seventh Affirmative Defense</u>**

The First Amended Complaint is barred, in whole or in part, for the reasons set forth in WMATA's motion to dismiss.

**<u>Eighth Affirmative Defense</u>**

The First Amended Complaint is barred, in whole or in part, for the reasons set forth in the Court's February 27, 2008 ruling on WMATA's motion to dismiss.

Dated:  March 18, 2008                   Respectfully submitted,


                                   ___/s/ Barbara S. Wahl_____
                                   Barbara S. Wahl (D.C. Bar No. 297978)
                                   Joshua Fowkes (D.C. Bar No. 494700)
                                   Arent Fox LLP
                                   1050 Connecticut Avenue, N.W.
                                   Washington, D.C.  20036-5339
                                   Telephone:  (202) 857-6000
                                   Fax:  (202) 857-6395
                                   wahl.barbara@arentfox.com


                                   *Attorneys for John Akridge Development Company*

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MONUMENT REALTY LLC, et al,    .
                               .
          Plaintiffs,          .
                               .  Civil Action No. 1:07-cv-01821
     v.                        .
                               .
WASHINGTON METROPOLITAN        .  Washington, D.C.
AREA TRANSIT AUTHORITY,        .  January 23, 2008
                               .  At about 2:10 p.m.
          Defendant.           .
                               .

. . . . . . . . . . . . . .

                    EXCERPT OF HEARING
          BEFORE THE HONORABLE EMMET G. SULLIVAN
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:          LOUIS E. DOLAN, JR., ESQ.
                             VERNON W. JOHNSON, III, ESQ.
                             Nixon Peabody, LLP
                             401 9th Street, NW
                             Washington, D.C.  20004-2128
                             (202) 585-8000


For the Defendant:           HARVEY A. LEVIN, ESQ.
                             Thompson Coburn LLP
                             Suite 600
                             1909 K Street, NW
                             Washington, D.C.  20006-1167
                             202-585-6900

                             CAROL O'KEEFFE, ESQ.
                             Washington Metropolitan Area
                              Transit Authority
                             600 Fifth Street, NW
                             Washington, D.C.  20001
                             (202) 962-1499

Court Reporter:              JACQUELINE M. SULLIVAN, RPR
                             Official Court Reporter
                             U.S. Courthouse, Room 6720
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             202-354-3187

```
1                          - - -

2              THE COURT:  It took a ton of discovery already.

3              MR. DOLAN:  We've taken a lot of discovery.  But your

4    Honor and I talked before about some information that we're

5    entitled to have.  We're entitled to know who WMATA talked to at

6    the District, and we know how to find that out.  We couldn't do

7    that in phase one of this litigation because WMATA corporation

8    representatives, for whatever reason, didn't have that

9    information.

10             THE COURT:  What about the public's interest?  How

11   does the Court balance the public's interest in this case?

12             MR. DOLAN:  Absolutely.  I'm glad you asked that.  The

13   public policy considerations in this case, unlike so many cases

14   where as counsel we're required to address that but candidly

15   don't have a lot to say, the public policy interest in this case

16   are significant and the public policy implications of this case

17   are first and foremost you have a situation where the District

18   of Columbia, a unique situation in the city's history where the

19   District of Columbia sets out a master development plan which

20   everybody is involved and persons in this room is involved in

21   for two years.  The District's involved in it for two-and-a-half

22   years, and at the last moment WMATA for their own pecuniary

23   interest despite having received significant value on the up-

24   side from my client, decides they're going to take the eye

25   tooth, the crown jewel from that project out from under all of
```

1    the parties in the middle of what is hopefully a long-term

2    economically vibrant neighborhood, potentially for a period of

3    30 to 40 years, maybe 50 years if the Nationals do well

4    hopefully, similar to the neighborhood perhaps around Candem

5    Yard or Jacob's Field, something like that, so what you're

6    talking about is in essence because WMATA feels that it needs to

7    move forward on an expedited basis on a project that they have

8    been trying to sell for 30 years they have to do this in the

9    next three months, and every time we hear from Ms. O'Keeffe and

10    Mr. Levin it's a new date, it's a different date, there are

11    additional requirements.  Nobody in this room has heard about

12    the FTA approval.  In fact, the evidence before the Court, and

13    it is in these exhibits, I cannot identify which one, but the

14    evidence in this record is they have told Acerage previously

15    that FTA approval is not required, so that's a brand new

16    condition, so that's the first element of the public policy and

17    the public consideration.

18          The second element of the public policy and public

19    consideration here, Judge, I would submit is the following:

20    WMATA's leaving money on the table.  We have in evidence that

21    there was a bid for $80 million.  We have in evidence the fact

22    that my client offered to best or beat the highest responsive

23    responsible bidder by at least $250,000, so we have a situation

24    here where not only is WMATA leaving money on the table, WMATA's

25    board members acknowledge as much at the September 27th hearing,

4

1    and we've provided the transcript of that in these exhibits as
2    well, so WMATA's leaving money on the table.  How is WMATA
3    harmed by what we are asking for?  If this property is at your
4    Honor's order and as we request rebid or if this property is
5    required to be the subject of a negotiation, an exclusive
6    negotiation with my client, WMATA can protect its downside risk,
7    and it can do that in one of two ways.  Number one, it can
8    re-establish a minimum bid amount for new bids should your Honor
9    require that the property be rebid and maybe that the number is
10   $69 million, which makes up for any time delay that they might
11   have.  If the property is the subject of, as we believe it
12   should be, exclusive negotiation with my client, WMATA can
13   protect its downside risk by putting into those negotiations the
14   fact that there was apparently a ready, willing, and able buyer
15   who is willing to pay $69 million.  Maybe that influences a fair
16   market value determination.  Under either circumstance WMATA is
17   not harmed economically.  Yes, there might be a slight delay,
18   but again, I would reiterate that this process whereby WMATA has
19   been trying to dispose of this property has been ongoing for a
20   period of nearly 30 years, and that is evidence in the record.
21   Those are the public policy considerations that surround this
22   case.  The public policy considerations that decidedly do not
23   surround this case are feigned concerns over delay in opening of
24   the ballpark.  That's not a concern here.  They are not safety
25   considerations with busses running amock through pedestrian

5

1     passageways surrounding the stadium.  Those are not the concerns

2     here.  The only concerns that WMATA has identified in this

3     category are concerns with respect to, quote, the public risk,

4     and those concerns WMATA can protect its downside and probably

5     has an upside and potentially a significant upside should the

6     Court grant the relief that we're requesting.

7          THE COURT:  Is it fatal that Acerage is not a party to

8     this case?

9          MR. DOLAN:  Absolutely not.  This Court can grant

10    complete relief to the parties and with the parties that are

11    before the Court.

12         THE COURT:  So their participation is not

13    indispensible then?

14         MR. DOLAN:  Correct.  In fact, Judge, and your Honor

15    even indicated this, we subpoenaed Acerage, they produced

16    documents.  They're well aware of this case.  They're sitting in

17    the courtroom today.  We don't know why they haven't moved to

18    intervene.  They presumably feel that WMATA is doing an adequate

19    job representing their interest, but they're certainly aware of

20    this litigation and they're not here.  Unless the Court has any

21    additional questions I will ...

22         THE COURT:  Just very briefly.  Very briefly.  I want

23    you to touch on the sovereign immunity.  WMATA did issue this

24    PPM.  Why doesn't that satisfy the compact directive to issue

25    policies governing the disposition of real estate?

1         MR. DOLAN:  Because the evidence in this case is that

2    WMATA has attempted to create on the fly a new, quote, emerging

3    policy with respect to how it goes about disposing of and

4    capturing for itself the economic benefit of properties that it

5    is obligated to sell to the compact jurisdictions.

6         THE COURT:  Isn't that a discretionary function,

7    though, with WMATA?

8         MR. DOLAN:  The function of adopting a policy is a

9    discretionary function, but the function of following a policy

10   and a statute and a regulation is a mandatory function.  It is

11   not discretionary once that has been established.

12        THE COURT:  They can change policy, though, can't

13   they?  Don't they have the authority to change policy if they

14   want to?

15        MR. DOLAN:  They have the authority to change policy,

16   but they have the obligation to notify parties of what their

17   policy is before trying to create that policy in a back room on

18   the fly and impose it in the middle of a transaction and modify

19   a long-standing obligation that they have and that they have

20   recognized, and on that point Mr. Levin and I differ with

21   respect to the plain language of Exhibit 6 because Exhibit 6 at

22   page two, which is Mr. Molaski, says, we are, quote, obligated

23   to sell, that's in black and white on that exhibit, and Exhibit

24   5 is Mr. Molaski's recissitation of where that obligation comes

25   from.  He gives a history of that in an e-mail and that is the

7

```
1     genesis of my statements to the Court, that it comes from

2     section eight of the Real Estate Policies and Procedures manual.

3     And the testimony of WMATA throughout this proceeding has been

4     that they have an obligation to sell at fair market value.  They

5     have a mechanism whereby they come to agreement on fair market

6     value, and that is the two or three appraisal process, so those

7     terms that is the only term that arguably is missing from the

8     contractual rights that we're asserting, but there is a

9     mechanism in the record whereby that price term can easily be

10    identified.  Thank you, Judge.

11                                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                         CERTIFICATE

2           I, JACQUELINE M. SULLIVAN, Official Court Reporter,

3    certify that the foregoing pages are a correct excerpt from the

4    record of proceedings in the above-entitled matter.

5                         _____

                          JACQUELINE M. SULLIVAN
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MONUMENT REALTY LLC, et al,   .
                             .
          Plaintiffs,        .
                             .  Civil Action No. 1:07-cv-01821
     v.                      .
                             .
WASHINGTON METROPOLITAN      .  Washington, D.C.
AREA TRANSIT AUTHORITY,      .  Wednesday, October 17, 2007
                             .  At about 2:05 p.m.
          Defendant.         .
                             .

. . . . . . . . . . . . . .

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:          LOUIS E. DOLAN, JR., ESQ.
                             VERNON W. JOHNSON, III, ESQ.
                             Nixon Peabody, LLP
                             401 9th Street, NW
                             Washington, D.C.  20004-2128
                             (202) 585-8000


For the Defendant:           HARVEY A. LEVIN, ESQ.
                             Thompson Coburn, LLP
                             Suite 600
                             1909 K Street, N.W.
                             Washington, D.C.  20006-1167
                             202-585-6900

                             CAROL B. O'KEEFFE, ESQ.
                             Washington Metropolitan Area
                              Transit Authority
                             600 Fifth Street, NW
                             Washington, D.C.  20001
                             (202) 962-1499


Court Reporter:              JACQUELINE M. SULLIVAN, RPR
                             Official Court Reporter
                             U.S. Courthouse, Room 6720
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             202-354-3187

```
 1                    P R O C E E D I N G S
 2              COURTROOM DEPUTY:  Civil Action 07-1821, Monument
 3    Realty, et al, versus Washington Metropolitan Area Transit
 4    Authority.
 5              Will counsel please identify yourselves for the
 6    record?
 7              MR. JOHNSON:  Vernon Johnson from Nixon Peabody for
 8    the plaintiffs.
 9              MR. DOLAN:  Lewis Dolan with Nixon Peabody for the
10    plaintiffs.
11              MR. LEVIN:  Good afternoon, your Honor.  Harvey Levin,
12    and with me is co-counsel, Donald Laffert for WMATA, and I would
13    like to -- I'm sorry, I stole your thunder.  And I would like to
14    introduce your Honor to Carol O'Keeffe, who is the general
15    counsel of WMATA.
16              THE COURT:  All right.  Good afternoon.  No chance for
17    settlement of this case, is there?
18              MR. JOHNSON:  I would say it doesn't appear so, your
19    Honor.
20              THE COURT:  Let me invite principle counsel to the
21    microphone there.  I want you to focus your attention really on
22    65(a)(2) in a consolidation of the request for injunctive relief
23    for the merits determination.  It seems as though you're still
24    focused on a preliminary injunction, but let me hear from the
25    parties.  My preference would be, and I recognize I can do it
```

1    without consent of counsel, my preference would be to just issue

2    one ruling in this case.  Is there some reason why I need to

3    discuss on the preliminary injunction stage and then a merits

4    determination after?

5         MR. JOHNSON:  Your Honor, I think that it's obviously

6    a complicated case with a long fact pattern, and there are a lot

7    of different types of relief, not only injunctive relief, but

8    damages, and depending on whether and to what extent the

9    plaintiffs get the injunctive relief that they're speaking,

10   there may or may not also be a damages claims in addition to

11   that, and so at least on our side of the table we didn't feel

12   that there really was a manageable way in the time that we have

13   to consolidate a resolution on the merits of all the disputes in

14   this case with the preliminary injunction motion.

15        THE COURT:  Well, I'll tell you there is a down side

16   to that.  If I'm inclined to go the separate route, preliminary

17   injunction first and forego a merits determination, recognizing

18   that a losing party can appeal, what I'll probably do is just

19   stay this matter regardless of what I do at the preliminary

20   injunction stage, which could be for a long period of time, but

21   it makes no sense at all in my view to have parallel proceedings

22   in the Circuit along with proceedings in the District Court, and

23   that's what happens when judges go the route of TRO, preliminary

24   injunction, I think I did that once 13 years ago and I said I

25   never would do that again because it's just too much time, it's

```
 1   too time consuming, it involves parallel proceedings in more

 2   than one court, and quite frankly, more often than not the ends

 3   of justice aren't served by doing it that way, but let me hear

 4   from the defense counsel.

 5           MR. LEVIN:  Thank you, your Honor.

 6           There is one additional factor I think that comes into

 7   play, which is we have filed a motion to dismiss.

 8           THE COURT:  I read it, I've seen it.

 9           MR. LEVIN:  And we are requesting that the Court give

10   that expedited consideration, agreed on an expedited briefing.

11   We believe the course, and it goes without saying, but we think

12   that it's a meritorious motion, and that by -- in addition to

13   what Mr. Johnson had to say, that there may not be any need

14   frankly for completing the case or for doing the complete kind

15   of discovery preparation it would take, and the other factor is

16   it really is going to be difficult to prepare this as a full

17   case for trial in the limited amount of time.  WMATA is under a

18   time constraint, both because of the process in which they've

19   got to consider the bid, but more importantly, WMATA has to move

20   this bus yard.  It's there and it has to be moved so that the

21   stadium can proceed, because we can't have busses driving in and

22   out with pedestrians trying to get to baseball games, and the

23   bus yard will get closed down to keep that from happening and

24   WMATA needs to sell this property to get the money to buy the

25   site to replace the bus yard and so the time frame is very
```

1    critical and that's why we're ask for expedited consideration

2    from your Honor on the motion to dismiss, and I think that the

3    preliminary injunction will focus on the core issues of whether

4    or not there was an agreement, whether there is an enforceable

5    agreement, whether the parties have -- the plaintiffs have

6    standing and whether they're entitled to relief on this

7    alternate bid and may effectively resolve the merits without our

8    having to postpone it, so I think those are the considerations.

9             THE COURT:  Counsel?

10            MR. JOHNSON:  I think that's right, although I do

11    think that it's not likely that the PI process would resolve all

12    the issues that we have in the case because there are other

13    claims that we have, including tort claims, and assuming that

14    they survive the sovereign immunity challenge, which we believe

15    they will, those will be claims that will be adjudicated after

16    that, wouldn't really be part of the PI determination.

17            THE COURT:  It sound as if both sides have agreed on

18    at least a briefing schedule for this motion to dismiss.  I

19    don't really have any problems with that, I don't think.  The

20    motion was filed, I've taken a look at it.  And you plan to file

21    your response on the 24th; is that correct?

22            MR. JOHNSON:  That is correct.

23            THE COURT:  WMATA's reply by the 5th.  I don't know

24    whether a hearing will be necessary or not, so I'm encouraging

25    everyone, don't save your best argument for oral argument, there

1    may not be one, but I will tentatively schedule a hearing, if I

2    have questions I'll proceed with the hearing, but if I don't

3    have any questions there's no need for the hearing if I'm going

4    to read your pleadings.  I'll schedule -- well, before I get to

5    that, whether or not there's a need for a hearing or not, what's

6    the parties' current position with respect to this whole issue

7    of approval by WMATA?  As I understand it, that's scheduled,

8    WMATA may approve this contract that it entered into with a

9    third party on the 29th or so, it could be approved.

10           MR. LEVIN:  That's correct, your Honor.

11           THE COURT:  What's your concern about that?  Is your

12    concern that your position somehow or another is not as strong

13    if WMATA proceeds with this next step and approves this Court

14    that it has already entered into with the third party?

15           MR. JOHNSON:  That's part of it.  It's a little bit --

16    there's a little bit more.

17           THE COURT:  If you have a winner, it's a winner now or

18    then, isn't it?

19           MR. JOHNSON:  I understand, but I think there is a

20    little more to it than that, because where we are right now, as

21    I understand it, the board of directors of WMATA has approved

22    the award to Acerage, the other bidder, but there's no contract

23    between Acerage and WMATA, at least not yet, and I think WMATA's

24    intent is to proceed to a contract and take a deposit of $3

25    million from Acerage and then there will be conditions precedent

1    in that contract, and specifically two items that require WMATA

2    board approval at the meeting that is tentatively right now

3    scheduled for November 29.  Our concern is that both if WMATA

4    signs a contract with Acerage and if the board grants this

5    approval and fulfills the conditions preceding in the contract,

6    that that is a significant change in the status quo insofar as

7    there's another party with a claimed interest in this property

8    that we're fighting over, and that is our concern, that we --

9         THE COURT:  Doesn't that party have that interest in

10    that property now, though, which brings me probably to one of

11    the next set of questions, whether or not that entity, Acerage,

12    is necessary or indispensable to resolution of this litigation,

13    and if so, who should bring it?

14         MR. JOHNSON:  Well, I think the answer is Acerage does

15    not have an interest right now because there is no contract.  It

16    would take the ratification of a contract and possibly

17    fulfillment of the conditions precedent, but I'm not sure about

18    that, but I think there would have to be a ratified contract in

19    order for one to argue that equitable title had passed and that

20    the parties holds an interest.  Right now that hasn't been the

21    case so they don't have an interest and this dispute can be

22    adjudicated fully without Acerage being in the case, and Acerage

23    knows about the case and hasn't attempted to intervene, so from

24    that I take it that there isn't a basis for Acerage to become

25    involved at this point.

1          THE COURT:  Right, but you just told me, if I

2    understood you correctly, was that WMATA through some board

3    approval has already put its imprimatur on an award to a

4    contract of a third party.

5          MR. JOHNSON:  I think that's correct, but that doesn't

6    go as far as to give the contract right in the property.  That

7    has to go to the next step.

8          THE COURT:  And WMATA won't forebear from entering

9    into that contract?

10         MR. JOHNSON:  We discussed that the other day, and my

11   understanding is WMATA is not giving us any assurances that that

12   will not happen at any time prior to November 29, and in fact, I

13   think it's likely that they would intend to do that before

14   November 29, which is one of the issues that we need to deal

15   with.  I mean, I'm hearing some sighing in the background.

16   Maybe I have that wrong, and if I do, I apologize.

17         THE COURT:  I need to know that.  You know, I think

18   that it's appropriate to know just what the defendant's position

19   is with respect to any forbearance on entering into a contract

20   on that.  I mean, I don't know whether it will impact their

21   interest if you have any interest at all or not, I just don't

22   know, so what's your position?

23         MR. LEVIN:  Very much of an interest, your Honor.  As

24   I said, WMATA needs the money, but one of the conditions of

25   getting the money will be the board's consideration and approval

1    on November 29 of the contract to acquire the replacement site

2    from the District.  That is a condition within the contract

3    itself that will be offered to Acerage so that even if there is

4    a contract signed it still will have a contingency or a

5    condition precedent, I'm not sure --

6              THE COURT:  So equitable title couldn't pass in any

7    event unless the board approves it then; is that correct or not?

8              MR. LEVIN:  That's my understanding.

9              MS. O'KEEFFE:  Yes, that's correct.

10             MR. LEVIN:  Unless the board approves the acquisition

11   contract for the new site, the contract for the sale of the old

12   site will not go through.

13             THE COURT:  So we either have a lawsuit now or not

14   that.  If the contract doesn't go through then that has an

15   impact on this litigation, doesn't it?

16             MR. LEVIN:  If the contract doesn't go through?

17             THE COURT:  On the 29th, right.

18             MR. LEVIN:  On the 29th, then that would impact, yes.

19             THE COURT:  Do you agree with that?

20             MR. JOHNSON:  I think I do agree with that.

21             THE COURT:  Yes, I think you do, so what's the urgency

22   then?  I'm just trying to be realistic here.  No one ever has

23   enough time to deal with most matters we have to face on a daily

24   basis.  If there's some urgency then I'm going to focus on that

25   urgency, but it doesn't sound like there will be unless these

1    contingencies are dealt with satisfactory to WMATA's judgment,

2    and we won't learn that until the 29th or so.  That's what it

3    sounds like.  I don't know.  I have to assume that no contract

4    has been, I don't want to use the word "executed."  Have you

5    entered into this conditional contract with the third party?

6            MR. LEVIN:  No, not yet.  Under the bid procedures

7    there's a 45-day due diligence period.

8            THE COURT:  When does that 45 days expire?

9            MR. LEVIN:  It's ongoing now, and I think that it's

10   timed at or around, but certainly before November 29, I believe.

11   Frankly, your Honor, one of the arguments that we would make

12   coming in here on November 21st your Honor has just hit on.  Is

13   where's the imminence and irreparability of harm as of November

14   21?

15           THE COURT:  Which get back to the original question

16   that I had last week:  Why don't I just focus on one decision,

17   but you're telling me that is not practical.  Whatever decision

18   the course reaches on the merit couldn't be reached on the paper

19   so to speak as distinguished from the trial of merits, is that

20   what you're telling me that this is, not one of those cases that

21   can be resolved as a matter of law and cross motions for summary

22   judgment then?

23           MR. LEVIN:  We believe it's a summary judgment case.

24           MR. JOHNSON:  And we believe it would require a trial.

25           THE COURT:  Well, I don't want to misjudge this thing,

1    but it doesn't sound like that's imminent, that threat of

2    irreparable harm right this second as we talk, and even if worse

3    case scenario for plaintiffs there's this contract subject to

4    all these conditions.  It doesn't sound as though to me based on

5    my very limited knowledge about this case, it doesn't sound like

6    it's going to be imminent by any stretch of the imagination at

7    least until the 29th, but if I'm wrong you need to persuade me

8    that I'm wrong and I need to do something prior to the 29th;

9    otherwise, I'm going to focus on this briefing schedule almost

10   consistently with the manner in which it's been produced and

11   issue a ruling just as soon as the Court can.

12          MR. JOHNSON:  Well, the imminence in our view is that

13   if there is a contract that's signed that that contract confers

14   rights on another party the status quo has changed and all it

15   takes is the affirmative --

16          THE COURT:  Prior to the 29th?

17          MR. JOHNSON:  Right.

18          THE COURT:  Those are conditions preceding, though.

19   Does equitable title really pass pursuant to a contract that is

20   laden with conditions precedence unless and until the conditions

21   are fulfilled?

22          MR. JOHNSON:  It might because each party.  For one

23   thing, the parties have an obligation to work in good faith

24   towards the contract that they've signed, and I could foresee a

25   situation just taking it hypothetically where Acerage comes in

1     and says, yes, you had told me that you needed board approval

2     for these things on November 29, you didn't technically get

3     board approval, but there was no reason why you couldn't have

4     and you didn't act in good faith; otherwise you would have board

5     approval and I will ask the Court in equity to give me what I

6     should essentially have, and I think we've put ourselves in the

7     worst position by waiting because there's now another party who

8     claims an interest in the same property that we believe we have

9     an interest in, and that's the imminence in our --

10          THE COURT:  When you say "we" which one of the

11     plaintiffs have has an interest in this property?

12          MR. JOHNSON:  Both plaintiffs.

13          THE COURT:  But was one even in existence at the time

14     the award was made?

15          MR. JOHNSON:  Yes.

16          THE COURT:  Both were?

17          MR. JOHNSON:  Both were, correct.

18          THE COURT:  So one entity did not come into existence

19     until late summer?

20          MR. JOHNSON:  Whenever it was, and I don't have it

21     right in front of me.  It was before the award was made.

22          THE COURT:  It was?

23          MR. JOHNSON:  Yes.

24          MR. DOLAN:  That's correct.

25          THE COURT:  So what are you asking me to do then?

1          MR. JOHNSON:  Well, I guess what we had talked about

2     and what we had envisioned was a schedule for doing some limited

3     directed discovery, and we do have a couple of issues between us

4     on categories of duties that we were talking about.  We had also

5     proposed a briefing schedule on both the motion to dismiss that

6     WMATA has now filed and the motion for a preliminary injunction,

7     and we have filed previously, and then a schedule to present

8     that for briefing to the Court, hopefully have a hearing and get

9     a ruling before that November 29th date when I think things

10    begin to happen that really make it almost irretrievable for us

11    in terms of the real property interest that we're protecting in

12    this case.  If they're described to someone else then we've been

13    irreparably harmed in a way that monetary damages cannot remedy

14    and that's what we're concerned about.  If WMATA were telling us

15    something isn't going to happen on November 29 or it's going to

16    happen after that, we wouldn't have the same urgency, but I

17    think with what we're being told we have the urgency of knowing

18    that there's another party that they are trying actively to

19    convey this property to and we want to maintain the status quo,

20    which is right now we have an interest in the property that

21    we're trying to protect.

22          THE COURT:  What's the likelihood of this board

23    approval being given prior to the 29th of November?

24          MR. LEVIN:  I'm not aware of any likelihood at this

25    time.  It's set for the 29th.

```
 1              Your Honor, one of the other terms of the preliminary

 2       injunction, the other matter is going to be quite frankly that,

 3       and I think your Honor is touching on it somewhat, is the

 4       relative nature of the harm in asking Mr. Johnson on the one

 5       hand he's described it very attenuated almost hypothetical

 6       prospect of how they might be harmed, and it really is very

 7       hypothetical.  On the other hand, if this transaction doesn't go

 8       through and WMATA does not get the money it needs, they get

 9       their preliminary injunction, the bond, the harm to WMATA in not

10       being able to move that bus yard in time for the stadium to be

11       constructed, the harm to the public is huge, and we will be

12       arguing for a bond that covers all of that, not just for the

13       purchase price, but the amount of potential damages from an

14       injunction if that transaction is shut down really is -- I mean,

15       astronomical is overstating it, but metaphorically it's quite

16       large and some of it is immeasurable when you think about what's

17       happening down there with the stadium.  This bus yard has to

18       move, this bus garage has to move.  And WMATA needs the money to

19       get that done.

20              THE COURT:  Why did it wait so long to sell it?  This

21       is bus yard adjacent to that stadium in southeast?

22              MR. LEVIN:  Yes.

23              THE COURT:  Why did you wait so long to sell it?

24              MR. LEVIN:  I believe in part because WMATA needed to

25       find a replacement property before they could go ahead, and I
```

1    think that was a large part of the delay.

2          THE COURT:  All right.  It doesn't sound like anything

3    is going to happen before November the 29th.  That's not to say

4    that if you believe that a factual and legal predicate exists

5    for the grant of some legal relief prior to the 29th then you

6    should seek it, you should ask for it, but it doesn't sound as

7    though.  I mean, I'm not sitting here ruling as a matter of law.

8    I'm just telling you it doesn't sound as though that we're

9    dealing with that irreparable harm aspect, at least until

10   November the 29th.  I mean, if WMATA never approves this what

11   impact does that have on this lawsuit?

12         MR. JOHNSON:  Well, I think it has a lot of impact on

13   the lawsuit because I suppose depending on where that leads

14   everybody perhaps WMATA will be back at square one.

15         THE COURT:  Exactly, and I wish you well and say it's

16   good to see you again, but this lawsuit is not going to go

17   forward, is it?

18         MR. JOHNSON:  A good part of it at least would

19   probably not go forward.

20         THE COURT:  All right, because the acts that you're

21   seeking to restrain is nonexistent at that point.  I don't know

22   whether it's going to go forward or not.  I mean, the burden is

23   on this third party to essentially locate the place.

24         MR. LEVIN:  No.  The property is located.  It's a

25   totally separate transaction.

1            THE COURT:  At least to provide the funding for it.

2            MR. LEVIN:  Yes.

3            THE COURT:  So without the funding WMATA lacks the

4    funds to buy it?

5            MR. LEVIN:  That's my understanding.

6            THE COURT:  All right.  You don't have a lot of time

7    between now, sounds like you folks have already agreed on at

8    least the basis for some limited discovery.  I'm not going to

9    burden the magistrate judge with any discovery issues.  If you

10   anticipate some now tell me so I can resolve them now.

11           MR. LEVIN:  I have one, your Honor.  I might have been

12   a bit hasty in agreeing to the schedule.  I've been advised that

13   retrieving all of the response e-mails might not be possible

14   within the short time.  We're going to make every effort.  I

15   already have some documents I expect to start producing

16   tomorrow.  We will do our absolute best and I trust we'll be

17   able to work it out, but I wanted to bring that to your Honor's

18   attention and to the counsel's attention because --

19           THE COURT:  I mean, these aren't stored somewhere

20   else?  WMATA has a policy for retention of e-mails.

21           MR. LEVIN:  Yes, I understand that it's there and it

22   may be that they over retain e-mails and that WMATA might not

23   have the most modern of software programs to be able to review

24   and retrieve and it's going to take quite a bit of time and

25   effort to do so.

1              THE COURT:  All right.

2              MR. JOHNSON:  And your Honor, there's two discovery

3    issues that we wanted to point out.  One is, we did have a bit

4    of a disagreement on scope of documents that were being

5    requested, and there's a category in section d(4) of the joint

6    submission where we were asking the Court for some guidance

7    because we had objected to some of the things that WMATA is

8    asking for from us in this limited discovery phase, and then we

9    have also asked, and I think it's in the joint submission but I

10   wanted to make it clear, that there is limited discovery, we

11   wanted to take from 404(b) party and we want to do that on an

12   expedited schedule where they'd be required to object and then

13   respond much sooner than you normally would under Rule 45.

14             THE COURT:  Yes, I don't have any problems with that.

15   One of those parties is the third party, correct?

16             MR. JOHNSON:  Correct.

17             MR. LEVIN:  On the disputed items, your Honor, what

18   I've agreed to defer for the time being and only press if I

19   really think that we need it and will certainly try to work it

20   out only in any event that I think we need it and we can't work

21   it out would we ever come back to court.

22             THE COURT:  All right.  All right.  I don't have any

23   problems with that third-party discovery.  Now, is that entity

24   on notice of your intent to seek discovery?

25             MR. JOHNSON:  No.

1          MR. LEVIN:  Yes.

2          MR. JOHNSON:  Are they?

3          MR. LEVIN:  Yes, I informed them.

4          THE COURT:  It shouldn't be any big secret.  I guess
5     I'm actually surprised that they don't have an attorney in the
6     courtroom, although I shouldn't rule out the two people sitting
7     in the last row.

8          MR. LEVIN:  I spoke with outside counsel for Acerage
9     yesterday.

10         THE COURT:  I'm surprised D.C. doesn't have anyone
11    here either, I guess.

12         MR. LEVIN:  And told them what had been planned, so
13    they're --

14         THE COURT:  It might be good just to, I mean, to give
15    them a call, give their counsel -- you know who the attorney is,
16    don't you?

17         MR. JOHNSON:  Well, we think we do.  It was somebody
18    Williams and Connolly.

19         MR. LEVIN:  I'll give you the name and the number.

20         THE COURT:  All right.  And what do you plan to do?
21    Just so I have a record, what do you plan to do with respect to
22    expedited discovery?  I mean, I think it has to be expedited to
23    have any meaningful impact on this case, so what do you plan to
24    do?

25         MR. JOHNSON:  We plan to serve each of them with

1    subpoenas.

2              THE COURT:  For production of documents?

3              MR. JOHNSON:  Yes, sir, and what we would propose is

4    that there be a five-day opportunity to object and then

5    production within ten days.

6              THE COURT:  All right.  We don't have a lot of time,

7    but the ten, that will take us to the 27th or so.  You're going

8    to hand-serve that today?

9              MR. JOHNSON:  Yes.

10             THE COURT:  All right.  Just focus their attention on

11   dates certain though as opposed to giving them ten days after

12   service, because people get very creative when it comes time to

13   calculate time under the federal rules.  They'll come in with

14   holidays and Saturday and excluding time and this, that and the

15   other, and it will be January.  I'm not assigning any bad faith.

16   I don't think the attorneys are.  I'm just saying let's just

17   remove one issue, and that's the calculation of time under the

18   federal rules and local rules.  I certainly didn't mean to

19   impune their attorney.  I don't know who their attorney is.  I

20   just recognize we don't have a lot of time between now and the

21   29th of November, and actually that's after Thanksgiving,

22   correct?  It must be after.

23             MR. LEVIN:  The 29th is after.  It's the Thursday

24   after Thanksgiving.

25             THE COURT:  I was trying to look at your proposed

1     schedule.  I don't really have -- I recognize a need for

2     discovery.  I don't have a lot of time to, let's see.  Why do

3     you need until November the 7th to file your PI brief?

4     Basically your pleadings you file now ask for the injunctive

5     relief that you would then seek as well, isn't it?

6              MR. JOHNSON:  I think there's a lot of truth to that.

7     When we were figuring out what's, if we get all this information

8     in discovery, we want to have time to digest it and give the

9     Court a concise as possible submission for the PI, and the more

10    time you have to do that I think the better our chances will be.

11             THE COURT:  This proposed schedule has the Court

12    presiding over a hearing the day before Thanksgiving, so every-

13    one else is off to enjoy Thanksgiving wherever they want to go

14    in the world and my staff has to work, right?

15             MR. JOHNSON:  That's why we put "subject to Court

16    approval."

17             THE COURT:  Let make this a little more fair and

18    reasonable here.  I may have to widdle this down a little in

19    terms of time.  We want a meaningful opportunity to consider

20    your argument.  Both sides will take time and present their best

21    argument, and I'm going to have a meaningful opportunity to

22    consider it.  And there are a couple of holidays.  We've got

23    Veteran's Day coming up, we've got Thanksgiving coming up.

24    Let's see.  All right.  I may have to, and I will adjust the

25    following as follows:  Your PI motion is going to be due the 5th

1     of November.  There's a holiday on the 12th.  I'm going to give

2     defendants until the 13th, that's the day after that holiday,

3     response will be due at noon on the 16th of November.  I'm

4     starting a criminal trial on the 19th.  Let's see what I can do.

5     Here's what I'm going to have to do then.  The hearing will have

6     to be the 16th.  How you carve up the time between that and the

7     hearing date, I'm starting that trial the 14th, is fine.  If you

8     want to take a few minutes now to talk among yourselves that's

9     fine, but the hearing is going to have to be the 16th of

10    November, which means that I'll either have to shorten the time

11    for discovery or accelerate the briefing schedule.  I'm going to

12    have to get the final brief in by the 14th because I'm juggling

13    a lot of matters then.  I'll be in trial as well, so the reply

14    brief will have to be on noon on the 14th.  I mean, I could just

15    look at this and say the 13th, the 7th and the 14th.  Or what I

16    could do is look at the 2nd of November as the filing date.  I

17    could do something like the 2nd, the 9th, and the 14th.  And

18    that actually sounds like that might be fairer to everyone,

19    including the Court.

20         MR. JOHNSON:  I was going to suggest if we get the

21    opposition on the 12th we could do our reply by the 14th.  It

22    wouldn't give us a lot of time, but, you know, presumably by

23    then --

24         THE COURT:  I'd rather give you the time.  I hate to

25    make it the 12th.  I mean, it's a holiday, but again, we don't

1    have a lot of time.  If you want to do it that's fine and I

2    could actually probably give you until six o'clock or so on the

3    14th and just require that their brief is filed earlier on the

4    13th, say noon or so on the 13th.  We could do that.

5         MR. JOHNSON:  That would be fine.

6         THE COURT:  My preference would be to give you more

7    time, but if you want to do it that way that's fine.  I need

8    some time.  I don't want to back myself into a corner the day

9    before Thanksgiving, but I want to have some time to consider

10   your arguments.  So the briefing schedule and PI would be your

11   motion for PI on, say, noon on the 2nd.  Actually, I'll make it

12   the 9th, noon on the 9th for a response, and then noon on the

13   13th for any reply, and that way it gives everyone some room, it

14   gives the Court some time, because I am starting a trial on the

15   14th, and I'll schedule a hearing.

16        What I'll probably do, Carol, is, let's see.  Actually

17   the hearing, maybe I should schedule the hearing on the 19th.

18   That gives everyone maybe another day or so, all right?  2nd,

19   9th, noon for your PI responsive PI, and the reply by the 13th

20   at noon.  I'll schedule a hearing on the PI for the 19th at ten

21   o'clock.  I'm not ruling out the possibility.  I'll issue an

22   oral ruling on the 19th or even a day before Thanksgiving.  I

23   just don't know.  It all depends on just how -- it just depends,

24   it depends on what the issues are and my assessment of just how

25   the issues should be resolved.  I don't want to micromanage

1    discovery.  I mean, you have a block of time.  It sounds as if

2    you have at least up through the 1st now if not the 2nd and

3    query whether some of discovery will be produced subsequent to

4    the 2nd.  I just don't know.  I don't know.  I can envision a

5    couple of scenarios where that might be possible.  It gets,

6    albeit from plaintiff's point of view, you want your answers

7    prior to the 2nd.  All right.  Well, discovery is going to have

8    to be completed by the 31st, and if WMATA doesn't have the

9    software that it needs to retrieve it then someone is going to

10   have to hire some software people to come in and retrieve it.

11   We're not going to have a lot of time here.  If you want to play

12   hardball and not tell plaintiffs when you're going to sign this

13   contract then that's fine, but I'm not going to let you stay

14   here and tell me that one of the biggest corporations in the

15   city doesn't have the software that it necessarily needs to

16   enable it to retrieve e-mails, so if it doesn't, that's going to

17   have to hire someone and do it in a timely manner.

18               MR. LEVIN:  I understand, your Honor.

19               THE COURT:  All right.  So what else do I need to do

20   today?  This doesn't sound like the case is going to settle at

21   all.  I don't want to waste your time and a magistrate judge's

22   time talking about settlement, but if there's any chance let me

23   know now.  It doesn't sound like it.  Is there?

24               MR. JOHNSON:  My sense is that there's not.  I mean, I

25   guess if I got a different sense maybe we could let you know.

1     We don't have much time.

2              THE COURT:  Why don't I just leave it at that.  If the

3     parties think that the case might settle let me know.  We have

4     some excellent magistrate judges.  We have some excellent

5     attorneys.  We do have resources to assist if you there's an

6     interest in it.  If not that's fine.  I don't want to waste

7     everyone's time of going down that avenue if there's no

8     inclination that settlement discussions might be fruitful.

9              All right.  Anything else we need to talk about?

10             MR. LEVIN:  Your Honor, I think I mentioned this

11    earlier, but the of possibility setting a tentative time on the

12    motion to dismiss.

13             THE COURT:  Yes, right.  Why shouldn't I just

14    entertain all at one time?

15             MR. LEVIN:  From our point --

16             THE COURT:  What's the downside on that?

17             MR. LEVIN:  But from our point of view, we'd love to

18    have your Honor review the motion to dismiss earlier.

19             THE COURT:  I've already read it.  I'm not going to

20    draw any conclusions about the merits because I haven't done the

21    necessary research.  I haven't seen a necessary response to it.

22    I just read it over the lunch hour.

23             Let me hear from plaintiffs.

24             MR. JOHNSON:  Well, I think whatever is most efficient

25    for the Court to us is fine.  It would be fine to do them all

1    and have them on the same hearing on November 19th if that's the

2    better way to proceed.  I know we don't have a lot of time and

3    we're squeezing an awful lot into a very short amount of time.

4    It will be fully briefed, and when the Court decides on the PI

5    motion I don't see any reason why it couldn't at the same time

6    look at the motion to dismiss.

7              THE COURT:  Do you know what?  I think I'll do it that

8    way, and if I need to make some adjustment that if I need to

9    give plaintiffs -- let's see here.  I'll leave the briefing

10   schedule in place.  I'm not going to rule out ruling on this

11   motion once it becomes right.  I'll tentatively schedule it for

12   a hearing on the same date that I'm hearing the request for PI,

13   but again, I'm not going to rule out the possibility of ruling

14   on the paper that's submitted, so don't save your best argument

15   for oral argument.  There may not be one.  I think under the

16   circumstances I'm going to require -- I do this sparingly -- but

17   I think this is an appropriate case, I'm going to ask counsel to

18   provide the Court with two copies of the principal points of

19   authorities that counsel rely on.  You don't need to provide

20   your opponents with the points of authority, but it would

21   certainly assist the Court because we have limited resources in

22   chambers.  I'll spell all this out in a scheduling order, but

23   essentially just two copies of whatever cases you principally

24   rely on and some authorities.

25              Anything else we need to talk about?

```
 1            MR. JOHNSON:  I don't think so.
 2            THE COURT:  So we have parallel briefing schedules
 3      here for the motion to dismiss and for the PI.  We have a
 4      hearing date.  There will be a hearing date maybe for one, maybe
 5      for all, maybe for nothing.  If I grant the motion there won't
 6      be anything to have a hearing on.  I'll just wish everyone a
 7      happy Thanksgiving in the future.  But I'll wait until the
 8      response comes in.  I'm not going to be prejudging it.  I did
 9      read it, though.  It's interesting.  I'll wait until the
10      response comes in.
11            Anything else we need to talk about?
12            Discovery disputes, you mention adding third-party
13      discovery.  I don't have any problems with that, but you need to
14      get your notice served because I'm not going -- I'm going to
15      view in disfavor any requests that they have for an extension of
16      some time, so in fairness to them, though, you need to get your
17      subpoena served today.
18            There was another discovery.
19            MR. LEVIN:  I think, your Honor, that was our request,
20      for documents that plaintiffs were reluctant to provide.  If we
21      feel we need to --
22            THE COURT:  There's not an awful lot of time now, so
23      if you need them tell me now, but if you're comfortable with
24      that, that's fine.  I want to be fair to everyone about that.
25      If you need the documents you'll get them.
```

```
 1                    MR. LEVIN:  I think I really need to see their PI
 2     motion, because if they are raising certain issues then we may
 3     have to ask for --
 4                    THE COURT:  All right.
 5                    MR. LEVIN:  If I don't have to then I won't.
 6                    THE COURT:  Maybe what I should do is schedule another
 7     status hearing just to deal with any of the issues that may come
 8     up after the filing of the PI motion.  The PI motion is
 9     currently scheduled to be filed on the 2nd, correct?
10                    MR. JOHNSON:  Correct.
11                    MR. LEVIN:  Yes.
12                    THE COURT:  Then I'll schedule, maybe I'll schedule a
13     short status hearing for the 7th at 11:30.  Is that a bad date,
14     bad time for anyone, November the 7th?
15                    MR. JOHNSON:  That's fine with plaintiffs.
16                    MR. LEVIN:  Fine with us.
17                    THE COURT:  And I'll entertain any additional requests
18     for discovery then, really using up the time then.  There's not
19     a lot of time left, but in fairness to you, if you want an
20     opportunity to assess the need for additional documents that's
21     fine.  I mean, I can tell you right now I think it's probably
22     highly relevant the documents that exist that are documents that
23     impact the relationship between the two plaintiffs.  I mean,
24     that's what you've asked for, haven't you?
25                    MR. LEVIN:  Yes.
```

1            THE COURT:  Why aren't they relevant, counsel?

2            MR. JOHNSON:  Well, I'm not sure why they would be.

3     The one company, and I think this is clear, is an affiliate of

4     the first, and it's created with members who are principals of

5     the first, and I'm not --

6            THE COURT:  Of any public filings for these

7     corporations?  These are corporations, right?

8            MR. JOHNSON:  These are limited liability companies.

9            THE COURT:  So they've publicly filed with the court

10    of dates, haven't they?

11           MR. JOHNSON:  They've publicly filed papers to become

12    corporations and they're authorized to do business in the

13    District of Columbia.

14           THE COURT:  I think they're relevant, so you shall

15    produce those.  I think they're relevant.  If there are other

16    documents you want just let me know on the 7th.  I think the

17    documents, especially the documents that exist, that impact the

18    relationship between the two plaintiffs, I believe are probably

19    admissible.

20           Anything else we need to talk about?  I'll put all

21    this scheduling in an order and issue electronically.  Everyone

22    signed up for electronic receipt of documents?

23           Anything else we need to talk about?

24           MR. JOHNSON:  No, sir.

25           MR. LEVIN:  Thank you.

```
1              THE COURT:  All right.  Good to see everyone.

2              MR. LEVIN:  Thank you.

3              MR. DOLAN:  Thank you, your Honor.

4              THE COURT:  All right.

5              MR. JOHNSON:  Thank you, your Honor.

6              (Proceedings concluded at about 2:46 p.m.)

7                        * * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                                    INDEX

2

3     WITNESSES:

4

5          None.

6

7

8

9

10

11

12                                 EXHIBITS

13

14          None.

15

16

17

18

19

20

21

22

23

24

25
```

1                        CERTIFICATE

2

3

4            I, JACQUELINE M. SULLIVAN, Official Court Reporter,

5    certify that the foregoing pages are a correct transcript from

6    the record of proceedings in the above-entitled matter.

7

8

9

10

11

12                    _____

13                    JACQUELINE M. SULLIVAN

14

15

16

17

18

19

20

21

22

23

24

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
                                                                  )
**MONUMENT REALTY LLC and**                  )
**MR BALLPARK 7 LLC,**                                )
                                                                  )
                                  **Plaintiffs,**         )
                                                                  )          **1:07-CV-01821**
                          **vs.**                             )          **Judge Emmet Sullivan**
                                                                  )
**WASHINGTON METROPOLITAN AREA**     )
  **TRANSIT AUTHORITY,**                         )
                                                                  )
                                  **Defendant.**        )
_____ )


**ORDER GRANTING JOHN AKRIDGE DEVELOPMENT COMPANY'S
<u>MOTION TO INTERVENE</u>**

Upon consideration of John Akridge Development Company's Motion to Intervene, and

the entire record, it is this _____ day of _____ 2008, hereby

ORDERED that the motion is granted and that John Akridge Development Company is

permitted to intervene as a defendant in this case and its answer shall be accepted for filing.


                                                            _____
                                                            Hon. Emmet G. Sullivan
                                                            United States District Judge


<u>COPIES TO</u>:

Louis E. Dolan, Jr.
Vernon W. Johnson, III
Nixon Peabody LLP
401 9th Street NW – Suite 900
Washington, D.C. 20004-2128

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, NW
Suite 600
Washington, D.C. 20006-1167

Barbara S. Wahl
Joshua A. Fowkes
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036