**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

MONUMENT REALTY LLC, et al.,           )
                                       )
        Plaintiffs,                    )
                                       )
    v.                                 )
                                       )   Civil Action No. 1:07-cv-01821 (EGS)
                                       )   Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN                )
AREA TRANSIT AUTHORITY,                )
                                       )
        Defendant.                     )
_____)

## OPPOSITION TO MOTION FOR RECONSIDERATION
## OF PRELIMINARY INJUNCTION DECISION

### INTRODUCTION

This lawsuit was filed to prevent the Washington Metropolitan Area Transit Authority ("WMATA") from illegally disposing of the Southeast Bus Garage and adjacent property, both because the disposition violated Monument's rights and interests in the Property and because of the illegal nature of the bid procurement process conducted by WMATA in attempting to sell the Property. After completing limited discovery, Plaintiffs requested that this Court preliminarily enjoin WMATA from proceeding with the illegal sale to the John Akridge Company ("Akridge") pending the outcome of this litigation. The parties briefed the matter exhaustively, and made further submissions in connection with WMATA's motion to dismiss, which dealt with many of the same issues. After reviewing the parties' comprehensive filings, and hearing extended argument of counsel, this Court entered an Order on February 28, 2008 granting the Preliminary Injunction that Plaintiffs had requested.

In responding to Monument's Motion for Preliminary Injunction ("PI Mot."), WMATA stridently asserted that it had done nothing wrong in the bid solicitation process and otherwise had no obligation to Monument.  At oral argument, however, WMATA's position softened, and WMATA claimed that, even if it had failed to follow either federal procurement guidelines or its own procurement guidelines, no one was harmed by its improper conduct.  WMATA subsequently supplemented its briefing in order to attempt to retract its prior concession that Monument had standing to challenge the bid solicitation process.

Although the Court has already reviewed WMATA's position and ruled on these issues, WMATA nonetheless seeks to reargue those points, ignoring its own Contracting Officer's conclusions that Monument was second in line for the award, and then speculating what Mr. Bottigheimer might have recommended and what WMATA's Board of Directors might have decided had the Akridge Bid been rejected at the outset and had WMATA decided at that time on the leaseback period and other factors relevant to determining the "best net return to WMATA."  (*See generally* Memorandum of Points and Authorities of WMATA in Support of Motion for Reconsideration of Preliminary Injunction Decision ("Recon. Mem.")).

WMATA asks the Court, in essence, to overrule its own Contracting Officer's statement that Monument was second in line given the procedures WMATA followed, to decide that JBG was second, and to therefore determine that Monument is unable to pursue its bid protest claims notwithstanding the profound misconduct that tainted irrevocably the entire procurement process.  WMATA is asking the Court to do nothing less than disregard the plain language in WMATA's own administrative record, that is, its own Contracting Officer's unambiguous written conclusion that "at no point would JBG's bid provide the best net return" and that MR Ballpark 7's bid would have been second.  (Opposition of WMATA to Plaintiffs' Motion for

Preliminary Injunction ("PI Opp."), Ex. E.12, at W0111738.)  WMATA makes this argument despite the absence of any evidence as to how WMATA's Board of Directors (the only decision maker, according to WMATA) might have voted had the Akridge Bid been rejected, or what other considerations might have gone into the Contracting Officer's determination that Monument was ranked second for "best net return."  WMATA asks the Court to do exactly what the Court has already ruled it is in no position to do: opine on the delicate questions involved in procurement decisions and in selecting a winning bidder.  (*See* February 28, 2008 Memorandum Opinion ("Mem. Op.") at 20 (citing *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 203 (D.C. Cir. 1984))).

To support its argument, WMATA offers only a post-hoc rationalization that contradicts the conclusions of the Contracting Officer, who alone had full knowledge regarding all elements of each bid, and on events that have taken place some five months *after* the Contracting Officer made his recommendation.  WMATA argues that it has now relocated the buses garaged previously at the Southeast Bus Garage Property, and that these after-the-fact events, which took place in February 2008, (*see* Recon. Mem., Exs. 1 & 2), make clear what Mr. Bottigheimer would have recommended and what WMATA's Board would have approved in September, 2007, some five months *earlier*, had the Akridge Bid been disqualified.  (*See* Recon. Mem. at 3 n.2.)  WMATA's conjecture as to what might have happened had it conducted itself properly and with knowledge gained by the passage of time cannot now be used as a justification to excuse its improper contemporaneous conduct.

No one at WMATA ever identified JBG as being second in line for the award and there is no part of the evidentiary record before the Court that supports WMATA on this point.  Furthermore, WMATA never named *any* alternate bidder, even though the IFB had express

procedures for doing so.  (*See* PI Mot., Ex. 70 at A.7, B.2.)  (WMATA has argued doggedly that the IFB was self-contained and controlling.)  In fact, WMATA returned the bids of JBG and Monument the day after it selected the Akridge Bid.  (*See* Ex. 1 hereto.)  Thus, at this point, there is no argument, evidence, or proper mechanism for WMATA to seek a judicial finding that JBG's bid was qualified, responsive, or second in line for the award.

This Court's decision is on solid grounds with respect to the facts of this case, both as they existed at the time of the Preliminary Injunction hearing and today, and follows established bid protest law.  To sanction the result that WMATA now seeks would be to reward WMATA for its plainly – and ultimately undisputedly – improper conduct.  WMATA's Motion for Reconsideration should be denied.

## ARGUMENT

## I.    STANDARD OF REVIEW

WMATA's motion ignores the standard of review on a motion for reconsideration, which imposes a heavy burden that WMATA does not meet.  The Order in question is one that was arrived at by the Court, acting in its discretion to grant a Preliminary Injunction, following extensive submissions and argument by all parties on all of the relevant issues.

Under the circumstances, the Court may treat WMATA's motion as a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), but the standard for overturning the Court's decision is quite onerous.  *See W.S. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997), *aff'd*, *Hicks v. United States*, No. 99-5010, 1999 U.S. App. LEXIS 13376 (D.C. Cir. May 17, 1999); *People for the Ethical Treatment of Animals, Inc. v. Gittens*, No. 02-0984, 2002 U.S. Dist. LEXIS 27710, at *1-2 (D.D.C. August 27, 2002) (denying motion for reconsideration of an order granting a preliminary injunction).  Applying these standards, the reconsideration of a previous order is an "*extraordinary measure*" and is "disfavored unless extraordinary

circumstances are established." *Id.* (citing *Zyko v. DOD*, 180 F. Supp. 2d 89, 90-91 (D.D.C. 2001)).

Specifically, it is well-settled that such a motion should not be granted unless the Court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fund for Animals v. Norton*, 326 F. Supp. 2d 124, 126 (D.D.C. 2004) (citations omitted) (denying Rule 59(e) motion); *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004) (noting that a district court's denial of a motion for reconsideration is reviewed under an abuse of discretion standard). Such motions "are not to be used to relitigate matters already argued and disposed of" and should not be used as "an opportunity to reargue facts and theories upon which a court has already ruled." *Animals*, 326 F. Supp. 2d at 126 (citations omitted).

WMATA asserts that the Court committed manifest error. As no manifest error has been committed, however, and WMATA seeks little more than to re-argue an issue that the Court has directly and correctly addressed, this Court should deny the Motion for Reconsideration.

## II. THE COURT CORRECTLY DETERMINED THAT MONUMENT HAS STANDING TO CHALLENGE THE AWARD TO AKRIDGE

In its basic essence, WMATA's motion is a request that the Court reconsider its ruling in light of WMATA's suggestion that Monument lacked standing to contest the award. The Court found that Monument has standing to challenge WMATA's award to Akridge. Monument was one of three bidders responding to WMATA's solicitations for the Bus Garage Property. (Mem. Op. at 9, 21.) As a participant in the bid solicitation processes, Monument has standing to challenge not only the process followed by WMATA, but the ultimate outcome of that process. Monument has challenged both.

Contrary to WMATA's assertion, Monument does not need to be "next-in line" for the award in order to have standing to assert a bid protest and challenge the award (even though the Contracting Officer did conclude that it *was* next in line). Disappointed bidders have standing to challenge WMATA's procurement decisions. In fact, this Court has rejected the argument that a bidder must show that it is the next lowest (or highest) bidder after a disqualified bid in order to challenge an award or have standing. *See Solon Auto. Servs., Inc. v. United States*, 658 F. Supp. 28, 31 (D.D.C. 1987). In *Solon*, the Court unambiguously stated that to establish standing, "[i]t is not necessary for a plaintiff to prove it would have won the contract if [the winning bid] had been rejected." *Id.*

Rather, a plaintiff need only show that it is a disappointed bidder. *See id.*; *see also Irvin Indus. Canada, Ltd. v. United States Air Force*, 924 F.2d 1068, 1072 (D.C. Cir. 1990) (determining that Irvin Industries, as an "offeror adversely affected by the Air Force's action, has standing to challenge the award of the contract"); *Express One Int'l, Inc. v. Unites States Postal Service*, 814 F. Supp. 93, 105 (D.D.C. 1992) (citing *Irvin*, 924 F.2d at 1072) (noting that a bidder adversely affected by an agency's action has standing to challenge the procurement process), *modified in part*, 814 F. Supp. 93 (D.D.C. 1993); *see generally Textron, Inc. v. United States*, 74 Fed. Cl. 277, 284 (2006) ("standing generally has been satisfied by the mere showing that a protester 'could compete for the contract'") (citing *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002)). Monument is clearly a disappointed bidder aggrieved by WMATA's actions and, therefore, has standing to assert its claims.

By WMATA's own admission, MR Ballpark 7 had a clear opportunity to be the winning bidder. (PI Opp., Ex. E.12.) This is not surprising, given that MR Ballpark 7 was charging no leaseback rental and waived the 45-day Due Diligence Period (a concession which WMATA

said in Section B.11 of the IFB could override another bid that was "otherwise more economically favorable."). (PI Mot., Ex. 70 at B.11.)  This is all that is required to have standing.

WMATA's reliance on "next-in-line" decisions from the Comptroller General (Recon. Mem. at 5) is not only misleading given the evidence that includes its own Contracting Officer's admissions, but this doctrine cannot apply in this case, because the ultimate remedy for WMATA's misconduct is a complete re-solicitation and not an award to a "next-in-line" bidder. *See In re Remtech, Inc.*, B-240402.5, 1991 U.S. Comp. Gen. LEXIS 77, at *5, 91-1 Comp. Gen. Proc. Dec. P35 (Jan. 4, 1991) (holding that the bidder could maintain a protest because it would have an opportunity to rebid under a new solicitation); *Protest of Wisconsin Physicians*, GSBCA No. 9674-P, 1988 GSBCA LEXIS 367, at *9 (Oct. 11, 1998) (in situations in which "a recompetition of a procurement may be ordered, and the protester may be eligible for participation in that re-competition, the protester [is] interested to file a protest, regardless of the agency's ranking of the protester's offer.").  WMATA long ago returned all of the other bids, choosing deliberately not to hold another bid as an alternate bid, even though it could have done so under Section B.4 of the IFB.  (*See* Ex. 1 hereto; PI Mot., Ex. 70 at B.4.)  Having not done so, it cannot suggest that anything other than a complete re-solicitation is the proper course if the Court invalidates the process that WMATA followed.

## III.    MONUMENT DOES NOT NEED TO ESTABLISH THAT IT WAS "NEXT-IN-LINE" IN ORDER TO PURSUE ITS BID PROTEST

WMATA argues that this Court ruled that a bidder must prove that it is "next-in-line" for the award in order to be able to request that the Court set aside the challenged award.  WMATA claims that the Court erred when it concluded that Monument was next-in-line.  (Recon. Mem. at 1-4.)  WMATA is wrong on both counts.  First, the Court's Preliminary Injunction decision did not conclude that Monument must establish that it was next-in-line in order to demonstrate the

requisite prejudice to succeed with its bid protest.  The Court held that Monument must show that it had a "substantial chance" to win the award, (Mem. Op. at 20-21), which is in accord with established bid protest decisions.  In order to demonstrate a "substantial chance," the Court noted that a next-in-line showing suffices, but it did not state that a "next-in-line" showing is the only showing that proves prejudice.  (*Id.*)

In fact, the three cases that the Court cited prove this very point.  Those cases hold that a bid protestor is *not* required to show that it was next-in-line for the award.  (Mem. Op. at 20-21.) In *Alfa Laval Separation, Inc. v. United States*, and *Data General Corp. v. Johnson*, the Federal Circuit expressly held that "[t]o establish prejudice, a protestor is *not* required to show that but for the alleged error, the protestor would have been awarded the contract." 175 F.3d 1365, 1368 (Fed. Cir. 1999); 78 F.3d 1556, 1562 (Fed. Cir. 1996).  Similarly, in *Bannum, Inc. v. United States*, the Federal Circuit held that a party does not need to show "that but for the errors [it] would have won the contract."  404 F.3d 1346, 1358 (Fed. Cir. 2005).  The test, the Federal Circuit said, is "more lenient than showing actual causation."  *Id.*

In addition, where, as here, a re-solicitation is necessary, the Federal Circuit has held that a party must only show that it could compete for the contract to establish that it had a "substantial chance" of receiving the award.  *See Impresa Construzioni Geom v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) (contractor had a "substantial chance" of receiving the award on a rebid and therefore established requisite prejudice); *see also Myers*, 275 F.3d at 1370 (citing *Impresa*).  In *Solon*, this Court did not even require that showing, ordering a resolicitation after concluding that the Government abused its discretion and acted in an arbitrary fashion.  658 F. Supp. at 33-34; *see also Irvin*, 924 F.2d at 1074 (concluding that all disappointed bidders were prejudiced by the Air Force's actions); s*ee generally Textron, Inc. v. United States*, 74 Fed. Cl. at

329 ("[I]f the court finds that the Government has acted arbitrarily or capriciously, the analysis stops at that finding. There should be no need to continue to prejudice, because [such a finding] invalidates the procurement[.]"). All of these decisions are consistent with, and support fully, the Court's reasoning in its Preliminary Injunction decision. Here, a finding that WMATA failed to follow applicable statutes or regulations would similarly invalidate the procurement.

To accept WMATA's version of the Court's decision (*i.e.*, that a next-in-line showing is an absolute necessity to confer standing on a party *and* to permit the party to request that an award be set aside) rather than the slightly more lenient, but more logical, standard of the cases cited by the Court in its Memorandum Opinion, would result in a higher standard than the law requires and would mean that *only* a second-place bidder may ever assert and succeed on a bid protest. That is not the law and it is not the result of the many cases in which disappointed bidders of all ranks have been able to seek a re-solicitation. Because Monument need not show it was "next-in-line" under this Court's decision and established precedent, and because WMATA's Contracting Officer concluded that it would be second, WMATA's Motion for Reconsideration should be denied.

## IV.   THE COURT DID NOT ERR IN CONCLUDING THAT MONUMENT DEMONSTRATED PREJUDICE

To the extent WMATA argues that the Preliminary Injunction should not have been granted because Monument did not suffer prejudice, WMATA's argument also fails.

The evidence in the record shows that three bidders were originally considered for the award – Akridge, Monument and JBG. (Mem. Op. at 9, 21.) Mr. Bottigheimer, in his August 29, 2007 memorandum and staff recommendation, concluded that a review of the bids revealed that "acceptance of Akridge's [sic] bid would provide the best net return to the Authority as long as the leaseback period is from zero months (no leaseback) to thirty months." (Mem. Op. at 21.)

If the leaseback period was for more than thirty months, Mr. Bottigheimer concluded that Monument's bid "would provide the best net return" to the Authority. (*Id*. at 21-22.) Mr. Bottigheimer concluded that "[a]t no point, would JBG's bid provide the best net return to the Authority." (*Id*. at 22.) By WMATA's own admission, therefore, MR Ballpark 7 had a clear opportunity to be the winning bidder. Consequently, the record establishes that Monument had a "substantial chance" of receiving the award. (*See generally* Mem. Op. at 18) (stating that with respect to Monument's likelihood of success "[c]ourts do not employ a 'probability requirement' to determine whether plaintiffs have demonstrated a likelihood of success, but rather it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.") (citations omitted).

To conclude anything other than that Monument had a substantial chance of receiving the award requires the Court to engage in a speculative, and impermissible, exercise on several levels. First, the Court must overrule the Contracting Officer's conclusions and speculate as to what he might have concluded in the absence of the Akridge Bid. Second, the Court must conclude (contrary to the evidence) that WMATA had settled on a leaseback period of 20 months or less. Finally, the Court must speculate as to what WMATA's Board would have done under those circumstances.

A.    The Contracting Officer Recommended The Akridge Bid, Found The Monument Bid Was Second, And Found That The JBG Bid Would Not Be The Highest Bidder In Any Event.

WMATA retrospectively argues that JBG was arithmetically the second place bidder based on a three month leaseback and, therefore, Monument was not prejudiced by the award to Akridge. The argument suffers many flaws. First, it is obvious that no leaseback term was ever

identified by WMATA in its selection process.  Second, WMATA's argument contradicts the plain language of Mr. Bottigheimer's staff report and recommendation, which concludes that under no circumstances would JBG be second in line and states that the leaseback term was uncertain.  (Mem. Op. at 21; PI Opp., Exs. E.12, E.10.)  WMATA cannot impeach the conclusions of its own Contracting Officer to meet its current needs.

> B.    There Is No Evidence On Which the Court Can Conclude What Leaseback Period WMATA Decided On.

WMATA did not settle on a specific leaseback period prior to the award.  (*See* Ex. 2 hereto.)  Thus, it left open the possibility that the relative ranking of the bids could change depending on the leaseback period employed. The Court cannot make the decision of the relevant leaseback period for WMATA.  Therefore, the fact that WMATA has now received funding from the District of Columbia to move the buses from the garage is irrelevant.  It was the Contracting Officer's responsibility to open bids and make a selection immediately upon opening based on the information then available to him.  (*See* PI. Mem., Ex. 70 at C.5.)  He did, and he identified Monument as second.  Although the fact that WMATA chose the Akridge Bid suggests WMATA believed the leaseback period would be less than 30 months, a purely arithmetic calculation shows that the Monument bid was better than JBG's bid during that period as well. This is more than the "substantial chance" that the law requires. The Court simply cannot engage in the exercise WMATA seeks.

WMATA claims that under a three-month leaseback, JBG would have been second-in-line.  (Recon. Mem. at 2-4.)  WMATA cites Mr. Bottigheimer's August 29, 2007 memoranda in which he notes that the plan is that the leaseback will be for three months.  (*Id*. at 2.)  However, in the very next paragraph (which WMATA fails to mention in its brief), Mr. Bottigheimer makes it clear that no leaseback period was selected.  (PI Opp., Ex. E-11; *see also* PI Opp., Ex.

E-10.)  Mr. Bottigheimer states that "even if the Authority takes longer than planned to vacate the garage, as long as the leaseback period is thirty months or less . . . Akridge's bid would provide the best net return to the Authority." (*Id*.)  Clearly, Mr. Bottigheimer did not use a specific leaseback period to reach his recommendation, but used a range from three to thirty months.  In fact, as of the date of the award, WMATA still had not decided on a leaseback period.  In WMATA's October 1, 2007 letter to Akridge accepting its bid, Mr. Bottigheimer notes as follows:  "Regarding the possible leaseback of the garage, at this time WMATA is reviewing the project schedule to determine if, and how long, buses will remain at the garage after settlement.  We will be in further contact with you when we have refined the schedule." (*See* Ex. 2 hereto.)  WMATA operated on a presumption that the leaseback period would be less than 30 months, but there is no presumption or evidence in the record that it settled on any leaseback period, let alone one that would somehow allow the JBG bid to trump the Monument bid.

WMATA's argument requires an impermissible determination by the Court as to a specific leaseback period not decided in the administrative record.  Here, the only stated grounds that enable the Court to discern between JBG and Monument are the words of the Contracting Officer that Monument was second and that at no point would JBG be the highest bidder.

C.    There Is No Evidence From Which The Court Can Safely Conclude How The Board Of Directors Would Have Voted.

Perhaps most notably, there is no evidence suggesting how WMATA's Board of Directors would have voted had the Akridge Bid been disqualified.  WMATA's Board failed to select a second place or alternate bidder.  In addition to the fact that the leaseback term was never decided, the other factors that WMATA indicated would play a role in deciding the "best net return" are not "purely arithmetic" as WMATA suggests – the waiver by only Monument of

12

the 45-day Due Diligence Period, for instance, which would have allowed expedited closing, could not be reduced to a number but could tip the scales against a bid "otherwise more economically favorable." (PI Mot., Ex. 70 at B.11.) The record does not indicate that WMATA ever decided that issue, nor does it reveal the weight that the Contracting Officer gave it.

Now, however, WMATA seeks to substitute speculation for its inaction, asserting that it is now clear that only a three month leaseback period was required, and ignoring completely all factors that do not fit neatly into its "purely arithmetic" exercise. Such a post-hoc rationalization must be rejected. *See PanAmSat v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("We do not ordinarily consider agency reasoning that appears nowhere in the agency's order.") (citation omitted). Here, the record shows that, even though the Contracting Officer identified Monument as second in line, no alternate bidder was recommended to the Board. Mr. Bottigheimer's report concluded that Monument could be second and the Board could have selected Monument. In any event, the report was merely a staff recommendation, nothing more, and there is no evidence on which the Court could decide how WMATA's Board of Directors would have voted in the absence of the Akridge Bid. WMATA cannot dispute that the Board made the final decision on the award, and that WMATA has asserted repeatedly in this litigation that only the Board had authority to make the final decision. WMATA also cannot contest, and has in fact conceded, that its staff did not recommend, and the Board did not select, an alternate or second place bidder, even though the IFB clearly provided that an alternate bidder could be selected. (*See* PI Mem., Ex. 70 at A.7, B2.) WMATA cannot fail to take the administrative action it expressly reserved for itself and then ask the Court to step in to make a decision for it now. WMATA shirked this responsibility at the time and cannot be saved by the speculation of "what-if's." In short, there is no argument, evidence, or proper

mechanism for this Court to make a judicial finding that JBG was second-in-line or that Monument did not have a "substantial chance" of winning the solicitation. Consequently, this Court should deny WMATA's Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, Monument respectfully requests that the Court deny the Motion of Washington Metropolitan Area Transit Authority's for Reconsideration of Preliminary Injunction Decision.

Dated: March 21, 2008

Respectfully submitted,

NIXON PEABODY, LLP

/s/ *Louis E. Dolan, Jr.*
_____
Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2008, a true and correct copy of the foregoing Opposition to Motion for Reconsideration of Preliminary Injunction Decision was served by ECF upon:

Harvey A. Levin, Esquire
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167

Counsel for Defendant

Barbara Wahl, Esq.
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington D.C.  20036-5339

Counsel for Proposed Intervenor


/s/ ***Louis E. Dolan, Jr.***
_____
Louis E. Dolan, Jr.



**BY COURIER**

September 28, 2007

Mr. Jeffrey T. Neal
Managing Member
MR Ballpark 7 LLC
c/o Monument Realty
1700 K Street, NW, Suite 600
Washington, DC 20006

Re:    Bid No. 08-1, Invitation For Bids For Sale With Leaseback of WMATA Property
       Lots 857 and 866, Square 700 District of Columbia

Dear Mr. Neal:

Enclosed is your deposit check in the amount of $300,000 for the purchase of the
above-referenced property.    Your bid was not accepted by the Washington
Metropolitan Area Transit Authority (WMATA).

Thank you for your interest in purchasing WMATA property.

Sincerely,

*Joel R. Washington / for*

Nat Bottigheimer
Assistant General Manager
Department of Planning
 and Joint Development

Enclosure

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

By Metrorail
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus
Routes D1, D3, D6, P6,
70, 71, 80, X2

A District of Columbia,
Maryland and Virginia
Transit Partnership

W002050



W002051



**BY COURIER**

September 28, 2007

Mr. Richard Jordan
The JBG Companies
4445 Willard Avenue
Chevy Chase, MD 20815

Re:     Bid No. 08-1, Invitation For Bids For Sale With Leaseback of WMATA Property
        Lots 857 and 866, Square 700 District of Columbia

Dear Mr. Jordan:

Enclosed is your deposit check in the amount of $300,000 for the purchase of the
above-referenced property.   Your bid was not accepted by the Washington
Metropolitan Area Transit Authority (WMATA).

Thank you for your interest in purchasing WMATA property.

Sincerely,

Joel R. Washington /for

Nat Bottigheimer
Assistant General Manager
Department of Planning
   and Joint Development

Enclosure

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

By Metrorail
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus
·tes 01, D3, D6, P6,
70, 71, 80, X2

A District of Columbia,
Maryland and Virginia
Transit Partnership

W002047





**BY COURIER**

October 1, 2007

Mr. Matthew J. Klein
President
The John Akridge Development Company
601 13th Street, NW, Suite 300 North
Washington, DC 20005

Re:    Bid No. 08-1, Invitation For Bids For Sale With Leaseback of
       WMATA Property Lots 857 and 866, Square 700, District of
       Columbia - Southeastern Bus Garage Property

Dear Mr. Klein:

The Washington Metropolitan Area Transit Authority (WMATA) hereby
accepts the John Akridge Development Company's bid in the amount of
$69,250,000 for purchase of the above referenced property. Enclosed
is your Bid Form which has been signed on behalf of WMATA.

Acceptance of your bid was contingent upon approval of the WMATA
Board of Directors and, on September 27, 2007, the Board voted to
accept your bid. WMATA has deposited your bid deposit of Three
Hundred Thousand Dollars ($300,000). Payment by wire transfer of the
security deposit of Three Million Dollars ($3,000,000), as described in
Section C.3 of the Invitation for Bid form, is due within five (5) business
days from the date of this letter and should be sent to:

|  |  |
|---|---|
| Bank: | Wachovia, McLean, VA |
| ABA: | 054001220 |
| Account: | #2000035167097 |
| Beneficiary: | WMATA Revenue Fund, Washington Metropolitan Area Transit Authority |
| Reference: | Sale of WMATA Property at 17 M Street, SE, Washington, DC (Southeastern Bus Garage) |
| Attention: | Henry L. Jones, (202) 962-1019 |

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

By Metrorail:
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus:
Routes D1, D3, D6, P6,
70, 71, B0, X2

A District of Columbia,
Maryland and Virginia
Transit Partnership

Mr. Matthew J. Klein
Page 2

As you are aware, the WMATA Board of Directors has made settlement on the sale of this property contingent upon several items. First, WMATA must complete the acquisition of the replacement Southeastern Bus Garage property at D.C. Village from the District of Columbia. Second, the Board must approve the Southeastern Bus Garage replacement project and amendment of the Mass Transit Plan in accordance with the WMATA Compact.

WMATA expects to soon finalize an exchange agreement with the District necessary to satisfy the first condition. Board action to approve the exchange agreement with the District, the Southeastern Bus Garage relocation to D.C. Village and the amendment to the Mass Transit Plan is expected to occur in November. We anticipate completing the acquisition of the D.C. Village property in December after which settlement on the bus garage can occur.

Regarding the possible leaseback of the garage, at this time WMATA is reviewing the project schedule to determine if, and how long, buses will remain at the garage after settlement. We will be in further contact with you when we have refined the schedule.

In the meantime, please review the General Terms of Sale and Leaseback sections of the Invitation to Bid No. 08-1 package and complete all items required for settlement. The balance of the purchase price in the amount of Sixty-Five Million Nine Hundred Fifty Thousand Dollars ($65,950,000) will be payable by wire transfer at settlement.

We look forward to working with the John Akridge Development Company on this important project. If you have any questions, please contact Mr. Bob Burns of this office at 202-962-2392.

Sincerely,

Nat Bottigheimer
Assistant General Manager
Department of Planning
  and Joint Development

Enclosure

# Akridge

August 28, 2007

*BY COURIER*

Mr. Nat Bottigheimer
Assistant General Manager
Department of Planning, Land and Joint Development
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001

**Re: Bid No. 08-1; Lots 857 and 866 in Square 700 (the "Second Bid Request")**

Dear Mr. Bottigheimer:

The John Akridge Development Company ("Akridge") hereby submits the enclosed bid in response to the Second Bid Request. This bid is submitted conditionally as set forth in the enclosed letter from our counsel, Williams & Connolly LLP, to Carol B. O'Keeffe, WMATA's general counsel. Please be advised that the bid submitted by Akridge in connection with Bid No. 07-3: Lots 857 and 866 in Square 700 is no longer valid and may no longer be accepted by WMATA.

Sincerely,

Matthew J. Klein
President

cc:    Elizabeth M. Hewlett
       Christopher Zimmerman
       Jim Graham
       Peter Benjamin
       Dana Kauffman
       Emeka C. Moneme
       Marcell Solomon
       William D. Euille
       Marion Barry
       Gordon Linton
       Catherine Hudgins
       Anthony R. Giancola, P.E.
       John B. Catoe
       Helen Law
       Carol O'Keeffe

       John E. Akridge, III
       Matthew J. Klein

W000046

**BID NO. 08-1**

**WMATA Property**

**Lots 857 and 866, Square 700**

**District of Columbia**

## BID FOR PURCHASE OF WMATA PROPERTY (Bid Form)

TO:    Office of Property Development and Management

Washington Metropolitan Area Transit Authority

600 Fifth Street, NW

Washington, DC  20001

**SUBJECT TO:**  The terms and conditions of the Invitation for Bids; the General Terms of Sale; the Special Terms of Sale and Leaseback; and the Instructions to Bidders, the Right of Entry Permit, Lease Form, and Underground Storage Tank Real Estate Transfer Disclosure Form, all of which are incorporated as part of this bid. The undersigned bidder hereby offers and agrees, if this bid is accepted, to purchase the identified Property at the bid price entered below by November 30, 2007 and to lease the Property back to WMATA at the Leaseback Rental entered below pursuant to the Lease form (or an alternate form submitted with this Bid Form (disfavored)).

The bid must be accompanied by a Bid Deposit in the amount of Three Hundred Thousand Dollars ($300,000).  The Bid Deposit must be in the form of a certified or cashier's check, payable to "WMATA".

Bid Amount: $ _____ 69,250,000.00 _____

Bid Spelled-out: Sixty-Nine Million Two Hundred Fifty Thousand and No/100 Dollars

Leaseback Rental (Per Month): $ _____
Months 1 - 12  $110,000.00
Months 13 - 36 $430,000.00

Leaseback Rental (Per Month) Spelled-out: $
Months 1 - 12: One Hundred Ten Thousand and No/100 Dollars
Months 13 - 36: Four Hundred Thirty Thousand and No/100 Dollars

10



W000047

If I am selected as the Successful Bidder (or an Alternate Bidder), WMATA may notify me by courier, overnight delivery or certified mail, return receipt requested, at the address listed below.

If this bid is accepted, the deed should name the following as grantee(s) and the lease should identify the following as landlord:

The John Akridge Development Company, A District of Columbia Corporation

You may designate an alternate grantee/landlord at settlement, provided it is controlled by the person or entity identified above.

Bidder represents that bidder operates as an ~~individual / partnership /~~ corporation / ~~limited liability company / other~~: _____.    Evidence of authority to sign and submit this Bid Form (for any entity other than an individual) is attached. If signed by a trustee or agent, a copy of the power of attorney or other authorizing document is attached.

If selected, I ~~waive~~ / do not waive the Due Diligence Period set forth in Section B, Paragraph 11 [circle the appropriate choice].

Initial: ___WM___

Akridge manages an Affiliate that owns and/or controls substantial portions of Square 664 (the "Akridge Property") and, if this bid is accepted, Akridge would immediately commence negotiations with WMATA to establish an arrangement pursuant to which WMATA would be able to use the Akridge Property as a temporary site for locating assets presently located on the Property during the period WMATA is contemplating relocation of the operations presently conducted at the Property.

Initial: ___WM___

11

W000048

Signature of bidder: _____    Date ___August 28, 2007___

Name (Print)___Matthew J. Klein___

Title___President___

Address___601 Thirteenth Street, NW, Suite 300 North___    City/State/Zip ___Washington, D.C.  20005___

Telephone___(202) 638-3000___

Facsimile Number ___(202) 347-8043___

Signature of WMATA indicating acceptance of bid:

_____    Date ___10/1/07___
Nat Bottigheimer
Contracting Officer

12



W000049

THE JOHN AKRIDGE DEVELOPMENT COMPANY

WRITTEN CONSENT
IN LIEU OF
ANNUAL MEETING
OF THE
BOARD OF DIRECTORS

April 25, 2007

In lieu of the annual meeting of the Board of Directors of The John Akridge Development Company, a District of Columbia corporation (the "Corporation"), all the directors of the Corporation, hereby consent, to the following resolutions, which are to be filed with the minutes of the Board of Directors;

1.   RESOLVED, that the following persons be, and they hereby are, elected to serve in the offices set forth next to their names for the following year and until their respective successors are elected and shall qualify or until their earlier resignations:

| NAME | TITLE |
|---|---|
| John E. Akridge, III | Chairman |
| Sarah B. Akridge | Secretary |
| Matthew J. Klein | President |
| Thomas W. Wilbur | Senior VP and Assistant Secretary |
| Joseph G. Svatos | Senior VP and Assistant Secretary |
| Stephanie F. Brown | Senior VP and Assistant Secretary |
| Kathryn L. Barnes | Senior VP and Assistant Secretary |
| P. Brian Connolly | Senior VP and Assistant Secretary |
| Brian A. Cass | Senior VP, Treasurer, and Assistant Secretary |
| Robert L. Blair | VP, Asst. Secretary & Asst. Treasurer |
| Michele L. Slaney | Asst. Treasurer and Asst. Secretary |
| Christina S. M. Chan-Walker | Asst. Treasurer and Asst. Secretary |
| Gregory P. Tomasso | Vice President |
| Robert E. Schofield, Jr. | Vice President |
| Andrew Pace | Vice President |
| Joseph G. Ersek | Vice President |
| Wilbur E. Pace | Vice President |
| Eugene J. Kenney | Vice President |
| Mary L. Lynch | Vice President |
| Bryan H. Dold | Vice President |

FURTHER RESOLVED, that the officers shall hereby enter upon the discharge of their duties.

APPROVED:

_____
John E. Akridge, III, Director

_____
Sarah B. Akridge, Director

W000050

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

MONUMENT REALTY LLC, et al.,    )
    )
    Plaintiffs,    )
    )
    v.    )    **Civil Action No. 1:07-cv-01821 (EGS)**
    )    **Judge Emmet G. Sullivan**
WASHINGTON METROPOLITAN    )
AREA TRANSIT AUTHORITY,    )
    )
    Defendant.    )
_____)

**ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF PRELIMINARY INJUNCTION DECISION**

Upon consideration of Defendant's motion for reconsideration of this Court's grant of a

preliminary injunction in this matter, the memoranda of points and authorities in support of and

in opposition to the motion, and the entire record herein, and this Court having considered the

argument of counsel thereon, it is, this ___ day of _____, 2008, hereby

ORDERED, that the motion be, and it hereby is, denied in its entirety.

_____
Emmet G. Sullivan
United States District Judge

COPIES TO:

Louis E. Dolan, Jr.
Vernon W. Johnson, III
Nixon Peabody LLP
401 9th Street, N.W.
Washington, D.C. 20001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167