IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONUMENT REALTY LLC, et al., )
)
      Plaintiffs, )
)
v. ) Civil Action No. 1:07-cv-01821 (EGS)
) Judge Emmet G. Sullivan
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, )
)
      Defendant. )
)

**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE**

I. **Introduction**

This lawsuit was filed on October 10, 2007 and has been litigated extensively since that time. The parties as well as various nonparties to the lawsuit, including the John Akridge Development Company, have had ongoing notice of the litigation, with participation in the Court's Electronic Case Filing System and attendance at Court proceedings. Parties and nonparties both had full opportunity to review these proceedings, and to note any objections to actions taken, arguments presented, or representations made. Nonparties had full right and opportunity months ago to seek to intervene in the lawsuit.

On March 18, 2007, Akridge moved to intervene, citing both the provisions for intervention as a matter of right, Fed. R. Civ. P. 24(a), and for permissive intervention, Fed. R. Civ. P. 24(b). The primary grounds asserted by Akridge for this filing were that "Akridge has now concluded that its interests and those of WMATA are no longer aligned." (*See* Mem. at 3.) More specifically, Akridge argues that in order to contest Plaintiffs' bid protest claims, it needs to pursue "discovery of WMATA's decision makers' evaluation of IFB No. 08-1 leading to the

award of the contract to Akridge." (*See id.* at 4.) Within the motion, Akridge asserts that it is entitled to seek enforcement of the award against WMATA; of course, no such claim is made by Akridge against WMATA and instead, Akridge has filed its proposed pleading, outlining the allegations and defenses it would present in an Answer to the Plaintiffs' lawsuit.

Monument understands that the Court is inclined to grant Akridge's motion. At the same time, Monument respectfully submits that there is ample authority, as outlined in this Opposition, supporting the denial of Akridge's request. In the event that the Court were to grant the motion, however, Plaintiffs would ask that it be done in such a way as to minimize the prejudice to Plaintiffs and WMATA from intervention at this late date.

## ARGUMENT

### II.  Ample Grounds Exist to Support a Denial of this Motion to Intervene

    A.    Intervention as a Matter of Right

A party seeking to intervene as a matter of right under Fed. R. Civ. P. 24(a) must satisfy all prongs of a four-factor test: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *See Securities Exchange Comm'n v. Prudential Sec., Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). At least insofar as Plaintiffs' bid protest-related claims are concerned, Akridge appears to satisfy the second and third elements of the test. The first and fourth elements, however, are problematic for Akridge.

As to the first element, timeliness, this motion comes many months into the litigation and after the Court and the parties have expended substantial effort to resolve a number of significant issues. Most recently, before Akridge filed its motion, Monument and WMATA worked

2

together to agree upon and file a joint submission on March 7, 2008, outlining a proposed schedule for further proceedings in this case (to resolve both the bid protest-related claims and the contract-related claims). Plaintiffs understand and accept the representations of Akridge at the recent Status Conference that it does not intend its intervention to unfairly prejudice Plaintiffs and WMATA.

Even so, this motion comes far outside of the period which would normally be considered timely. Under the Rules, the timeliness of a motion to intervene is assessed by weighing the following factors: (1) time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the need for intervention as a means of preserving the applicant's rights, (4) and the probability of prejudice to those already parties in the case. *United States v. British Am. Tobacco Austl. Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006); *see also In re Permanent Surface Mining Reg. Litig.*, 100 F.R.D. 710, 712 (D.D.C. 1983) (denying motion to intervene as untimely when it did not become ripe until over two weeks after this Court established briefing schedule in complex case involving challenges to agency's regulations); *see also Moten v. Bricklayers Union*, 543 F.2d 224, 228 (D.C. Cir. 1976) (denying intervention in light of movant's informed, tactical decision to delay motion to intervene after suit was commenced). The type of delay shown here has been sufficient to support the denial of a motion to intervene. *See, e.g., NAACP v. New York*, 413 U.S. 345, 356-66 (1973) (affirming denial of motion to intervene filed four months after suit was commenced).

In this case, Akridge waited until adverse rulings were made to WMATA's and its interests by the Court in February, and then waited until the parties had already submitted their proposed schedule for resolving this case until it decided to try to intervene. In so doing, Akridge has presumably perceived an opportunity to revisit decisions already made on a well-

3

established record. In the event that the Court does grant the motion, Plaintiffs have set forth separately their position on minimizing the prejudice to the parties.

As to the fourth element, Akridge espouses only theoretical concerns, since it cannot truly demonstrate that WMATA cannot sufficiently protect the interests Akridge has in defending the underlying bid process. At bottom, both Akridge and WMATA clearly share the same litigation objective – to uphold the solicitation process by which Akridge received the award under IFB 08-1. *See, e.g., Burka v. Aetna Life Ins. Co.*, 917 F. Supp. 8, 11-12 (D.D.C. 1996); *see also Clark v. Putnam*, 168 F.3d 458, 461-62 (11th Cir. 1999) ("We presume adequate representation when an existing party seeks the same objectives as the would-be interveners.") WMATA has certainly contested this litigation vigorously, and Akridge does not point to anything that WMATA did, or failed to do, differently from how Akridge would have acted, other than to depose certain WMATA decision makers, whose testimony is plainly already within the control of WMATA and could have been presented had WMATA deemed it beneficial.

Normally, in order to overcome the presumption of adequate representation, Akridge would have to show adversity of interest, collusion, or nonfeasance. *Humane Society v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985); *Tripp v. Executive Office of the President*, 194 F.R.D. 344, 347 (D.D.C. 2000). Akridge does not make such a showing. Instead, it suggests only one modest difference over litigation tactics, rather than inadequate representation, and the difference Akridge points to is something plainly more easily addressed by WMATA than by Akridge having to depose WMATA's Board of Directors. *See Jones v. Prince George's County, Maryland*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) ("A mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of

4

those whose interests are identical with that of an existing party or who are formally represented in the lawsuit.") (citation omitted); *accord Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997) (adequate representation of the public by the City despite disagreements over strategy); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (same); *United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999) (same).

The cases Akridge cites do not involve situations in which intervention has been allowed to permit discovery that the proposed intervenor claimed an existing party would not conduct adequately. Rather, these cases involve unique and inapplicable factual scenarios in which the original parties failed to take certain actions (specifically, an appeal of the underlying ruling) because of a conflict between their interests and those of the proposed intervenor. In *United States v. AT&T*, for example, the D.C. Circuit found that MCI was not represented adequately at the relevant time because "the United States cannot readily pursue its interest in expeditious prosecution of the antitrust suit against AT&T unless it forgoes what might well appear to be a lengthy appeal process to vindicate MCI's claimed privilege." 642 F.2d 1285, 1294 (D.C. Cir. 1980); *see also Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001) (divergence of interests emerged after the district court found that a federal agency acted in an arbitrary and capricious fashion and the government was no longer resolved in defending the challenged decisions of a federal agency). Such a conflict of interest is a valid basis for permitting intervention. *See Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (divergence of interests emerged between a school board and parents when the school board decided not to appeal from an adverse decision of the district court, and school board was composed of "lame duck" members due to be replaced). No such conflict is alleged or proven in this case.

5

Normally, defendants in WMATA's position are presumed to have a vigorous interest in upholding the viability of their procurement processes, giving rise to a heightened presumption of adequate representation. *See, e.g., Building & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (denying intervention as of right by a trade association in an action by a union challenging a decision of the Department of Labor's Wage Appeals Board, where trade association's interests were adequately represented by the DOL in this Court and on appeal.); *Humane Society*, 109 F.R.D. at 520 (denying intervention as of right where the defendants had a vigorous interest in upholding their regulations). WMATA has conducted this litigation in a way that demonstrates its commitment to defending its procurement process, consistent with WMATA's vigorous interest in defending its actions. *See, e.g., Building & Constr. Trades Dep't, AFL-CIO v. Reich, supra,* 40 F.3d at 1282. In fact, WMATA has unique access to "WMATA's decision makers" from whom Akridge urges it wants to take discovery. (*See* Mem. at 4.) WMATA can obtain the relevant information without the discovery that Akridge claims as the basis for seeking to intervene.

Akridge does cite other cases involving conflicts of interest between a government agency's duties to the public and private interests that exist in certain situations. For instance, where the District of Columbia had "no financial stake in the outcome" of a legislative challenge, intervention was appropriate. *See Dimond v. District of Columbia*, 792 F.2d 179, 192-193 (D.C. Cir. 1986). *See also Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) (holding that the federal defendant's interests in representing the American people "plainly" diverged from the interests of the Mongolian government). Such considerations do not apply in this case.

Furthermore, not only is WMATA's claimed inadequate representation purely theoretical, it is belied by the actual conduct of this litigation thus far. WMATA has certainly

6

and zealously contested the issue of whether its decisionmakers considered the "sweetener" Akridge offered along with and after submission of the Akridge Bid, and it has presented related evidence. (*See* WMATA's Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI Opp.") at 45-49 and evidence cited therein.) Although Akridge asks to intervene in order to conduct discovery to show that WMATA "did not and could not have considered the two letters from Akridge dated September 12 and 20, 2007" (*see* Mem. at 8), WMATA has already advanced the exact same argument. (*See, e.g.,* PI Opp. at 46 and accompanying footnote 32.)

This Court has also already determined that the undisputed evidence shows that WMATA's staff *did* consider those communications as part of Monument's demonstration of a substantial likelihood of success on the merits of this lawsuit. (*See* February 28, 2008 Mem. Op. at 10-13, 26-29.) Akridge is nevertheless asking to intervene to pursue discovery and present cumulative evidence in that regard, which itself justifies denial of this motion. *See Envtl. Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C. 1978) (denying intervention in suit involving the validity of regulations because the arguments of the movant "will be cumulative of the arguments advanced by the other defendants.").

B.   Permissive Intervention

A party invoking permissive intervention under Fed. R. Civ. P. 24(b) must satisfy all prongs of a three-factor test: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Opportunity Comm. v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citations omitted). This Court's review of a Rule 24(b) motion is subject to an abuse of discretion standard. *See id.* at 1045. A necessary part of the review under Rule 24(b), similar to that under 24(a), is the consideration of "whether the intervention will unduly delay or

7

prejudice the adjudication of the rights of the original parties." *See Tripp, supra*, 194 F.R.D. at 348.

Here, Akridge's motion poses the same concerns set forth above, including timeliness, adequacy of WMATA's representation, the cumulative nature of the potential evidence it would offer, and prejudice to the original parties. Additionally, the cases cited by Akridge in support of its request for permissive intervention pose unique factual circumstances not present here. *Equal Opportunity Comm. v. Nat'l Children's Ctr., supra*, 146 F.3d at 1046 (granting motion to permissively intervene two years after settlement for limited purpose to seek access to sealed material; considering that such access would not prejudice the original parties' rights after judgment or settlement); *Sierra Club v. Antwerp*, 523 F. Supp. 2d 5, 10-11 (D.D.C. 2007) (granting unopposed motion to intervene that was filed sixteen days after the filing of the lawsuit where lack of opposition demonstrated that the rights of the existing parties would not be unduly prejudiced); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 68-71 (D.D.C. 2006) (granting motion to intervene that was timely filed on the day before the Defendant answered Plaintiff's first amended complaint, and where the existing parties did not adequately represent movant's interests).

### III. Even if Akridge Were to Present a Case for Intervention in the Bid Protest-Related Claims, It Cannot Show Standing to Intervene in the Contract-Related Claims

Akridge has asked to intervene in the case generally, and to participate in the context of both Monument's bid protest-related claims and in its separate contract-related claims. Akridge clearly has an interest in protecting the outcome of the WMATA bid process. The contract-related claims, however, pose different concerns.

Plaintiffs advance their contract-related claims in Counts 2, 3, 4, and 5, as well as portions of Counts 1 and 3 of the First Amended Complaint. These claims arise out of rights and

8

interests given by the District of Columbia, the Anacostia Waterfront Corporation and WMATA to Monument long before IFB 08-1 was issued and long before Akridge acquired any interest it may claim to have in the Property that is the subject of the litigation. *See, e.g., Securities Exchange Comm'n v. Prudential Sec., supra,* 136 F.3d at 155 (denying intervention as of right where movant lacks a legally protected interest in the subject of the action). In fact, Akridge was a losing bidder in the AWC process that the Monument team won, permitting Monument to become one of the Master Developers for the Ballpark District. To allow Akridge to have any voice in the contract claims part of the case would permit Akridge to interfere with the pre-existing relationship created among AWC, the District and Monument that Akridge failed to win through a competitive process.

Although Akridge has asked generally to intervene, it has not made any argument or provided any evidence to conclude that WMATA cannot represent any of its interests adequately in the context of the contract-related claims in this case. It has only argued that WMATA cannot do so in the context of the bid protest-related claims. It has not demonstrated any reason why it should be allowed to intervene in the contract-related claims. *See Schoenborn v. Wash. Metro. Area Transit Auth.*, 247 F.R.D. 5, 10 n.5 (D.D.C. 2007) ("The court limits Pifer's intervention to participation in settlement discussion and advocating for Pifer's share of any potential monetary award.") (citing *Atherton v. Casey*, 1992 U.S. Dist. LEXIS 13407, 1992 WL 235894, at *1-3 (E.D. La. Sept. 4, 1992) (recognizing that a nonparty may intervene "solely on one issue") and *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*, 205 F.R.D. 1, 7 (D.D.C. 2000) (holding that "[a] court may place conditions on permissive interventions in order to minimize the delay and prejudice to the existing parties").

9

Furthermore, Akridge has not asserted any common questions of law or fact that predate WMATA's procurement process. The issues raised by Plaintiffs' contractual rights and interests in the Property do not involve the same evidence and are entirely dissimilar from the issues raised in assessing the propriety of WMATA's bid processes.

This is a serious issue and one largely undeveloped in Akridge's motion papers. To the extent that Akridge seeks to develop its arguments further in its reply, Plaintiffs would respectfully ask the opportunity for further briefing on the issue.

### IV. If this Court Grants the Motion, It Should Include in its Order Provisions to Minimize the Prejudice to the Original Parties

Rule 24 contemplates that intervention may be granted subject to "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) advisory committee's note on the 1966 amendment. In this case, to the extent that intervention is permitted, Monument respectfully submits that the Court should place the following conditions upon it:

1. The parties will adhere to the proposed schedule set forth in the March 7, 2008 "Parties' Joint Recommendations for Further Proceedings Pursuant to Minute Order Dated March 3, 2008."

2. Consistent with the stated basis for its motion, Akridge's participation should be limited to the conduct of additional discovery of WMATA decision makers, referenced in Akridge's motion. *See, e.g., Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987) (holding that there was no constructive denial of motion to intervene where district court restricted intervenor's claims and rights to discovery after granting permissive intervention).

3. Akridge's participation in the case should exclude any participation in the contract-related claims portion of the case.

4.  Akridge will not be permitted to revisit prior rulings in this case, including this Court's Memorandum Opinions and Orders dated February 27, 2008 and February 28, 2008, respectively.

## V. Conclusion

For the foregoing reasons, Monument respectfully requests that the Court deny the Motion of the John Akridge Company for Leave to Intervene. It should be noted that denying intervention does not prevent Akridge from taking action to protect its interests. For example, Akridge could seek leave to file and participate as *amicus curiae*. This approach has been followed as an alternative to intervention. *See Stewart v. Rubin*, 948 F. Supp. 1077, 1104 (D.D.C. 2000) (collecting cases); *see also Nat'l Assoc. of Home Builders v. United States Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007).

Dated: March 25, 2008

Respectfully submitted,

NIXON PEABODY, LLP

/s/ **Louis E. Dolan, Jr.**

Louis E. Dolan, Jr. (#442881)
Vernon W. Johnson, III (#423756)
401 9th Street, N.W.
Washington, D.C. 20001
202.585.8000
202.585.8080 (fax)

ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2008, a true and correct copy of the foregoing Plaintiffs' Opposition to Motion to Intervene was served by ECF upon:

>Harvey A. Levin, Esquire
>Thompson Coburn LLP
>1909 K Street, Suite 600
>Washington, D.C. 20006-1167
>
>Counsel for Defendant
>Washington Metropolitan Area Transit Authority
>
>Barbara S. Wahl, Esquire
>Joshua Fowkes, Esquire
>Arent Fox LLP
>1050 Connecticut Avenue, NW
>Washington, DC 20036-5339
>
>Counsel for Proposed Intervenor
>John Akridge Development Company

/s/ *Louis E. Dolan, Jr.*
_____
Louis E. Dolan, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONUMENT REALTY LLC, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY, )<br>)<br>Defendant. )<br>) | Civil Action No. 1:07-cv-01821 (EGS)<br>Judge Emmet G. Sullivan |

## ORDER DENYING MOTION TO INTERVENE

Upon consideration of the motion of the John Akridge Development Company to intervene in this matter, the memoranda of points and authorities in support of and in opposition to the motion, and the entire record herein, and this Court having considered the argument of counsel thereon, it is, this ___ day of _____, 2008, hereby

ORDERED, that the motion be, and it hereby is, denied in its entirety.

_____
Emmet G. Sullivan
United States District Judge

COPIES TO:

Louis E. Dolan, Jr.
Vernon W. Johnson, III
Nixon Peabody LLP
401 9th Street, N.W.
Washington, D.C. 20001

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, Suite 600
Washington, D.C. 20006-1167

Barbara S. Wahl
Joshua Fowkes
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339