IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONUMENT REALTY LLC, *et al.*,<br><br>*Plaintiffs*<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY,<br><br>*Defendant* | Civil Action No. 1:07-CV-01821 (EGS) |

**REPLY OF WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
IN SUPPORT OF MOTION FOR RECONSIDERATION
OF PRELIMINARY INJUNCTION DECISION**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by undersigned counsel, respectfully replies to Plaintiffs' opposition ("Plaintiffs' Opp.") to WMATA's motion for reconsideration of the Court's February 28, 2008 decision granting Plaintiffs a preliminary injunction. Plaintiffs' Opp. is filled with inciting hyperbole that is neither helpful nor factual, but more importantly Plaintiffs' Opp. misses a clear distinction that the case law makes, and relies on faulty case law, to bolster a claim of standing where there is none.

**INTRODUCTION**

The Court set out the standard that Plaintiffs had to satisfy in order to establish standing (Mem. Op. at 20-22; citations omitted):

> **2.  Prejudice**
>
> In order to succeed with a bid protest, plaintiffs must show that they were significantly prejudiced by the errors in the procurement process. … Prejudice is a question of fact. … To establish "significant prejudice," plaintiffs must show that there was a "substantial chance" they would have received the contract award but for WMATA's violation of applicable law during the sealed bid process. … Plaintiffs satisfy their burden to demonstrate a substantial chance

4709108.1

of receiving the award when they are next in line to be awarded the contract if the protest is sustained. …[1]

Plaintiffs' Opp., however, takes issue with this standard, arguing that Plaintiffs need not show that one or the other of them, either Monument Realty LLC or MR Ballpark 7 LLC, was next-in-line for the award if Akridge were disqualified. Instead, Plaintiffs argue for a looser standard, that "a plaintiff need only show that it was a disappointed bidder." Plaintiffs' Opp. at 6.

As WMATA shows below, however, Plaintiffs are wrong. The uniform, unanimous case law applicable to this case, where a losing bidder makes a post-award challenge to an award based on an IFB that seeks the best price, mandates the "next-in-line" standard and places the burdens of proof and persuasion to show next-in-line status solely on Plaintiffs.

As WMATA shows below, Plaintiffs failed to meet their burdens of proof and persuasion on this point. As WMATA briefed initially and shows again below, the case for standing is wholly speculative. Furthermore, the only evidence in the record proves that Plaintiffs do not have standing. That evidence shows that (i) the IFB clearly disclosed that any leaseback period was wholly discretionary with WMATA;[2] (ii) WMATA assessed the bids based on a limited leaseback period that would have WMATA out of the Bus Garage Property by March 31, 2008, Opening Day of the new stadium;[3] (iii) consistent with this assessment, WMATA had determined to disperse the buses housed and serviced at the Bus Garage Property

---

[1] As WMATA explains below, this articulation actually reflects two different standards. The "substantial chance" standard applies to pre-award challenges and challenges to negotiated RFPs. The "next-in-line" standard applies in this case, to a post-award challenge to an IFB and an award based on price. Case law uniformly requires in the present suit that Plaintiffs show that they would have been next-in-line for the award, not merely that they would have had a substantial chance for the award, had WMATA disqualified the Akridge bid. The case law does not impose any burden on WMATA to show the converse.

[2] *See* the IFB, Plaintiffs' Exhibit 70, at page 7, ¶ C.5.

[3] *See* the Bottigheimer Memoranda, Exhibits 11 and 12 to the Bottigheimer Declaration, WMATA Exhibit E.

to other garages, allowing WMATA to vacate the Bus Garage Property by Opening Day of the 2008 baseball season;[4] and (iv) with WMATA set on vacating the Bus Garage Property by March 30, 2008, and therefore not leasing it back after that date, the MR Ballpark 7 bid was the lowest and JBG, not MR Ballpark 7, was next-in-line for award after Akridge.

## ARGUMENT

### 1. Plaintiffs Are Wrong On The Law; In An IFB, Where Price Is The Determinant, The Case Law Is Uniform And Unanimous That Only The "Next-In-Line" Bidder Has Standing

Plaintiffs' argument that MR Ballpark 7 need only show that it is a disappointed bidder or need only show that it could have competed for the award, rather than showing that it was next-in-line to receive the award, is wrong. In a post-award challenge under a sealed bid procurement using an IFB, as opposed to a negotiated procurement using an RFP in which technical and price factors will determine the award, a disappointed bidder must show that it was next-in-line to receive the award in order to have standing to challenge the award. That is the holding of *every* IFB case in which a disappointed bidder sought to challenge an award where price was the determining factor. All of these cases dismissed challenges on standing grounds where the challenger did not show that it was next-in-line and that it would have received the award if the winner were disqualified. Bidders in IFB post-award challenges who cannot show that that they were next-in-line and who do not show that they would have received the award but for the alleged procurement errors simply do not have standing. In addition to the cases that WMATA cited previously and on which the Court's Memorandum Opinion relied,[5] *see also U.S. v. Int'l Bus. Machines Corp.*, 892 F.2d 1006 (Fed. Cir. 1989);

---

[4] *See* the Bottigheimer Declaration, WMATA Exhibit E, ¶ 37 and Exhibits 11 and 12 to the Bottigheimer Declaration.

[5] *See* Mem. Op. at 21:

*Matter of Victoria Inn Ltd; Beige Plane, Ltd.*, B-256724, B-256724.2, July 21, 1994, 94-2 CPD ¶ 37; *Matter of H.B. Mac, Inc.*, B-233815, Feb. 23, 1989, 89-1 CPD ¶ 198; *Matter of Twenty First Century Iint'l Fire Equipment and Services Corp.*, B-231343, B-231343.2, Sept. 1, 1988, 88-2 CPD ¶ 200; *Matter of Seagull Technical Services, Co.*, B-226756, June 19, 1987, 87-1 CPD ¶ 615; *Matter of A & S Taub Matter of Isometrics, Inc.*, B-226270, June 1, 1987, 87-1 CPD ¶ 554.

*U.S. v. Int'l Bus. Machines Corp.* is particularly interesting because it categorically rejects Plaintiffs' position. IBM was the fourth-lowest bidder in response to an IFB for specified IBM equipment. IBM filed a post-award formal protest, and the winning bidder and the third-lowest bidder intervened. The Federal Circuit ruled that IBM, even though a disappointed bidder, a responsive bidder and the manufacturer of the very equipment that the IFB sought to procure, did not have standing to bring the protest. The decision is worth quoting at length because it directly confronts and dismisses Plaintiffs' position:

> The board was troubled by the "logic" that would allow the award of a questionable procurement to go unchallenged if the second-lowest bidder did not file a protest. It believed this result would be "contrary to the notions of full and open and fair and equal competition and would significantly undermine the integrity of the procurement and protest processes." *Id.* But, as the Supreme Court has said in an analogous context,
>
> > [t]he requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate

---

Plaintiffs satisfy their burden to demonstrate a substantial chance of receiving the award when they are next in line to be awarded the contract if the protest is sustained. *See* Def.'s Supp. Auth. 1-2 (citing *In re: Adrian Supply Co.*, B-243904, 91-2 CPD 1 140, 1991 WL 162535 (Comp. Gen. Aug. 7, 1991) ("The record shows that [plaintiff] would not be in line for award even if its allegations concerning Internec's bid were sustained. Rather, OHM International Corporation, the second low[est], responsive and responsible bidder, would be next-in-line for the award."); *In re: Applied Sys. Corp. - Recon.*, B-234159, 89-1 CPD ¶ 319, 1989 WL 240538 (Comp. Gen. Mar. 28, 1989) (same); *Motorola, Inc.*, B-232843, 88-2 CPD ¶ 484, 1988 WL 228158 (Comp. Gen. Nov. 16, 1988) (same)).

> executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome.
>
> *Sierra Club*, 405 U.S. at 740, 92 S.Ct. at 1368. Congress has decided that the coincidence of a disappointed bidder's "direct economic" interest with the public interest adequately accommodates both. By striking a different balance more solicitous of the latter, the board has upset this congressional scheme. Congress simply did not intend for the board to entertain the protests of innumerable disappointed bidders who have little or no chance of receiving the contract.
>
> In this case, GPO made a responsiveness determination only for Amdahl's bid. Under the board's rationale, each of the nine disappointed bidders has standing to protest the award to Amdahl because each "expended resources in an effort to obtain the contract", each could allege that GPO violated the terms of the solicitation, and each could seek reprocurement as a remedy. Indeed, if there were nineteen or ninety bidders, the result would be the same. We think this result is contrary to the command of the statute, which restricts the right to file a protest before the board to those parties with a "direct economic interest" in the award of the contract. *See* 40 U.S.C. § 759(f)(9)(B) (Supp. V 1987). The board effectively reads this limitation out of the statute by trivializing the interest it deems sufficiently direct.
>
> Where, as here, every disappointed bidder on a formally-advertised sealed-bid procurement offers essentially the same package of products and services, the bids materially differ only as to price, the solicitation itself is not challenged, and there is no reason to believe that the second-lowest bid is not responsive, *only the second-lowest bidder has a direct economic interest in the award of the contract*. Therefore, only the second-lowest bidder is an interested party entitled to protest the award of the contract, 40 U.S.C. § 759(f)(9)(B) (Supp. V 1987), because only it stands to receive the contract in lieu of the challenged awardee.

892 F.2d at 1010-11 (emphasis added).[6]

Plaintiffs' Opp. eschews -- or just plain misses -- the dispositive legal differences between the post-award challenge to an award under an IFB, as in this case, and pre-award

---

[6] The decision was under the Brooks Act, which has the same standing standard as the Competition in Contracting Act, 31 U.S.C. § 3551(2), the Tucker Act as amended by the Administrative Disputes Resolution Act of 1996, 28 U.S.C. § 1491(b)(1), and the Comptroller General decisions. *See Dismas Charities, Inc. v. U.S.*, 75 Fed. Cl. 59, 60 (2007) ("In interpreting similar language in the Brooks Act, … the Federal Circuit held that a plaintiff must have been next in line for award to be an 'interested party' with a direct economic interest in the award.").

challenges to solicitation terms and/or challenges to awards in the negotiated procurement context. Plaintiffs' Opp. relies only on cases involving the latter, challenges to solicitation terms and/or to awards in connection with negotiated procurements.[7] In these cases, there is no "next-in-line" bidder that would have received the award but for the flaws in the process because negotiated procurements involve technical requirements that are often more important than price, and the remedy for a successful protest generally has to include a new evaluation of technical proposals pursuant to which the relative ranking of proposals frequently changes. In cases like *Remtech* where solicitation terms are challenged prior to award, again there is no next-in-line awardee for the obvious reason that there was no award, and the remedy for a successful protest generally is a revision to the solicitation and a new competition. In these instances, the standing requirement may be as Plaintiffs' Opp. sets forth. *But that standing requirement does not pertain to this post-award challenge under this IFB where the next-in-line bidder is readily determinable based on the bid and leaseback prices, and the RFP standing requirement does provide standing to MR Ballpark 7.*

---

[7] In the order of the cases' appearance, Plaintiffs' Opp. misplaces its reliance on these inapt cases: *Solon Auto Servs., Inc. v. U.S.*, 658 F. Supp. 28 (D.D.C. 1987) (negotiated procurement with technical and price evaluation; in response to solicitation, Navy Supply Center contacted all 10 offerors and requested best-and-final proposals); *Irvin Indus. Canada, Ltd. v. U.S.*, 924 F.2d 1068 (D.C. Cir. 1990) (negotiated procurement in which Air Force rejected proposals that did not comply with technical requirements but then negotiated with bidder whose proposal did not meet deadline for critical design review or schedule for delivery); *Express One Int'l, Inc. v. United States Postal Service*, 814 F. Supp. 93 (D.D.C. 1992) (protest of negotiated procurement where member of evaluation team had impermissible conflict of interest that tainted entire evaluation); *Textron, Inc. v. U.S.*, 74 Fed. Cl. 277 (2006) (protests of award of highly technical design and construction of Response Boat-Medium fleet in four-year, two-phase RFP, following evaluation of technical and price proposals); *Matter of Remtech, Inc.*, B-240402.5, 91-1 CPD ¶ 35 (Jan. 4, 1991) (denying pre-bid-opening protest against solicitation requirement to furnish a payment bond); *Protest of Wisconsin Physicians Service Ins. Corp.*, 89-1 B.C.A. (CCH) ¶ 21,284 (GSBCA Oct. 11, 1988) (protest of negotiated procurement awarded after discussions that included waivers, deviations and best-and-final proposals); *Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324 (Fed. Cir. 2001) (protest of award after evaluation by technical board and price board and after "numerous letters and meetings" with the two boards).

Plaintiffs' Opp. also references the Court's citation to three negotiated procurement cases. Plaintiffs' Opp. states (at 8):

> In fact, the three cases that the Court cited prove this very point. Those cases hold that a bid protestor is not required to show that it was next-in-line for the award. (Mem. Op. at 20-21.) In *Alfa Laval Separation, Inc. v. United States, and Data General Corp. v. Johnson*, the Federal Circuit expressly held that "[t]o establish prejudice, a protestor is <u>not</u> required to show that but for the alleged error, the protestor would have been awarded the contract." 175 F.3d 1365, 1368 (Fed. Cir. 1999); 78 F.3d 1556, 1562 (Fed. Cir. 1996). Similarly, in *Bannum, Inc. v. United States*, the Federal Circuit held that a party does not need to show "that but for the errors [it] would have won the contract." 404 F.3d 1346, 1358 (Fed. Cir. 2005). The test, the Federal Circuit said, is "more lenient than showing actual causation." *Id*.

A review of these cases shows that they support WMATA's position even though they are negotiated RFP cases that as a matter of law differ on the standing requirement from the instant case where the award goes to the highest bidder based on price:

i. *Alfa Laval Separation v. U.S.*, 175 F.3d 1365 (Fed. Cir. 1999) (protest of negotiated procurement after Navy waived noncompliance for awardee; protester had only competing acceptable bid). The Court correctly relied on *Alfa Laval* for two reasons. First, Alfa Laval *was* the next-in-line bidder: "Alfa Laval contends, and we agree, that the Navy's error was prejudicial. The only bid competing with Alfa Laval was unacceptable under the standards set out in the RFP." 175 F.3d at 1368.

Second, while *Alfa Laval* holds, "the protester must show 'that there was a substantial chance it would have received the contract award but for the error,'" 175 F.3d at 1367 (citations omitted), in its factual context this standard *is* the "next-in-line" standard.

Also, *Alfa Laval* puts the burden of proof on Plaintiffs (as do all other cases). *See Dismas Charities, Inc. v. U.S., supra*, 75 Fed. Cl. at 60 ("Plaintiff bears the burden of establishing subject matter jurisdiction and the Court must dismiss this action if Plaintiff fails to do so.") Plaintiffs here do not show that there was a "substantial chance," as manifest in

*Alfa Laval*, that MR Ballpark 7 would have gotten the award if Akridge had not.  Plaintiffs did not and cannot show this substantial chance because MR Ballpark 7's offer was significantly less than JBG's for the planned leaseback period not to go beyond Opening Day on March 30, 2008.

Moreover, the evidence that is in the record refutes a case for standing.  The IFB, Plaintiffs' Exhibit 70, provided that the lease term "may, in WMATA's sole discretion be less than 36 months" (at page 7, ¶ C.5 ), and the attached form of Agreement of Lease defined the Term as terminable by WMATA at any time on 90-days' notice.  Under the IFB, there could have been no leaseback at all, and once established, if WMATA so decided in its discretion, by execution of the Agreement of Lease, the leaseback term had an assured life of only 90 days.  Thus, the staff's consideration of the bids based on WMATA's being out of the Bus Garage Property by Opening Day was entirely within and consistent with the terms of the IFB.  On the evidence, *the Opening Day deadline under which WMATA staff evaluated the bids and the WMATA Board awarded the Property precluded MR Ballpark 7's offer from ever being the winning bid unless it were the only bid.*

ii. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) (negotiated procurement). *Data General* is closely aligned with the cases that WMATA cited in its motion and cites above. *Data General* held:

> We think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract.

78 F.3d at 1562.  Once again, the courts make clear that Plaintiffs have the burden of proof.  And once again, the courts make clear that to establish standing, Plaintiffs must show far more than Plaintiffs contend, that "a plaintiff need only show that it is a disappointed bidder," Plaintiffs' Opp. at 6.  Even under this standard, Plaintiffs must prove at least a reasonable

likelihood that MR Ballpark 7 would have gotten the award had Akridge not gotten it. Plaintiffs do not and cannot prove this because there was no likelihood whatsoever, with WMATA's intending, planning and taking action (*i.e.*, dispersing buses) to get out of the Bus Garage Property by Opening Day, that MR Ballpark 7 would have gotten the award.

    iii. *Bannum, Inc. v. U.S.*, 404 F.2d 1346 (Fed. Cir. 2005) (proposals responding to RFP evaluated under five factors, with cost sharing the lowest level of importance in the evaluation; unsuccessful offeror denied standing on grounds of failure to show requisite prejudice). *Bannum* parallels *Alfa Laval* and *Data General*:

> To establish prejudice Bannum was required to show that there was a "substantial chance" it would have received the contract award but for the BOP's errors in the bid process.

Thus, contrary to the assertion in Plaintiffs' Opp. (at 8), even in this more relaxed context of the negotiated RFP, *Bannum* establishes a "but for" causation requirement and requires proof of a "substantial chance" that WMATA would have awarded the Bus Garage Property to MR Ballpark 7.

    *Plaintiffs presented no proof on this issue.* As WMATA noted in its initial motion, Plaintiffs would have to have proved, *inter alia*, that there was a substantial chance that WMATA would lease back the Bus Garage Property for at least 20 months. Plaintiffs did not, as they could not, show that. *See also* Point 2 below.[8]

**2. Even Assuming, *Arguendo*, That MR Ballpark 7 Has Standing, There Was No Actual Prejudice Because, As Plaintiffs' Opp. Correctly States, the Bottigheimer Memorandum "Was Merely a Staff Recommendation, Nothing More"**

Plaintiffs' Opp. correctly recognized that (i) the Bottigheimer Memorandum "was merely a staff recommendation and nothing more," (ii) the WMATA "Board made the final

---

[8] WMATA again must stress that WMATA bore no burden in this regard and that any alleged absence of proof from WMATA's side is a red herring.

decision on the award" and (iii) "only the Board had authority to make the final decision." Plaintiffs' Opp. at 13. Plaintiffs' Opp. fails to acknowledge the unbridgeable chasm in Plaintiffs' standing argument that these recognitions create.

Preliminarily, WMATA must reiterate the underlying premise of this case, which seems to have gotten lost, that Plaintiffs challenge the WMATA Board's decision to award the Bus Garage Property to Akridge. Only the WMATA Board had the ability and authority to award the contract, and only the WMATA Board made the decision to award the Bus Garage Property to Akridge.[9]

Plaintiffs introduced no evidence that the WMATA Board knew of the Akridge offer to negotiate for the lease of temporary space, knew of any communications relating to that offer or considered anything other than the unadulterated bid and leaseback prices in determining to make the award to Akridge. The undisputed and indisputable record is, to the contrary, that the WMATA Board knew nothing of Akridge's offer to negotiate for temporary space, knew nothing of any communications regarding that offer and did not consider either the offer or any subsequent communications in determining to award the Bus Garage Property to Akridge. Thus, any conclusion that Akridge's offer to negotiate for temporary space "could have affected WMATA's evaluation of which bid provided the highest net return," Mem. Op. at 25,

---

[9] Mr. Bottigheimer prepared the six-person-group recommendation, but he did not have any authority, or even prerogative, to deal with bidders other than in a ministerial fashion, receiving (and returning) bids and transmitting the results of the Board's deliberations. *See Littlejohn v. WMATA*, No. 90-1724 (RCL), 1992 WL 122755, at *2 (D.D.C. May 28, 1992) (footnotes and citations omitted; emphasis added):

> [T]the court finds that WMATA is not bound by Morrison's representations to plaintiff because the doctrine of apparent authority does not apply to dealings with the government ….

*See also Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152-53 (D.D.C. 2002); *Harbert/Lummus Agrifuels Projects v. U.S.*, 142 F.3d 1429, 1432 (Fed. Cir. 1998); *Starflight Boats v. U.S.*, 48 Fed. Cl. 592, 599 (2001).

respectfully is speculation unsupported by any evidence of record, as the conclusion's precatory phrasing denotes. The possibility, let alone the fact, that the Akridge offer affected the Board's decision is not anything that Plaintiffs did prove or could prove.[10]

### 3. Plaintiffs' Opp. Substitutes Speculation, And Invitations To Speculate, For Necessary Proof

After fundamentally erring on the applicable law, Plaintiffs' Opp. (at 9-14) tries to avoid the force of the plain arithmetic by substituting speculation, and invitations for speculation, for the facts, all the while ignoring their burdens of proof and persuasion and seeking to impale WMATA with a failure of proof where WMATA had no burden. Preliminarily, there are four foundational, indisputable facts about the proof:

i. First, there is no denying the straight arithmetic of the Bottigheimer Memorandum. For any leaseback period of 20 months or less, the JBG bid was second highest and the MR Ballpark 7 bid was not in the running.

ii. Second, there is no denying the length of the leaseback period that formed the basis of the recommendation contained in the Bottigheimer Memorandum. That Memorandum reads:

> After a thorough discussion with other members of the staff, which gave great weight to the planned opening of the Washington Nationals Baseball Stadium in April 2008, I recommend that the Authority proceed on the basis that BUS will soon begin distributing the Southeastern Bus Garage's operations elsewhere and then complete vacating the facility by March 31, 2008.

---

[10] It also is highly unlikely that the mere possibility meets even the relaxed standards of "reasonable likelihood" or "substantial chance." Theses standards denote and connote far more than possibility. In any event, Akridge's offering something more than the IFB required was not impermissible, improper or nonresponsive. *See Emmett R. Woody*, B-213201, Jan. 26, 1984, 84-1 CPD ¶ 123; *To Hedrick & Lane*, B-164384, Apr. 23, 1969, 48 Comp. Gen. 685, 1969 CPD ¶ 23.

iii. Third, the Board had no knowledge of and gave no consideration to the Akridge offer to negotiate for temporary space. As the Bottigheimer Memorandum stated, after setting out the Bid Amount and the Leaseback Rental (Monthly) of each bid,

> We're not sharing with the Board the particulars of the proposals received beyond those included in these talking points. This is for their protection in the event of legal action by an aggrieved bidder.

iv. Fourth, as the Bottigheimer Memorandum recognized ("BUS will soon begin distributing the Southeastern Bus Garage's operations elsewhere and then complete vacating the facility by March 31, 2008"), WMATA had fixed on a dispersal plan and gave no consideration to any stay in the Bus Garage Property beyond Opening Day of the 2008 baseball season.

Plaintiffs' Opp. does not, as it cannot, assail these facts, which defeat Plaintiffs' standing argument. There was no likelihood, indeed no prospect, that WMATA would lease th Bus Garage Property back for anywhere near 20 months.

Bereft of anything to refute these facts, Plaintiffs' Opp. indulges in misstatement, speculation and burden shifting. For example, Plaintiffs' Point IV. B. on page 11 is entitled, "There Is No Evidence On Which The Court Can Conclude What Leaseback Period WMATA Decided On." Of course, that is not accurate. There *is* evidence, beginning with the Bottigheimer Memorandum, carrying through the Board's plan to disperse the buses housed and serviced at the Bus Garage Property and evidenced in the award, that WMATA intended to be and would be out of the Bus Garage Property by the end of March.

Plaintiffs' Opp. argues under this Point IV. B. that WMATA's evidence is insufficient, seeking not-so-subtly to shift the burden of proof from Plaintiffs to WMATA. But it was not WMATA's burden to show -- though WMATA did show -- that the leaseback period, if there were to be any, was within WMATA's sole discretion, that WMATA planned to be out of the

Case 1:07-cv-01821-EGS   Document 84   Filed 03/26/2008   Page 13 of 15

Property by Opening Day and that WMATA assessed the bids on this basis. It was Plaintiffs' burden, and theirs alone, to show that WMATA contemplated being in and leasing the Bus Garage Property for a period that would make the MR Ballpark 7 bid next-in-line, *i.e.*, for 20 months or more. Plaintiffs did not meet their burdens of proof or persuasion on this point. Plaintiffs' attempt to evade the lack of standing by tossing the burden from their side to WMATA's side is simply wrong, and the Court should reject it.

In another example, Plaintiffs decry WMATA's arguments based on "the absence of any evidence as to how WMATA's Board of Directors (the only decision maker, according to WMATA) might have voted had the Akridge Bid been rejected, or what other considerations might have gone into the Contracting Officer's determination that Monument [*sic*] was ranked second for 'best net return.'" Plaintiffs' Opp. at 3. But again, WMATA did not bear any burden of proof or persuasion, least of all to rebut these wholly speculative straw men that Plaintiffs raise. The "absence of evidence" is a test that the Court must apply to Plaintiffs, not to WMATA. The absence of evidence is Plaintiffs' absence, and it is Plaintiffs' undoing, not WMATA's.

### 4. Monument Realty LLC Has No Standing And Is Not Entitled To A Preliminary Injunction

Under any standard, Monument Realty LLC has no standing. Monument Realty was not a bidder and had no chance of getting the award. Monument Realty is not entitled to the preliminary injunction.

### CONCLUSION

For the foregoing reasons and the reasons in WMATA's motion, WMATA respectfully submits that the Court reached the plainly mistaken conclusion on the critical element of Plaintiffs' standing to challenge the bid process and award, and the Court improvidently granted the preliminary injunction. WMATA prays that the Court reconsider its decision to

4709108.1   - 13 -

grant the preliminary injunction, vacate the injunction, deny Plaintiffs' motion for preliminary injunction and grant WMATA such other and further relief as may be appropriate.

Respectfully submitted,

| | |
|---|---|
| /s/ Bruce P. Heppen | /s/ Harvey A. Levin |
| Carol B. O'Keeffe | Harvey A. Levin (D.C. Bar No. 203869) |
| General Counsel | Katherine S. Nucci (D.C. Bar No. 358539) |
| Donald A. Laffert | Kathleen E. Sailer (E.D. Mo. Bar No. 534178; |
| Bruce P. Heppen | Not admitted in DC) |
| Associate General Counsel | THOMPSON COBURN LLP |
| Washington Metropolitan Area | 1909 K Street, N.W. Ste. 600 |
| Transit Authority | Washington, D.C. 20006-1167 |
| 600 Fifth Street, N.W. | T: (202) 585-6942 (direct) |
| Washington, DC 20001 | F: (202) 508-1013 (direct) |
| T: (202) 962-1499 | email: hlevin@thompsoncoburn.com |
| F: (202) 962-2550 | |
| email: bheppen@wmata.com | |
| email: dlaffert@wmata.com | |
| | Counsel for Washington Metropolitan Area Transit Authority |

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2008, a true and correct copy of the foregoing was served by ECF on:

>Louis E. Dolan, Jr., Esquire
>Vernon W. Johnson, III, Esquire
>NIXON PEABODY, LLP
>401 Ninth Street, N.W.
>Washington, D.C. 20001
>
>Barbara S. Wahl, Esquire
>Joshua Fowkes, Esquire
>ARENT FOX LLP
>1050 Connecticut Avenue, N.W.
>Washington, DC 20036-5339

      /s/ Harvey A. Levin