# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                           )

|  |  |
|---|---|
| MONUMENT REALTY LLC and MR BALLPARK 7 LLC, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **1:07-CV-01821** |
| **vs.** ) | **Judge Emmet Sullivan** |
| ) | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, ) | |
| ) | |
| **Defendant.** ) | |

_____ )

## REPLY OF JOHN AKRIDGE DEVELOPMENT COMPANY IN SUPPORT OF ITS MOTION TO INTERVENE

Conceding that proposed Intervenor John Akridge Development Company ("Akridge") has a protectable interest in the property at issue and that this lawsuit impairs that interest, Plaintiffs Monument Realty LLC and MR Ballpark 7 LLC nonetheless seek to bar Akridge from intervening in this case on the grounds that Akridge's motion is untimely and that Defendant Washington Metropolitan Area Transit Authority ("WMATA") can adequately represent Akridge's interest. Neither argument has any merit. Plaintiffs' fall back position - - that Akridge's participation in the case should be so limited that Akridge would be ineffective in the litigation and little more than a non-party - - is equally untenable. As demonstrated below, all of Plaintiffs' arguments to bar or limit Akridge from full participation in the litigation fail and Akridge should be permitted to intervene as a defendant in the litigation without the imposition of conditions.

## I.     Akridge Has Satisfied Rule 24(a) and (b) and Is Entitled to Intervene

Plaintiffs acknowledge that Akridge has satisfied the second and third elements for intervention as of right[1] - - a legally protectable interest in the action and a threat to that interest by the action.  Plaintiffs' Opposition to Motion to Intervene ("Pl. Opp.") at 2.  Plaintiffs further concede that Akridge's intervention is not intended to unfairly prejudice any party.  *Id*. at 3. Plaintiffs contend, however, that Akridge falls short of the mark in meeting the remaining elements needed for intervention - - timeliness of the motion and adequacy of representation of the intervenor's interests by a party to the litigation.  *Id*. at 2-7.  Akridge satisfies both the timeliness and interest requirements.

### A.     Akridge's Motion to Intervene Is Timely

Rule 24 does not prescribe a time when intervention must be sought or is waived.  Fed.R. Civ. P. 24.  Rather, each case must be evaluated on its own unique facts and circumstances.  *See, e.g., Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004) (reversing denial of motion to intervene as untimely because court failed to consider case's unique facts); *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (timeliness is to be judged in consideration of all the circumstances).  Intervention has been permitted as late as seven years after the filing of a lawsuit because a non-party's interests may no longer have been protected by the parties. *Hodgson v. United Mine Workers of Am*., 473 F.2d 118, 129-30 (D.C. Cir. 1972) (concluding that motion to intervene filed seven years after lawsuit started was timely and reversing denial of motion to intervene); *see also Foster v. Gueoroy*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (reversing district court and permitting intervention 10 months after complaint was filed because intervention would not prejudice existing parties).  In fact, "post judgment intervention is often

---

[1] The factors that are required for intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure are also considered more generally in connection with permissive intervention under subsection (b) of Rule 24.

permitted ... where intervention would not unduly prejudice the existing parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004) (citing Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, 7C FEDERAL PRACTICE AND PROCEDURE, §1916 (2d ed. 1986) and reversing ruling that intervention made after judgment was untimely); *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (reversing denial of post-judgment motion to intervene as untimely). For intervention purposes, the analysis is not a wooden inquiry of whether the intervenor has sought early entry into the case, but instead a "flexible" determination of whether entry into the case is sufficiently timely so as not to unduly prejudice the parties.  Charles A. Wright, Arthur R. Miller and Mary Kay Kane, 7C FEDERAL PRACTICE AND PROCEDURE, §1916 (3d ed. 2007) ("The requirement of timeliness is a flexible one."); *Smoke*, 252 F.3d at 471 (district court has "much latitude in assessing the timeliness of" motion to intervene).  The amount of time elapsed since the litigation began "is not in itself the determinative test" of timeliness, "particularly where intervention is sought as of right."  *Hodgson,* 473 F.2d at 129.

Akridge's intervention is timely.  This lawsuit began in late 2007 and the parties have conducted relatively limited discovery.  In their Joint Recommendation for Further Proceedings Pursuant to the Minute Order Dated March 3, 2008 ("Joint Recommendation"), the parties do not suggest scheduling a trial date until December 2008.  There is ample time for Akridge to participate in the case without causing prejudice to the parties, which is the "most important consideration in deciding whether a motion for intervention is untimely."  Wright, Miller & Kane, *supra*, § 1916.

Plaintiffs nonetheless oppose Akridge's intervention, accusing Akridge of intentionally delaying its entry in the case until after adverse rulings were made against its and WMATA's interests.  Pl. Opp. at 3-4.  Plaintiffs seem to suggest that Akridge sat on the sidelines in a

calculated fashion, avoiding the obligations of litigation while waiting to pounce until intervening would be to its best advantage. Nothing could be further from the truth. Akridge has been an active non-party to the case. It produced documents in response to Plaintiffs' subpoena, working diligently, cooperatively and expeditiously to provide documents to Plaintiffs. Akridge has assiduously monitored the litigation and consulted with WMATA regularly about the defense. Even prior to moving to intervene, Akridge agreed to participate in the mediation. Akridge had hoped that it would be able to avoid becoming a party, and allow WMATA to press Akridge's interests in the litigation. But it has become apparent with the recent filing of the parties' Joint Recommendation that WMATA and Akridge have potentially different interests with regard to the sale of the Property, and that those differences fundamentally impair WMATA's ability to represent Akridge's interests in the case (discussed in more detail below). Once the differences between WMATA's interests and those of Akridge became apparent, sparked by the filing of the March 7, 2008 Joint Recommendation and subsequent communications between WMATA and Akridge and their counsel, Akridge moved promptly to intervene in the case.

Plaintiffs' fear that Akridge wants to use its intervention to cause the Court "to revisit decisions already made on a well-established record" is also entirely baseless. *Id.* at 3-4. Presumably Plaintiffs are referring to the Court's finding that they are likely to succeed on the merits of their claim, a ruling made in the context of the Court's preliminary injunction decision. But of course all of the parties, and Akridge, are well aware that the Court's ruling on the likelihood of success on the merits was based on a very limited record that was developed under time pressure so that the Court could quickly rule on the motion. The Court *must* revisit its view of the merits in connection with a motion for summary judgment, or trial on the merits. A

preliminary injunction is only a provisional ruling.  In fact, the very purpose of a preliminary

injunction is "to preserve the relative positions of the parties until a trial on the merits can be

held." *Hunter v. F.E.R.C.*, 527 F.Supp.2d 9, 14 (D.D.C. 2007) (citing *Univ. of Tex. v. Camenisch*,

451 U.S. 390, 395 (1981)).  Because it is only a preliminary ruling, a preliminary injunction is

not even the law of the case.  *Comm. Nutrition Inst. v. Block*, 749 F.2d 50, 56 (D.C. Cir. 1984);

*Camenisch*, 451 U.S. at 395 ("[T]he findings of fact and conclusions of law made by a court

granting a preliminary injunction are not binding at trial on the merits.").  This Court has

emphasized that parties "shall have the right to revisit any and all" of its findings of fact and

conclusions of law reached in a preliminary injunction ruling when the case is ultimately heard

on its full merits.  *McElrath v. Kemp*, 714 F. Supp. 23, 29 (D.D.C. 1989).  By its intervention,

Akridge will not improperly seek reconsideration of matters addressed in the Court's prior

rulings; it merely seeks the opportunity to ensure that the record is complete and that its interests

are protected when the Court reviews the merits for final resolution.

### B.    Akridge's Interests Are Not Adequately Represented by WMATA

Plaintiffs contend presumptively that WMATA will adequately represent Akridge's

interests because both have the same goals and that Akridge's "modest difference in litigation

tactics" is insufficient to justify its intervention.  Pl. Opp. at 4  Plaintiffs misunderstand that

WMATA and Akridge have different interests, a difference that grows with every passing day

that the Property remains unsold.  WMATA's and Akridge's differences go beyond mere

disagreement in approach to discovery.

As a threshold matter, the ultimate goals of WMATA and Akridge differ.  WMATA

wants to obtain the highest possible purchase price from the sale of the Property and complete

the sale as soon as possible so that it can proceed with its plans to build a new bus garage.  It

needs the funds from the sale of the Property in order to move forward with the construction. With each passing day, as the sale of the Property is delayed, the identity of the purchaser of the Property may be less important to WMATA than its ability to move forward with the sale and its own plans.  If the Court were to enjoin the sale of the Property to Akridge, WMATA could issue a new invitation for bids for the Property, seeking anew the highest possible purchase price and the earliest possible closing without regard to the identity of the bidder.  Akridge, on the other hand, wants to complete the purchase of the Property on the terms set forth in its contract with WMATA.  While Akridge would like to proceed expeditiously with the purchase of the Property, it is of paramount importance to Akridge that its contract rights are enforced.  Although WMATA, whatever the outcome, will have the Property to sell; Akridge will not necessarily have the right to purchase it pursuant to the contract rights it bid for and won.

Moreover, WMATA also has an interest in protecting the members of its Board of Directors and other decision makers from discovery and from subjecting its procurement process to intense scrutiny.  WMATA's desire to protect its decision makers and the integrity of its process may compel it to forgo certain types of discovery, thereby jeopardizing the sale to Akridge.  For example, WMATA apparently would prefer that there be no depositions of its decision makers - - members of its Board and real estate committee members.  As a result, there would be no further development of the record about the procurement process, WMATA's interactions with the bidders, including Plaintiffs, and WMATA's communications with members and staff of the D.C. Council, the Anacostia Waterfront Corporation ("AWC") or other District officials.  Akridge does not share WMATA's interest in shielding WMATA personnel from discovery and believes that the Court should make its ultimate decision on the merits based on a full record.

WMATA's and Akridge's differences are deeper than a mere squabble over discovery. Rather, Akridge and WMATA have a fundamental difference over what the Court needs to adjudicate this case on the merits without inviting reversible error. To date, the parties have taken only one WMATA deposition - - that of Mr. Bottigheimer, who was not the ultimate WMATA decision maker. Little has been disclosed about the interaction among the real estate committee members, the role of Mr. Bottigheimer, the information provided to the WMATA Board, the Board's communications and, finally, its deliberations. Similarly, WMATA's interactions and communications, directly or through others, with Plaintiffs and the other bidder have also not been explored, and are important for the ultimate determination of whether Akridge was accorded special treatment by WMATA. These important facts for the Court to consider appear to be absent from the current record. Thus it is important for Akridge to be present as a party at the discovery conference scheduled for March 28 so that if the parties agree to conduct little or no additional discovery, Akridge can protect its interests. Should Akridge not be allowed to participate as a party in the March 28 meeting, its ability to protect its interests will be prejudiced in the extreme. Akridge can work within the schedule that has been proposed by the parties, perhaps with some modest changes, provided that it is not hampered in developing its case.

Plaintiffs' suggestion that Akridge must demonstrate "adversity of interest, collusion or nonfeasance" between WMATA and Akridge to warrant intervention is simply incorrect. Pl. Opp. at 4. Monument dramatically misstates the law by cherry-picking selective words, out of context, from various opinions. *Id.* Rather, WMATA's *potential* inability or disinterest in adequately protecting Akridge's interests is a sufficient basis for Akridge's intervention. *See* Akridge's Mem. in support of Mot. to Intervene at 7 (citing cases). Rule 24 requires a proposed

intervenor like Akridge to demonstrate only that WMATA's representation of its interests "may be inadequate." *Id.* at 7; *see also Foster v. Local 2311 United Brotherhood of Carpenters*, 655 F.2d 1319, 1325 (D.C. Cir. 1981) (ruling that intervenor met "minimal burden" by showing its interests "may not be adequately represented by the existing parties."). Under this liberal standard, Akridge is entitled to intervene.[2]

Accordingly, Akridge is entitled to intervention under Fed. R. Civ. P. 24.

## II.    Akridge's Intervention Should Not Be Limited to the Procurement Issues

Plaintiffs' principal contention in their Amended Complaint is that they have rights, in the nature of contract rights, which entitle them exclusively to negotiate with WMATA for the purchase of the Property, and that the WMATA procurement process by which Akridge was awarded the contract to purchase the Property should never have taken place. Indeed, Plaintiffs spend 47 pages of their 57 page Amended Complaint setting forth the basis for their alleged rights to purchase the Property and complaining that those rights were not honored. In their prayers for relief, Plaintiffs have requested that the Court declare them to be the rightful purchaser of the Property, thereby precluding Akridge from closing on its contract with WMATA. Yet, amazingly, Plaintiffs argue in their Opposition that Akridge has not demonstrated why its should be allowed to intervene on the contract-related claims, and that its motion to intervene goes only to the procurement related claims. Pl. Opp. at 9. Plaintiffs are in error.

---

[2]  Plaintiffs similarly misstate the law with regard to a "heightened presumption of adequate representation" by WMATA. Pl. Opp. at 6. There is no such presumption in this Circuit. Neither *Bldg. and Constr. Trades Dept., AFL-CIO v. Reich,* 40 F.3d 1275, 1282 (D.C. Cir. 1994), nor *Humane Society v. Clark,* 109 F.R.D. 518, 520 (D.D.C. 1985) so hold. Rather, in *Humane Society*, the Court rejected the proposed intervenor's contention that the existing defendant lacked the incentive to adequately represent its interests, and reaffirmed that an intervenor's burden to show that the existing parties may not adequately represent its interests is a "minimal" burden. *Id*. at 520. Similarly, in *Bldg. and Constr. Trades Dept.*, the court summarily ruled that the existing parties adequately represented the proposed intervenor's interests because the intervenor had offered no argument that the existing party had not already made. *Bldg. and Constr. Trades Dept.*, 40 F.3d at 1281. Neither case discusses a heightened presumption.

Plainly, Plaintiffs' contract-related claims are as lethal to Akridge's interests as are Plaintiffs' procurement-related claims.[3]  WMATA's ability or desire to protect Akridge's interest against the contract claims is similarly inadequate with regard to the procurement claims. WMATA's principal goal is still to obtain the highest sales price as quickly as possible, perhaps with a different purchaser, and it will still be able to sell the Property if the Court finds against it in this litigation.  WMATA will not be harmed by losing this case.  Akridge, however, will lose its contract with WMATA and possibly its ability to ever purchase the Property.

Plaintiffs' stated reason for barring Akridge from the contract claims portion of the case is nonsensical.  They suggest, without any basis whatsoever, that allowing Akridge to intervene in the contract portion of the case will somehow permit Akridge to interfere with their pre-existing relationship with the AWC and the District, which relationship provided Plaintiffs with their alleged contract.  If Plaintiffs indeed have rights as a third-party beneficiary of an implied contract between WMATA, on the one hand, and the AWC and/or the District, on the other, then, according to its Amended Complaint, Plaintiffs acquired these supposed rights before WMATA's contract with Akridge was formed, so that Plaintiffs' rights are enforceable and cannot be dislodged by Akridge's participation in this case.  *See* Amended Complaint at ¶¶ 12-64.  The idea that Akridge's request for discovery from the District would somehow interfere with Plaintiffs' relationships is not only unsupportable, but also is contrary to one of the basic tenets of our judicial system, which permits a party to conduct discovery to defend its interests. Plaintiffs need not fear intrusion on their relationship with the AWC because it no longer exists,

---

[3]  In fact, Plaintiffs' contract claims potentially present greater harm for Akridge than their procurement claims because the remedy for Plaintiffs' contract claims would be a judgment that Plaintiffs alone are entitled to purchase the Property, whereas the remedy for Plaintiffs' procurement claims would be a new WMATA invitation for bids, pursuant to which Akridge might still be able to purchase the Property.

its duties having been transferred to the Office of the Deputy Mayor for Planning and Economic Development.

In order to obtain a judicial determination of its contractual rights, Akridge could file its own action to quiet title to the Property, an *in rem* action that would be separate from this suit. If Akridge chose to file such an action in this Court, it would likely be assigned to Judge Sullivan as a case related to the one at bar and perhaps be joined with this one for the purposes of judicial economy and conservation of the parties' resources. Unquestionably, Akridge could be a party to a lawsuit in which its right to purchase the Property would be adjudicated. Intervention in this case is simply another route to the same end of permitting Akridge to have its day in court in order to protect its real, distinct and legitimate interests.

Accordingly, Akridge should be permitted to intervene on all issues in the case, without limitation.

## III.    The Court Should Not Impose Any Limitations on Akridge's Intervention

Plaintiffs' fall-back position in the event the Court permits Akridge to intervene, as the Court indicated at the February 19, 2008 status conference that it intends to do, is to eviscerate Akridge's ability to protect its interests by severely and prejudicially limiting its ability to participate in the litigation. Towards that end, Plaintiffs propose that the Court: 1. enter an order accepting the schedule the parties had previously proposed, without giving Akridge any say in the schedule (and ignoring the Court's request that the parties consider the additional burden on the Court by two more exhibit-laden summary judgment motions); 2. limit Akridge's discovery to WMATA's decision makers, precluding the discovery of any others persons or entities, including Plaintiffs themselves, and representatives of the District and AWC who supposedly made promises about the Property to Plaintiffs; 3. exclude Akridge from participating in the

contract claims portion of the case, although Akridge could still lose its contract with WMATA if Plaintiffs were to prevail on their contracts claims; and 4. bar Akridge from revisiting the Court's prior rulings, including its preliminary injunction, which must necessarily be readdressed on the merits when the Court issues a final ruling. None of these extreme measures is warranted.

Plaintiffs' first condition - - entry of the timetable proposed in the Joint Recommendation - - is premature. Akridge should be entitled to participate at the March 28 discovery meeting where the parties discuss the schedule rather than have a schedule imposed that will have to be revisited after March 28. As represented at the status conference on February 19, Akridge seeks not to disrupt the timetable proposed by the parties but only to ensure that it has a seat at the discovery conference on March 28 so that it will be able to conduct the discovery necessary to protect its interests. Akridge is also mindful of the Court's request that the parties consider case management that does not burden the Court with additional complex motions, particularly where disputed facts are likely to render summary judgment impossible. Plaintiffs' request that the Court enter the order as proposed should be denied in light of what Akridge hopes will be cooperative and fruitful dialogue at the discovery conference on March 28.

Plaintiffs' second condition, to limit Akridge's discovery, should also be denied. Akridge's discovery should not be limited in any fashion, just as WMATA's and Plaintiffs' discovery is not. Development of the record with regard to the procurement process as a whole, the communications Plaintiffs had directly and indirectly with WMATA about the procurement, and the nature and extent of Plaintiffs' alleged contract rights, among other things, are germane to the ultimate decision the Court must make. As the Court has already found, the Property is valuable and unique, and Akridge's contract rights are similarly valuable and unique. Akridge's

ability to protect its rights should not be hampered by Plaintiffs' desire to limit the information available to the Court.

Plaintiffs' third condition - - exclusion of Akridge from the contract claims - - is also unsupportable.  As demonstrated above, Akridge has as much if not more to lose from Plaintiffs' contract claims as it does from the procurement claims.  Akridge's interest in this lawsuit is the protection of its right to purchase the Property.  Its rights will be lost if Plaintiffs succeed on either their contract claims or their procurement claims.  There is no rational basis for the Court to bar Akridge from intervening on the contract claims.

Finally, Akridge has no intention to prolong the litigation by moving for reconsideration of the Court's prior rulings.  At trial, the Court will necessarily consider anew the merits of which bidder is entitled to purchase the Property.  Akridge intends to make sure that the Court considers the merits based on a sufficient record.  When appropriate, the Court should not be precluded from revisiting its prior rulings in order to avoid error.

Accordingly, the Court should permit Akridge to intervene without any limitations on its ability to conduct itself as a party in the case.

## <u>CONCLUSION</u>

Akridge contends that it is entitled to close on its contract with WMATA and purchase the Property.  For the reasons set forth herein, as well as in Akridge's Memorandum of Points and Authorities in Support of its Motion to Intervene, the Court should allows Akridge to

intervene as a party in this suit, without limitation, so that Akridge can protect its interest in the Property.

Dated: March 26, 2008

Respectfully submitted,

_____/s/ Barbara S. Wahl_____
Barbara S. Wahl (297978)
Joshua Fowkes (494700)
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Fax: (202) 857-6395
wahl.barbara@arentfox.com
fowkes.joshua@arentfox.com

*Attorneys for John Akridge Development Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of March, 2008, I caused a copy of the foregoing

REPLY OF JOHN AKRIDGE DEVELOPMENT COMPANY IN SUPPORT OF ITS MOTION

TO INTERVENE to be served by the Clerk of the Court through the electronic filing system on

the following:

> Louis Dolan, Jr., Esq.
> Vernon Johnson III, Esq.
> Nixon Peabody LLP
> 401 9th Street, N.W.
> Suite 900
> Washington, D.C. 20004-2128
>
> Harvey Levin, Esq.
> Thompson Coburn LLP
> 1909 K Street, NW
> Suite 600
> Washington, D.C. 20006-1167

> _____ /s/ *Joshua Fowkes*
> Joshua Fowkes

- 14 -